T COURT
OF TX
2021 JAN 11 AM 10: 47
UTY CLERK

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

Archie Butler
Plaintiff

3-21CV0064-X
Civil Action No.

v.

FBI- Please See Attached
Defendant

## COMPLAINT

Please See Attached

* Attach additional pages as needed.

Date 01/05/2021

Signature [signature]

Print Name Archie Butler

Address 8189 Midtown Blvd. Apt #12202

City, State, Zip Dallas, Texas

Telephone 773-648-1782

**Archie Butler**

**VS**

**Department of Justice (FBI)**

| | |
|---|---|
| Civil Complaint Sheet(s) | Pages 1-2 |
| Complaint 104X | Pages 3-18 |
| Complaint 059X | Pages 19-33 |
| Certificate of Closing | Pages 34-35 |
| Motion for Appointment of Counsel | Pages 36-37 |
| Application to proceed in District Court without Prepaying Court | Pages 38-43 |
| Defendant(s) | Pages 44-47 |
| Defendant 1 | Pages 56 |
| Defendant 2 | Pages 57-68 |
| Defendant 3 | Pages 69-81 |
| Defendant 4 | .Pages 82-89 |
| Defendant 5 | Pages 90-94 |
| Education Credentials | Pages 95-109 |
| FBI Promotions/Awards | Pages 110-123 |
| FBI Performance Reviews | Pages 124-128 |

Table of Contents

Plaintiff Archie Butler

VS

Federal Bureau of Investigation


Upon request, Plaintiff will provide the court both claims in their entirety. "Return of Investigation - ROI"

Administrative Judge combined the case(s)/claim(s) below. Plaintiff was given the right to sue on October 06, 2020., November 30, 2020.

EEOC Appeal No. 2020000224
Hearing No. 450-2019-00104X
Agency No. FBI201800162

EEOC Appeal No. 2019005250
Hearing No. 450-2018-00059X
Agency No. FBI-2016-00183


Jurisdiction:

Plaintiff believes the court has jurisdiction in this matter as Plaintiff has exhausted and or completed all EEOC requirements before filing this complaint.

## III. Statement of Claim

Please See Attached

A. The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐ Failure to hire me.

☐ Termination of my employment.

☐ Failure to promote me.

☐ Failure to accommodate my disability.

☒ Unequal terms and conditions of my employment.

☒ Retaliation.

☒ Other acts *(specify)*: Deactivating Plaintiff's access badge preventing him from entering workplace. Stating that Plaintiff posed a threat to fellow FBI employees.

*(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B. It is my best recollection that the alleged discriminatory acts occurred on date(s) Please See "Facts of Case, Statement of claim" Please See Case File

C. I believe that defendant(s) *(check one)*:

☐ is/are still committing these acts against me.

☒ is/are not still committing these acts against me.

D. Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☒ race

☒ color

☐ gender/sex

☐ religion

☐ national origin

☐ age *(year of birth)* *(only when asserting a claim of age discrimination.)*

☐X disability or perceived disability *(specify disability)*

DECLARANT'S BACKGROUND INFORMATION

EOD: 2/28/2012

DECLARANT'S STATEMENT

I entered on duty with the FBI on February 28, 2012 as an Operational Support Technician (OST). In May 2014, I was promoted to the position of Financial Operations Specialist (FOS) where I am still assigned. On or around late August/early September 2015, I became the Acting Auditor (Previous Auditor and position was at the GS-12 paygrade), although I was an FOS GS-11 within the Dallas Field Office after executive management requested that I fill this position on a temporary detail.

 Affiant's Initials AB

However, on or about March 4, 2016, nearly six months after having filled the position as Acting Auditor, it was alleged by FBI HRD that after I applied for the permanent Auditor GS-12 position, that I did not meet the "education" qualification for the position. In addition, to serve as Acting Auditor, one must possess the same requisite education as those seeking to permanently fill the position. To resolve this matter, I took steps to have this decision reviewed and overturned. I presented materials necessary to verify that I met the qualifications for the position per the OPM guidelines directly to FBI Human Resources Headquarters(HRD). I Provided my course work and syllabi detailing accounting course work but this attempt did not resolve the issue. Subsequently, I sent Niambi R. M. Tillman, Assistant Special Agent in Charge (ASAC), Operational Support Branch - Dallas Division, detailed course descriptions for my accounting classes. ASAC Tillman enlisted the help of EAP Representative, Kevin Unruh who helped me assemble a complete "accounting-education" portfolio. ASAC Tillman agreed that the materials showed I met the minimum qualifications. The course descriptions clearly showed that, although not all my classes were titled as accounting courses, given I was a business major, my course syllabi illustrate(s) that they were fundamental and advanced accounting classes. However, the HRD Unit Chief decided

Affiant's Initials AB

(March 22, 2016) my courses did not satisfy the requirements. Finally, I scheduled a meeting with DL Special Agent in Charge (SAC) Thomas Class, as the Auditor reports directly to him. I provided him a package (March 27, 2016) that detailed my accounting course work, supported by my transcripts/syllabus. A few days later I submitted SAC Class the OPM FAQ which read in part: "If the content of a course arguably fits within the general subject area represented by one of the fields, it should qualify toward the 24-hour requirement." Approximately three weeks later, although SAC Class stated, that he had not forgotten about our meeting; without meeting with me or being given a final determination, on April 14, 2016, he authorized the Auditor position be reposted to a lower grade and pay, GS 9/11.

I did not apply to this new posting. On April 26, 2016, I met with ASAC Tillman. She stated she was disappointed that I did not apply for the Auditor GS 9/11 position and asked why. I told her that the education requirement was the same, if, as they allege, I did not qualify for the original posting I would not qualify for the lower grade(s). On April 28, 2016, ASAC Tillman stated that executive management wanted me to continue to do the work of the Auditor. I worked as the A/Auditor for another two weeks or so but ultimately; I informed her that did not make

 Affiant's Initials AB.

sense and was contrary to regulation, if, as they alleged, I did not have the education to be hired for the position, then I could not continue to serve as Acting Auditor.

After careful consideration, I contacted the FBI EEO, whereby April 29, 2016 was given as the EEOC initial contact date. I had my phone conference and submitted my chronology of events to the EEO counselor. On May 10, 2016, I met with ASAC Tillman who stated that she had been scheduled for an EEO interview. I have been out of the office on Sick Leave (SL), Annual Leave (AL), and on Family Medical Leave Act (FMLA) leave intermittently, since May 2016 for the physical and emotional effects that work-related stress was having on my body, specifically, swelling, tenderness, and agitation to my lower back at my surgical site in my lower-back for multi-level spinal fusion, to include anxiety. **Exhibit (6)**

With respect to **allegation "1"**, on or about May 10, 2016, I returned to my position as an FOS. On May 11, 2016, I met with my supervisor, Financial Manager (FM) Sandra Hollingshead, who stated that I would be her back up. But, FM Hollingshead also instructed me to move out of the office used by the previous backup, (which was also my office prior to accepting the position as Acting Auditor), and reassigned me to a cubicle that was partially blocked by the main entry door. This action was

 Affiant's Initials AB

to turn my previous work space to a conference room by placing a conference table in my previous work space the day she was given notice of my return to the Finance Office. I was out of the finance office for six months. Why was the decision made to turn my previous workspace into a conference room the day before my return to the finance office? This action contradicts her assertion that I was moved for business reasons. Due to the stress and the physical pain this conflict was causing to my prior back injuries, I took Annual/Sick leave from May 11 to June 13, 2016.

With respect to **allegation "2"**, when I returned to the office on June 13, 2016, I was unable to gain access to my office building because my badge and code would not open the gate. Nor would the security guard allow me entry by reviewing my FBI credentials as they have always done in the past. The guard stated, that he needed to contact someone in the security office to escort me into the building. This action disappointed me and caused emotional anguish given before I filled an EEO complaint I was considered an exemplary employee, so I extended my medical leave to June 27, 2016. When I returned to work (Finance Office) on June 27, 2016, the desk I was instructed to use was not operational. I did not have a telephone jack and, I did not have access to the low side terminal (Computer was not

 Affiant's Initials AB

setup) and management had seemingly deactivated my access to the financial systems which were essential tools in my role as an FOS. The mere fact that my work station was not work ready contradicts the assertion that my assignment to the new cubicle was for business reasons.

With respect to **allegation "3"**, on June 27,2016, I returned to the office and subsequently called into a meeting with SAC Class and ASAC Tillman, in which SAC Class informed me that he had directed ASAC Tillman to deactivate my badge (Multiple times) while I was out on leave to protect the other employees from me. SAC Class stated that I was unpredictable and insinuated that I was a threat. He said, "It is my job to protect Dallas bureau employees." on June 15, 2016, ASAC Tillman lied to me concerning my badge and code not working upon entry. **Exhibit (7)** She stated that it was a technical glitch, and she was unsure as to why the security guard would not allow unassisted entry but my badge had been reset and would work upon my return. During the meeting, SAC Class could not identify any actions by me which were threatening. He simply referred to me having firearms in my car. Executive staff/Security CSO was aware that I frequently brought firearms to work (trunk) and most times I parked outside of bureau property (Even though Dallas CDC said I could still park inside). Additionally, I am

Affiant's Initials AB

licensed to carry firearm(s) and the agency is aware that I
started work on an outside business training people on personal
firearm safety and protection. Prior to operating this business,
I submitted the proper paperwork to the Agency requesting
permission (Documentation Approved) to operate an outside
business. While I was out of the office on leave, I received a
call from ASAC Tillman informing me that it had been alleged
that while in the office I used the "n" word (racial, derogatory
word), which I denied but was never brought up in the June 27th
meeting with SAC Class and ASAC Tillman. On July 6, 2016, I
received an email from Acting Assistant Special Agent in Charge
(A/ASAC) Jeff Rutherford advising me that my building access was
being suspended for a second time. He informed me via email that
the new suspension was for the period that my doctor's excuse
stated I was out on medical leave. **Exhibit (8)**

     With respect to **allegation "4"**, On June 29, 2016, I was
called into ASAC Tillman's office along with FM Hollingshead. I
was counseled on working with my supervisor (ASAC Tillman was
aware of my concerns that the FM was not responding for some
time to emails, phone calls or text messages) and calling in to
inform her when I would be 15 minutes late. Additionally, I was
informed that I could not flex, and if I was more than 5 minutes
late they would deduct my leave from WebTA. This was the first

time in my four years with the Agency that I was counseled on time. Prior to filing the EEOC claim I was informed that my time was not questioned due to the number of additional hours I worked and I could flex my time whenever I needed. It was said by my supervisor and executive management that I was a responsible and always accountable for my time. My supervisor was aware of my OWCP Accepted back injury, Disabled Veteran status and my ailing mother. I had been allowed to flex my time, as I worked more than 40-hour work weeks, often working 50+ hours a week and did not request credit time. **Exhibit (9)**

With respect to **allegation "5"**, my medical condition(s) have still not improved, which has resulted in the need for more medical leave. In response, the FBI has attempted to deny my leave by stating that my requests were unacceptable, continuously requesting/requiring additional medical documentation, placing me on AWOL status, and providing me with inaccurate information for processing my OWCP medical leave requests. On July 11, 2016, although I had leave until July 14, 2016, I was contacted by FM Hollingshead who informed me that I had 15 days to present the documentation for FMLA. When I presented the medical documentation that I had presented in the past, I was informed it was unacceptable. On July 25, 2016, ASAC Tillman stated that the FMLA paperwork previously submitted

 Affiant's Initials AB

had been approved from July 1 to July 22, 2016. As of July 25, 2016, I was again being placed on AWOL status. On July 28, 2016, I received an email from ASAC Tillman stating that my FMLA was accepted for July 25 and 26, 2016, and starting July 27, 2016, I was being placed back into an AWOL status. **Disabled Veterans cannot be placed in AWOL status while in doctor's care. Exhibit (9,10)**

With respect to **allegation "6"**, on July 14, 2016, I sent an email to my supervisor Hollingshead stating that I was invoking FMLA for my absences. I also informed her that I was waiting for OWCP to assign a doctor. On July 15, 2016, FM Hollingshead responded, stating that my request for FMLA was not supported by appropriate medical documentation and as of July 14, 2016 I had 15 days to submit the necessary documentation. On July 15, 2016, I submitted FMLA paperwork by email to Hollingshead, ASAC Tillman, SAC Class, which had been completed by my primary physician Dr. Simmons. Hollingshead informed me that the FMLA paperwork was found to be insufficient and was therefore denied. **Disabled Veterans cannot be placed in AWOL status while under doctor's care. Exhibit (10)**

**CORRECTIVE ACTION**

I am seeking the following corrective actions:

1. My accounting education properly validated by the

appropriate FBI personnel;

2. If possible, and if qualified, an agency transfer to at the GS-12 pay grade to be completed without disclosing details of this complaint;

3. Monetary damages of $78,000; (15 months'GS-11 salary)

4. If any, the Removal of all adverse/derogatory statements from my personnel file/record; and

5. Agency implementation of additional educational training and safeguards to prevent unlawful denial of employment to future applicants.

I do not have knowledge of any additional information I believe is relevant to the scope of this inquiry as SSA Croyle described it to me. I have read this statement consisting of 13 pages. The entire statement is true and complete to the best of my knowledge and belief.

SSA Croyle, EEO Investigator, has instructed me not to discuss this interview or share the contents of this statement with anyone other than the person(s) conducting this interview, OEEOA representatives, the Office of the General Counsel or the declarant's designated representative, the Ombudsman's Office, and/or the Employee Assistance Program.

I have been admonished that I must obtain authorization from the EEO Officer or her designee prior to discussing this

 Affiant's Initials AB

matter with anyone outside the offices referenced above. I also understand that my failure to comply with this confidentiality provision may result in referral for disciplinary action.

I declare under penalty of perjury pursuant to 18 U.S.C. 1621 the foregoing is true and correct.

Executed on: August 2, 2017.

Archie Butler

Affiant's Initials AB.

Plaintiff- Archie Butler was hired by the Federal Bureau of Investigation (FBI), Dallas, TX FBI Field Office on February 28, 2012, as an Operational Support Technician (OST) GS-8. Plaintiff remained an OST until he was promoted to Financial Operational Specialist (FOS) GS-9, in May 2014. Plaintiff was again promoted to FOS GS-11, in August 2015.

While serving as an FOS, In September 2015, Plaintiff was told he would be detailed to serve as the Acting Auditor-Dallas FBI Field Office to replace the former Auditor who was promoted to a position in FBI Headquarters, Washington DC.., Plaintiff agreed to the detail as he had demonstrated his willingness on countless occassions to be a team player. Which is reflected in his numerous Awards and Promotions for dedicated service to the FBI.

After serving in the role of Auditor for approximately five months, the FBI Dallas Auditor position became available as a permanent position (GS-12), as it was an open position given the Plaintiff was detailed to the position temporarily. The Plaintiff applied for the position of permanent Auditor Dallas FBI in February 2016.

On or about sometime early March 2016, the plaintiff received a notice concerning his application for the Auditor position from the FBI HQ Applicant Division. The email read, the plaintiff did not possess the necessary Accounting credits (24 hours) from an accredited University that would certify him for the position of FBI Auditor.

The Plaintiff who holds a Master's degree in Business was sure the FBI HQ Applicant Unit employees simply made a mistake, so he again sent his undergrad and graduate school transcripts which detailed that he met the education "24 hours of Accounting" requirement for the Auditor position. The Plaintiff was again told that he did not meet the requirements so he asked his undergrad and graduate schools to certify in writing that he possessed 24 hours of accounting as he matriculated through their institutions.

Both Grantham University (Undergrad) and Southern Illinois University (Graduate) Business school department heads, wrote letters certifying the Plaintiff's education credentials and that he indeed possessed 24 hours of accounting between the two degrees.

The Plaintiff sent the newly acquired letters and his trnscripts to the FBI HQ Applicant Unit and was told that his credit hours could not be counted as they were labeled BA and MBA as Plaintiff was a Business major. The Supervisor of the FBI HQ Applicant Unit-J. Estok (Defendant No. 5) wrote on March 22, 2016 that the Plaintiff's "Accounting" credentials were not satisfactory. According to Unit Chief J. Estok, the plaintiff's "accounting courses did not even warrant the school category of accounting because the class prefix was BA and MBA. Although the classes clearly demonstrate accountancy in their course description and title, UC J. Estok denied they were accounting classes.

Plaintiff informed the Dallas FBI management team that he would need to step down as Acting Auditor as he was found not qualified for the position. The qualifications for the permanent position of Auditor are the same within a detail assignment to Auditor so the completed audits would need to be verified by someone who was a certified FBI Auditor. Therefore, the plaintiff stepped down from the position of acting Auditor and reported to the Finance office in April 2016.

Plaintiff again asked why his education credentials were not certified given the Office of Personnel Management's (OPM) guidance on the matter stated that education certification could only be determined by the course curriculum and not its labeling or title. I presented this fact given me by email from OPM to no avail.

Plaintiff filed a greivance for racial discrimination in an employment matter given FBI HQ Applicant Unit UC J. Estok, would not certify his education credentials that clearly stated by course curriculum, title and letters from business school institutional scholars that plaintiff had acquired the necessary accounting education. Plaintiff also filed a greivance given UC J. Estok wrote in her March 22, 2016

email that course category is the recognized standard to certify education credentials within the federal government which is not consistent with governmental policy.

In Summary Judgement, dated June 11, 2019, the AJ did not address the in excess of 45 day rule FBI EEOC officials state was their reasoning for not including Non-Certification of education credentials as an accepted claim. Time should have been tolled from the date UC J. Estok wrote her email dated March 22, 2016. Plaintiff filed a grievance dated April 28, 2016, therefore this specific claim should not have been dismissed as untimely as it fell within the 45 day time allowed.

Please See Attached - III. State of Claim for additional statements

---

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*

Greivance filed April 28, 2016, Formal Complaint November 2016, OFO Oct 6, Nov 30, 2020

B. The Equal Employment Opportunity Commission *(check one)*:

☐ has not issued a Notice of Right to Sue letter.

☒ issued a Notice of Right to Sue letter, which I received on *(date)* 10/6/2020,11/30/2020

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C. Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☐ 60 days or more have elapsed.

☐ less than 60 days have elapsed.

# Complaint 059X

Plaintiff Archie Butler

VS

Federal Bureau of Investigation

Upon request, Plaintiff will provide the court both claims in their entirety. "Return of Investigation - ROI"

Administrative Judge combined the case(s)/claim(s) below. Plaintiff was given the right to sue on October 06, 2020., November 30, 2020.

EEOC Appeal No. 2020000224
Hearing No. 450-2019-00104X
Agency No. FBI201800162

EEOC Appeal No. 2019005250
Hearing No. 450-2018-00059X
Agency No. FBI-2016-00183

Jurisdiction:

Plaintiff believes the court has jurisdiction in this matter as Plaintiff has exhausted and or completed all EEOC requirements before filing this complaint.

## DECLARANT'S BACKGROUND INFORMATION

Name: Archie Butler

Disability: Yes

EOD: February 28, 2012

## DECLARANT'S STATEMENT

On February 28, 2012, I entered on duty with the FBI as an Operational Support Technician (OST) in the Dallas Division. In April 2014, I received a promotion and began serving as a Financial Operations Specialist (FOS). My duties included the daily financial operations in the Dallas Division. It is my understanding, that Supervisory Financial Operations Specialist (SFOS) Sandra Hollingshead served as my Supervisor and rating official from 2014 through March 2018 and Assistant Special Agent in Charge (ASAC) Niambi Tillman served as my reviewing official from 2014 until March 2018.

I applied for the (FOS) position in 2011. I hand delivered my Veterans Administration (VA) and Office of Workman's Compensation (OWCP) benefits documentation as was requested by Dallas FBI officials. These documents gave Dallas Division FBI access to my (VA) and OWCP File. As a disabled veteran, I am directed by Executive Order 5396, to provide all medical evidence of my injuries that may prevent me from performing my assigned duties. I continued to do so until my employment with the FBI was terminated.

 Affiant's Initials AB.

I am also covered under the Uniformed Services Employment and Reemployment Rights Act (USERRA), Title I of the American with Disabilities Act, (ADA) Equal Employment Opportunity Commission (EEOC) - Disabled Veterans Commission and the Department of Labor (DOL/OWCP).

The VA has compensated me monthly for my service connected injuries since my honorable discharge in November 1988. In addition, The FBI's website speaks to every protection noted above to include other disabled persons and veteran protections.

In April 2016, I filed an Equal Employment Opportunity (EEO) complaint based on my race, resulting in Special Agent in Charge (SAC) Thomas Class, ASAC Tillman, SFOS Hollingshead and SSA Jeff Rutherford, submitting to interviews as some of the Responsible Management Officials (RMO).

**History of Injury**

In 1987, I began serving in the U.S. Army Reserve/National Guard. During my active service in the Army (1992-1998), I incurred several injuries, which resulted in five surgeries for right Inguinal Nerve Repair, Loss of Creative Organ. In November 1998, I was honorably discharged due to disability from the US Army -SGT/E5. I joined the U.S. Postal Service (USPS) in December 2000, and while serving in the U.S.P.S., in 2003, I was diagnosed with multiple Disc Herniations (L4/L5-S1) and reaggravation-worsening of right Inguinal Nerve Entrapment within the right Inguinal area by doctors within the VA, resulting in a sixth right Inguinal surgery. In 2006, I underwent my

Affiant's Initials ____

seventh surgery, a Disc Discectomy to correct the "Disc Herniations" which caused lower spine damage and pain. In 2007, I had my eighth surgery which was a multi-level Spinal Fusion w/Titanium Instrumentation (L4/L5-S1). In October 2010, I was declared 40% disabled by the VA. On July 31, 2003, my inguinal nerve damage and related spine injuries were accepted by The Office of Workman's Compensation (OWCP) as reaggravations to my service connected Army injuries.

Throughout my government career, I have suffered with excruciating pain. Unfortunately, as of late 2015 I developed additional difficulties performing tasks and staying focused due to pain in my lower spine, legs, and feet to include my lower extremities going numb. The excruciating pain causes me to suffer mentally with depression, anxiety and insomnia. Most recently, On June 4, 2018, I was given a course of steroid injection(s) for pain and numbness at the VA hospital in Dallas, TX. This was prescribed and performed given my responsiveness to pain, along with results from an MRI performed in April 2017. The MRI revealed that I have new herniations at L3/L4, L2, which are a direct result of the spinal fusion hardware (according to physicians), particularly the right-side perpendicular screws will make future injections difficult. The screws and related nerves are covered in scar tissue, which makes needle insertion difficult (according to VA physicians). Stress and physical activity worsen my symptoms. Before the injury worsened, the ability to work gave me temporary relief, but I have always suffered with excruciating pain. I have taken physician prescribed narcotics for the last 20 years or so to give partial relief of my symptoms. The pain

 Affiant's Initials AB.

causes my blood pressure to rise, so I was prescribed medicine for high blood pressure. Additionally, I take a prescription for anxiety. I also use a portable tense unit (provided by the VA) and a stationary tense unit (provided by OWCP) to increase blood circulation in the affected area. Presently, all injury care and medication are prescribed by my primary VA Physician.

With respect to accepted issue "1" in April, May and June 2016, I began to intermittently take annual leave (AL) and sick leave (SL) to address injury stressors, pain in my lower spine and right - side inguinal area. According to FBI officials, on July 11, 2016, I had exhausted all my annual leave (AL) and sick leave (SL).

I always inform FBI management of the status of my injuries, so If I was going to be late for work or needed to take leave; I would contact management by email, text message or phone call. On July 6, 2016, I was advised by SAS Nicole Wynne, FBI Dallas Applicant Unit that my leave would soon be exhausted, and she asked me what I wanted to do when I exhausted my leave. I asked her to place me on leave without pay (LWOP), due to my disabled veteran status and my being out due to my service connected and OWCP accepted injuries. On July 11, 2016, I was told that I would be placed on AWOL by my supervisor Sandra Hollingshead, unless I requested and was approved for Family Medical Leave Act (FMLA). Therefore, I submitted paperwork to take LWOP leave under FMLA to continue treatment for my disabilities and to resolve any confusion over my injury state. My disabled veteran status, and OWCP status had been provided to Dallas FBI officials but the July 11, 2016 letter does

not speak to any of my documented veteran protections. My doctors clearly stated what my injuries are, which correspond with my veteran and OWCP injuries.

My leave under FMLA was approved by FBI HQ Nurse Wendy Madison and this approval began on July 1, 2016. I was then contacted by ASAC Tillman who confirmed my FMLA approval, and she informed me that my AWOL status would be converted to LWOP. I remained (Off Work) under doctor's care and I was declared 100% unemployable, permanent and totally disabled on December 7, 2017 by the VA. Since the aggravation/worsening of my injuries, I never returned to work at FBI Dallas Division. I was disappointed to learn that I had to apply for leave under FMLA, when I should have remained on LWOP, but my doctors agreed to give anything that was needed to further the care I needed.

Due to my disabling aggravated military injuries, I had an open claim under the Office of Worker's Compensation Program (OWCP) since 2003, when I resided in Chicago, IL. I was waiting for OWCP to approve me to see a doctor in Dallas, TX (OWCP case transferred 2010) because I was formerly seeing doctors in Chicago, IL and had never seen an OWCP approved doctor in the Dallas, TX area. Given the cost associated with my injuries and the need for diagnostic testing, I awaited approval for additional medical treatment resources from OWCP. Additionally, I never discontinued treatment under the VA system, or through my wife's private insurance carrier.

 Affiant's Initials_AB.___

On November 27, 2017, I received a call from Administrative Officer (AO) Greg Jones. AO Jones told me that I could no longer take leave under OWCP and I had to report to work on December 11, 2017, or I would be placed on Absent Without Leave (AWOL) status. I informed AO Jones that I was confused as to why he was calling me because I was protected under Executive Order 5396 and OWCP. I advised AO Jones that I was not able to work, due to the worsening of my service connected injuries from the military and I provided him with additional (Off Work) medical documentation. AO Jones told me he would send me an official letter regarding our communication. I never received the letter memorializing our conversation. I sent an email to AO Jones memorializing our communication. AO Jones did not respond to me until January 11, 2018.

On January 11, 2018, AO Jones sent me an email advising me that I had been placed on AWOL due to my excessive and unexcused absences. January 12, and on January 25, 2018, I sent additional medical documentation to support my disability to AO Jones via email and he replied by thanking me for the medical documentation. I was under the impression that everything was okay, and that AO Jones now understood and was now in line with the regulation. Therefore, I believed I was still being afforded LWOP. All through this process I continued to provide medical documentation to HRD and FBI Dallas Division.

On March 2, 2018, I logged onto the National Financial Center and reviewed my Employee Personal Page and was shocked to learn that I had been placed on AWOL.

 Affiant's Initials AB.

According to Executive Order 5396, whenever a disabled veteran is being treated for injuries, they are granted LWOP. Additionally, under the Executive Order LWOP is to be granted to disabled veterans. and to my knowledge, there are no stated time limits. I was discriminated against when I was placed on AWOL as a disabled veteran. I did what I was required to do by proving I have a disability (providing the necessary medical documentation by duly appointed medical professionals), which is the reason that I was unable to return to work.

With respect to accepted issue "2" on September 2017, I sent an email to Unit Chief (UC) Michael Huff and his staff in HRD advising them that according to the VA, my disability rating was adjusted upwardly from 40% disabled to 80% disabled on September 29, 2017. On September 28, 2017, UC Huff sent an email asking if OWCP had awarded me total disability. Given my new VA rating, and my suffering from excruciating pain for so long, I realized I could no longer work and decided to seek VA 100% unemployability, based on my medical disability. The VA requested by mail, that FBI officials complete Form 21-4192 to verify that I was employed with the FBI. At the time, I believed, the form was essential for me to receive additional disability benefits. This form was sent by me to various FBI officials including those previously mentioned. The VA sent the form to FBI Dallas officials. I, nor the VA, ever received a positive response, or form completion by FBI officials. The VA 21-4192 form completion request was either ignored or I was told that another

department was responsible for its completion. Form 21-4192 was never completed by FBI officials.

I followed Executive Order 5963 which states that I must provide my employer with medical documentation to support my service off work/disability status and the FBI failed to follow policy by placing me on AWOL. The FBI failed to complete the VA request to verify my application for VA disability benefits.

In addition to receiving a rating of VA 100% unemployability, effective December 7, 2017, I sought to retire from federal service (FBI) in May 2018 (I learned of the 100% rating on April 23, 2018). So, I sent a truncated version of my medical documentation, 100% VA rating, and Office of Personnel Management (OPM) disability request -SF 3112a to Yvette Cephas (FBI HRD Retirements Section). I was told that my retirement paperwork was being processed. On August 1, 2018, I received a response from UC Huff stating that because I was separated from the FBI on May 3, 2018, the FBI is unable to process paperwork I submitted in June 2018 for an Office of Personnel Management (OPM) disability retirement and I should contact OPM and file a form 3107 directly with OPM.

With respect to accepted issue "3," on March 7, 2018, I met with an FBI Special Agent at a local Starbucks and was presented with a letter from Acting Section Chief a/SC) Keri Vislocky.

Affiant's Initials AB.

The letter from A/SC Vislocky advised me that I was proposed for removal for failing to report to work from July 11, 2016 through July 13, 2016, and that I failed to properly request leave. That I failed to report to work from November 27, 2017 through February 2, 2018, amounting to over 400 hours, when my leave was denied, and I failed to follow leave procedures . Removing me from the Federal Service/FBI for failing to request leave properly is not a relevant statute. As I stated earlier, I was approved for FMLA from July 1, 2016 through September 5, 2016. From September 5, 2016 through December 10, 2016, I was placed on LWOP and beginning December 11, 2016, I was placed on AWOL. But, I was rated 100% unemployable on December 7, 2017.

The letter from A/SC Vislocky stated to contact Human Resource Specialist (HRS) Katherine Brideau, if I wanted to appeal the decision for my removal. It did not make sense to me when the end of the letter states that I may be a preference eligible employee "disabled veteran" when all along I have been submitting medical documentation proving that I am a disabled veteran. There is no leave policy guidance or regulation stated anywhere within the March 7, 2018 Prosed to Remove letter.

Nevertheless, I appealed my "Proposed Removal Letter" from the FBI within the allotted time frame for rebuttal and forwarded it to Katherine Brideau (The same truncated medical sent to VA and OPM). In April 2018, I was contacted telephonically by the same FBI agent I met with at Starbucks and I was informed that my appeal had been denied. The agent asked to meet with me in April 2018 to sign

my removal letter. I

refused to meet with the agent or to sign the removal paperwork due to a/SC Vislocky's March 2018 letter that did not contain any statutes or regulations to justify my removal from FBI rolls.

A/SC Vislocky's Proposed my Removal for AWOL although I was a disabled veteran. The FBI was provided my VA medical status from the beginning of my FBI employment (employment requirement). I was officially separated from the FBI on May 3, 2018. Signing a removal letter or signing for a removal letter by mail that states I am being removed from federal service for AWOL is not legal based on Executive Order 5396, given I was approved for leave under FMLA, and subsequently medically retired through the VA adjudication process, which negates and suspends the need for removal. The VA 100% unemployability letter was given 10 days before (April 23, 2018) the May 3, 2018 removal/separation date.

**August 2018, I received my final FBI Form 50, which states that I am a disabled veteran, nonetheless I was removed/separated for unexcused absences.**

This entire process has been exhaustive. I served in the military, Active/Reserve for 11 years and like many soldiers I received an honorable discharge and unfortunately left with a broken body. I went on to serve the United States Postal Service for 11 years, and then went on to attain a master's degree, two promotions and several awards within my six-year FBI career. Although I was not granted the FBI job I originally applied and interviewed for (FOS), and subsequently hired at a lessor pay grade and title (OST). I, nevertheless worked tirelessly and faithfully for the FBI. I was asked to

 Affiant's Initials AB.

become the FBI Dallas Division a/Auditor which exposed me to different challenges. I worked as an FBI Auditor for approximately seven months. Despite the pain I was in, I worked many hours past my eight-hour work day and even on weekends, to learn and effectively manage the position. My continued efforts paid off, as I have received numerous awards to include a Directors Award during my service with the FBI.

I have been awarded these accomplishments while experiencing excruciating pain, sometimes dealing with numbness throughout my entire lower extremities. GOD knows, I gave all I had to the FBI and I have no regrets. All I want is to have this matter settled.

As of April 23, 2018, I was awarded a 90% disabled rating and 100% unemployable, Permanent and Total veteran status. I went through OPM for immediate retirement.

The corrective action I seek to resolve this complaint is:

1. My Notification of Personnel Action (Form 50) reflect that I medically retired from the FBI instead of removal/separated.
2. An official email sent to all FBI Dallas Division employees, that states, I Archie Butler can enter FBI premises as I would like to visit close friends at some point (future retirements/employee awards/accomplishments).
3. I request FBI retired credentials once my OPM retirement date is confirmed as I am retiring due to VA/service and OWCP accepted medical condition(s).

4. Official documented training for all FBI employees regarding the treatment of disabled persons to include rights and responsibilities of both the disabled and FBI personnel.
5. Given FBI officials would not acknowledge my VA accepted injuries and therefore, did not complete the necessary VA employment form 21-4192; I request
    - Compensatory damages in the amount of $6,735. Which is three months of VA 100% pay that was hindered and or delayed from September 2018 through November 2018.
    - Compensatory damages in the amount of $13,000.00 for treatment of anxiety and depression.
    - Punitive damages in the amount of $154,000, which is GS-11 pay for 25 months of undue hardship and stress given what I believe was an intentional attempt to undermine the ADA, and my protected Veteran status by wrongful termination.

I do not have knowledge of any additional information I believe is relevant to the scope of this inquiry, as SSA Hill described it to me. I have read this statement, consisting of fourteen (14) pages. The entire statement is true and complete to the best of my knowledge and belief.

SSA Hill, EEO Investigator, has instructed me not to discuss this interview or share the contents of this statement with anyone other than the person(s) conducting this interview, OEEOA representatives, the Office of the General Counsel or the declarant's designated representative, the Ombudsman's Office, and/or the Employee Assistance Program.

I have been admonished I must obtain authorization from the EEO Officer or her designee prior to discussing this matter with anyone outside the offices referenced above. I also understand my failure to comply with this confidentiality provision may result in referral for disciplinary action.

I declare under penalty of perjury pursuant to 18 U.S.C. § 1621 the foregoing is true and correct.

Executed on: August 27, 2018

Archie Butler

# Certificate of Closing

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A. For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: 01/05/2021

Signature of Plaintiff [signature]

Printed Name of Plaintiff ARCHIE BUTLER

### B. For Attorneys

Date of signing: ____________

Signature of Attorney ____________

Printed Name of Attorney ____________

Bar Number ____________

Name of Law Firm ____________

Street Address ____________

State and Zip Code ____________

Telephone Number ____________

E-mail Address ____________

[REDACTED], former Special Agent in Charge (SAC), Dallas Division (DL), Federal Bureau of Investigation (FBI), do hereby solemnly swear to the following:

I have been advised by Supervisory Special Agent (SSA) Eric J. Croyle, Office of Equal Employment Opportunity Affairs (OEEOA), FBI, that he is investigating a complaint of employment discrimination (FBI-2016-00183) pursuant to Title 29 of the Code of Federal Regulations, Part 1614.

I understand the complainant is Archie Butler, Financial Operations Specialist (FOS), assigned to the Finance Office (FO), DL, FBI, and I have been identified as an individual who may possess information relevant to this matter. I understand that the issues accepted for investigation are:

Whether complainant was subjected to reprisal for prior EEO activity when:

1) On May 11, 2016, he was moved from an office to a cubicle;

2) On June 27, 2016, following a six-week absence, he discovered his desk did not have a telephone jack, he did not have access to the "low side terminal," and management had deactivated his access to financial systems;

3) 

4) On June 29, 2016, he was told he could not "flex," had to call his supervisor if he was more than 15 minutes late, and that if he were more than 5 minutes late, he would be charged leave;

5) On June 11, July 25 and July 27, 2016, he was told he was being placed in absent without leave (AWOL) status; and,

6) On July 15, 2016, he was told his request for leave under the Family Medical Leave Act (FMLA) was being denied.

## DECLARANT'S BACKGROUND INFORMATION

EOD: 1/22/1990

Awareness of complainant's EEO activity: With respect to Butler's EEO activity; I did not become aware that Butler had engaged in EEO activity until I received the email from EEO Investigator, SSA Eric Croyle, on July 14, 2017.

I entered on duty with the FBI on January 22, 1990. I retired from the FBI on January 22, 2017, after serving as the

SAC for DL since March 6, 2015. At no time did I discriminate or retaliate against Butler for his EEO activity.

With respect to **allegation "1"**, I have no knowledge of these allegations.

With respect to **allegation "2"**, I have no knowledge of these allegations.





who finally convinced me that perhaps deactivating Butler's access may be making Butler more unstable. At that point I decided to have his access reactivated for good.



With respect to **allegation "4"**, I have no knowledge of these allegations.

With respect to **allegation "5"**, I have no knowledge of these allegations.

With respect to **allegation "6"**, I have no knowledge of these allegations.

From the time that I arrived until May 2016, when Butler was not selected for the full-time Auditor position, I believed him to be a really nice and decent guy. I had no issues with him to that point and thought he was an outstanding employee. I even encouraged him to apply for the Auditor position when it posted. I also know that ASAC Tillman spent a lot of time working with FBIHQ to see if there was any way to get Butler qualified for the position. Once Butler's application for the Auditor position was rejected by FBIHQ due to insufficient educational requirements, Butler's performance began to suffer. His attitude changed from day to night. He was disgruntled with FHIHQ and he began to become a problem in the office. I could not have seen his change in attitude coming based upon my prior interactions with him.

I do not have knowledge of any additional information I believe is relevant to the scope of this inquiry as SSA Croyle described it to me.  I have read this statement consisting of six pages.  The entire statement is true and complete to the best of my knowledge and belief.

SSA Croyle, EEO Investigator, has instructed me not to discuss this interview or share the contents of this statement with anyone other than the person(s) conducting this interview, OEEOA representatives, the Office of the General Counsel or the declarant's designated representative, the Ombudsman's Office, and/or the Employee Assistance Program.

I have been admonished that I must obtain authorization from the EEO Officer or her designee prior to discussing this matter with anyone outside the offices referenced above.  I also understand that my failure to comply with this confidentiality provision may result in referral for disciplinary action.



 # Defendant(s)

**B. The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | Thomas Class |
| Job or Title *(if known)* | FBI, SUPERVISORY AGENT IN CHARGE |
| Street Address | 1 JUSTICE WAY |
| City and County | Dallas, Dallas County |
| State and Zip Code | Texas, 75220 |
| Telephone Number | 972-559-2000 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | Niambi Tillman |
| Job or Title *(if known)* | FBI, ASSISTANT SPECIAL AGENT IN CHARGE |
| Street Address | 1 JUSTICE WAY |
| City and County | Dallas, Dallas County |
| State and Zip Code | Texas, 75220 |
| Telephone Number | 972-559-2000 |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | Sandra Hollingshead |
| Job or Title *(if known)* | FBI Supervisory Financial Specialist SFOS |
| Street Address | 1 JUSTICE WAY |
| City and County | Dallas, Dallas County |
| State and Zip Code | Texas, 75220 |
| Telephone Number | 972-559-2000 |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | Jeff Rutherford |
| Job or Title *(if known)* | FBI A/Assistand Special Agent in Charge |
| Street Address | 1 Justice Way |
| City and County | Dallas, Dallas County |
| State and Zip Code | Texas, 75220 |

B. Defendant(s)

Defendant No. 5

| | |
|---|---|
| Name | Jackie Estok |
| Job or Job Title | FBI Unit Chief |
| Street Address | 935 Pennsylvania Ave |
| State and Zip Code | Washington, DC |
| Telephone Number | (202) 324-3000 |
| Email Address (if known) | |

---

| | |
|---|---|
| Telephone Number | 972-559-5000 |
| E-mail Address *(if known)* | |

**C. Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | Federal Bureau of Investigation |
| Street Address | 1 JUSTICE WAY |
| City and County | DALLAS, DALLAS COUNTY |
| State and Zip Code | TEXAS, 75220 |
| Telephone Number | 972-559-2000 |

## II. Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☒ Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note: In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐ Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note: In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐ Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note: In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☒ Other federal law *(specify the federal law)*:

5 CFR 353.202 – Discrimination and acts of reprisal prohibited

**Defendant(s) Continued.**

**Defendant No. 1**, Special Agent in Charge (SAC), Thomas Class – "TC"

Contained herein are statements made by SAC "TC" in his own words. The FBI OIG, nor did the Office of Federal Operations address these statements made by "TC", as is seen or not seen within their decision letter dated 10/06/2020. I ask the court to properly assess the evidence, which is included within this exhibit. The complete case file will be provided to the court when the court finds it appropriate.

"TC" created material harm to the plaintiff when he wrote on July 20, 2017 "FBI-Sworn Testimony" that he deactivated Plaintiff's work access badge because he (Plaintiff), was displaying erratic behavior. At no time before plaintiff filed a EEO complaint did "TC" express any concern over the plaintiff's workplace demeanor. These slanderous statements were made in written form, a year after the plaintiff left to seek treatment for his injuries but were never given to the plaintiff or the plaintiff's attorney of record at the time (Rob Wiley and Associates).

- Is it reasonable to the court, that the Supervisory in Charge of the entire North Texas FBI would have these concerns but never address them with his employee who worked directly under him, "TC" as the Auditor? "TC" expresses valid security concerns within his FBI Sworn Testimony but failed to alert the plaintiff. This is not reasonable.

- Is it reasonable to the court, that an FBI employee could attempt to enter any FBI space with unauthorized firearms? Is it reasonable to believe that an unauthorized employee would ask permission to enter an FBI installation with privately owned firearms?

- Is it reasonable to the court, that an FBI employee could engage in threatening behavior towards fellow FBI employees and not be formally counseled, charge and admonished for the alleged behavior?

- "TC" never produced one statement from any employee that proved his allegations were correct. In fact, the plaintiff was promoted during the time, the alleged "road rage incident" occurred.

Plaintiff has never engaged in inappropriate behavior as is seen in his FBI Directors Certificate of Achievement, multiple promotions, monetary cash awards and Ultimately his rated "Outstanding" Performance ratings for which he was told was the reason he (Plaintiff), was being detailed to the coveted Auditor position. Plaintiff has never been rated below "Excellent" during his FBI tenure.

I respectfully ask the court to examine the testimony given by "TC", as his statements can only be viewed as retaliatory given there are no statements, affidavits or even a witness name included within his "TC", fraudulent testimony.

The Administrative Judge found that the statements contained within this testimony were appropriate even though no evidence supports its conclusions. It cannot be reasonable that an employee is barred from entering his workplace without evidence to support the action.

I ask the court to overturn her decision.

**Defendant No. 2**, Assistant Special Agent in Charge (ASAC), Niambi Tillman – "NT"

Contained herein are statements made by ASAC "NT" in her own words.  The Office of Federal Operations refused to hold this FBI employee accountable as is seen or not seen within their decision letter dated 10/06/2020.  I ask the court to properly assess the evidence, which is included within this exhibit.  The complete case file will be provided to the court when the court finds it appropriate.

"NT" created material harm to the plaintiff when she wrote on February 27, 2017 "Letter to Office of Workman's Compensation-OWCP", that she was aware of Plaintiff being locked out of his workplace on multiple occasions. But, in Sworn FBI testimony "NT" wrote on July 17, 2017, that she was unaware of plaintiff being locked out of his workplace "Lack of Candor."

"NT" demonstrated a lack of candor and as such harmed the plaintiff by not speaking truthfully concerning the apparent retaliation from management officials who charged plaintiff with AWOL when he clearly was not allowed to enter his workplace.  In addition, "NT" spoke to the apparent injuries the plaintiff was dealing with, which we assert prevented him from returning to work without proper treatment.  Plaintiff was never allowed to obtain necessary medical treatment for his accepted OWCP injuries given the untruthful statements made by "NT" and other FBI management officials.

# LACK OF CANDOR

ASAC Niambi Tillman, Official Statement, Department of Justice (DOJ)

Federal Bureau of Investigation, Dated February 27, 2017

RE: Response to Letter drafted by Financial Operations Specialist (FOS)

Archie Butler

ASAC Niambi Tillman, Signed Sworn Statement, EEOC Affidavit

RE: Sworn Testimony, dated July 18, 2017, pursuant to 18 U.S.C., 1621

The response letter/statement contained herein was sent to the Office of Workman's Compensation (OWCP) to refute my claim of injury (Claim 102025649). I offer this evidence to demonstrate a pattern of "misconduct" by Dallas FBI management officials regarding my claim(s) of Racial Discrimination.

This information speaks directly to the Charge(s) of AWOL, as Dallas FBI officials knew I was not allowed access to my workplace on multiple occasions, spanning multiple months. This information also demonstrates the total disregard for the truth or a human beings civil rights.

I have not entered the entire written statement or the entire sworn statement as to only highlight the matter of "lack of candor." If needed, and at your request, I will provide the complete record. No statement contained has been altered other than providing a shortened version.

Thank you

Archie Butler

U.S. Department of Justice

Federal Bureau of Investigation

Washington, D.C. 20535-0001

**Response to Letter drafted by FOS Archie Butler**

In response to the letter drafted by FOS Archie Butler, I have provided my personal insights and recollections as they pertain to several portions of the letter. I did not respond to any items in the letter of which I do not have personal, direct knowledge.

The actions of the FBI Dallas Division's Executive Management team and my immediate Supervisor has caused and continues to cause me extreme mental stress and duress. May 2016, I notified Executive Management, FBI - Dallas Division of the mental stress they were causing me as evidenced by FMLA paperwork from Dr. Kristen Backe with the Veterans Administration, North Texas Health Care Center (attached in medical documentation) and an e-mail correspondence from me to executive management, ASAC Naomi Tillman. I did not file a OWCP CA2 for stress originally, because I thought the stress was covered under my open OWCP claim number 102025649, but was informed on November 28, 2016, that stress is a separate claim. I am currently receiving treatment for a back condition that has worsened over the past two years or so and a claim is pending. Moreover, the stress of this situation, in my opinion and that of my primary care physicians, has attributed to the worsening of my back condition.

For background purposes, I offer the following regarding FOS Butler prior to my being notified of any work-related stress issues for FOS Butler in May 2016.

During the week of April 11, 2016, I received a text message from Mr. Butler advising me and SFOS Sandra K. Hollingshead (hereafter referred to as Sandy) that FOS Butler would be taking sick leave (SL) for the remainder of the week however, he did not offer any explanation regarding the nature of the ailment which warranted the use of sick leave.

In an email, on FBINET, dated April 28, 2016, from Mr. Butler to the writer, Mr. Butler advised Dallas EM of the following:

"The Dallas Division Auditor position (Permanent) became available in February 2016, and I submitted an application for appointment. Upon review, the Human Resources Division (HRD)-FBIHQ found me unqualified for the position of Auditor, stating that I do not meet the 24 hour Accounting educational requirement. I have submitted several responses to HRD explaining the nature of my classes (Accounting) to include class descriptions taken directly from the schools syllabi (Grantham Univ., Southern Illinois Univ., Ellis Univ.) to no avail. As such, per the Office of Personnel Management, an employee cannot be detailed to the Auditor position whom does not meet the position requirement(s). *I have had an enjoyable and learned experience performing in the role of Auditor- Dallas Division, and hopefully one day I will be able to fulfill the requirement*

return to my original position, but later after my repeated insistence my office relented. Even after I returned, I was asked to perform audits but i did not feel it was appropriate because of their repeated denial of my education. How could I continue to perform a job they said I was not qualified to hold?

As described above, FOS Butler first voiced his desire to vacate the A/A position on April 28, 2016, and he officially vacated the Auditor's office as of May 10, 2016.

When I returned to my SF-50 position, I was removed from my original office space and was told to sit at a cubicle (partially blocked by a door), that did not have a working computer or a phone jack. I took some mental stress days from the office to deal with the stress and when I returned my badge had been deactivated and I was locked out of the office. This humiliated me, as this was witnessed by my fellow co-workers. I had to go to the guard and security personnel was asked to escort me to my office. I was originally told it was an accident, but when I met with the SAC, he informed me that he locked me out because I was a threat! He stated, I as the head of this installation must protect the employees of this Office.

FOS Butler is referring to his badge access being suspended on May 18, 2016 or May 19, 2016, at a time when I was physically in Washington, D.C. attending the Senior Management Incumbent Focus Group from May 16, 2016 through May 20, 2016. SSA Jeff Rutherford served as the A/ASAC during my absence. I was notified of FOS Butler's [illegible] badge having been deactivated, which restricted his access to the building, upon my return when I met with SAC Chen on May 20, 2016, at 1:00 pm. The 1:00 meeting was a preparatory meeting for a scheduled meeting with FOS Butler which was set to occur that same day at 2:00 pm between FOS Butler, CSO Mark White and Chief Division Counsel Thomas Petrowski. During the preparatory meeting, SAC Chen explained his decision regarding the [illegible] of FOS Butler's badge access was made in my absence due to activity that occurred while I was out of the office. Although I was not in the office during that time, SAC Chen [illegible] explanation to FOS Butler [illegible] meeting that afternoon at 2:00 pm. FOS Butler, never arrived for the meeting that day. Instead he extended his leave of absence.

On May 20, 2016, a subsequent meeting was held with SAC Chen, Chief Security Officer (CSO) Mark White, Chief Division Counsel (CDC) Tom Petrowski, Employee Assistance Program (EAP) Coordinator Kevin [illegible] and SFOS Sandy Hollingshead, after FOS Butler did not appear for his meeting. During that meeting, there was discussion primarily by CSO White about a previous "road rage" incident which occurred in February, 2015. I arrived in the Division as the ASAC on January 12, 2015, and I do not recall knowing anything about this "road rage" incident prior to the meeting on May 20, 2016. As such, I am not familiar with the details surrounding this incident nor any specifics regarding FOS Butler's involvement in the incident. As a result of this discussion, SAC Chen [illegible] FOS Butler's badge access as deactivated over the weekend, May 21, 2016, and May 22, 2016, after which the badge would be activated when FOS Butler planned to return to work on Monday, May 23, 2016. CSO White was assigned the task of having FOS Butler's badge reactivated as instructed by SAC Chen. FOS Butler did not return to work as expected on May 23, 2016.

also informed my office that I had a permanent back injury (OWCP Accepted Claim-40% Disabled Veteran), that caused me constant pain and some mornings my back was severely swollen and I was unable to get out of bed, but I put in leave and would work late nights and weekends to ensure the work was completed. Also, the caliber of my work led to me receiving several on the spot financial awards and Outstanding Annual Performance Reviews (on a scale of 1 to 5, 5 being the highest, I received a 4.8 the last two years). This, I was told, was the reason I was being selected to be Dallas Division's Acting Auditor.

I was advised by FOS Butler on several occasions he would come into the office on the weekend to completed work products. Each time FOS Butler brought this to my attention, I strongly discouraged him from coming into the office on the weekend. I emphasized the need for FOS Butler to have a good balance between work and personal life and being in the office on the weekend did not support that balance. I also stressed to FOS Butler the need for him to claim comp time (or overtime if needed) to ensure he was compensated for the time he worked. In response to my comments, FOS Butler always explained that he did it because he chose to and although he understood my position he could not guarantee he would discontinue the practice.

The amount of professionalism and care I gave to my work and work relationships has been ruined for reasons unknown to me. I was and am not able to emotionally handle the repeated negative actions and complete disregard for me as a human being. It has negatively impacted my life. I have been unable to sleep and often feel that someone from my office will someday hurt me or someone close to me. Because of these feelings and lack of rest, I have been seeking professional treatment since May of 2016. In June 2016, I started seeing Dr. Gordon Sauer-Psychiatrist to deal with the work related stress that is causing me mental distress and disorder, I have been off work intermittently since May 2016 and my last day in the office was June 28, 2016 as prescribed by Dr. Sauer. I have been given numerous medications to offset my disorders but to date I am still unable to return to my duties.

The issues described are currently being investigated through an EEO claim. However, even this grievance process has not stopped the negative and stressful interactions with my employer, who over the last two weeks has been pressuring FBI-OWCP to call me for updated medical information that could be easily obtained from Workman's Compensation

The writer has had no direct contact with FOS Butler since September 2016.

In response, I quickly sent all current medical information and was told medical documentation was needed because I was holding up a position they want to fill.

I have never in my more than 20 years of federal service been treated this way. I served 11 years in the Army (Active/Reserve), 10 years in the US Postal Service and now over four with the FBI. Although I have countless awards and financial incentives, I feel devalued as a federal employee but more importantly as a human being. This is why I am forced to divulge my inner most thoughts and concerns to those versed in the practice of psychotherapy so I can remain mentally healthy despite ongoing attempts to characterize me as someone other than who I have proven to be.

Nkechi R. M. Tillman offers the above in response to the letter submitted by FOS Butler.

[signature] 2/27/17

AOSC Nkechi R. M. Tillman
Dallas Division

Archie Butler - Civil Complaint 01/05/01

63

Dallas, TX

SIGNED SWORN STATEMENT

I, Niambi R. M. Tillman, Assistant Special Agent In Charge (ASAC), Operational Support Branch (OSB), Dallas Division (DL), Federal Bureau of Investigation (FBI), do hereby solemnly swear to the following:

I have been advised by Supervisory Special Agent (SSA) Eric J. Croyle, Office of Equal Employment Opportunity Affairs (OEEOA), FBI, that he is investigating a complaint of employment discrimination (FBI-2016-00183) pursuant to Title 29 of the Code of Federal Regulations, Part 1614.

I understand the complainant is Archie Butler, Financial Operations Specialist (FOS), assigned to the Finance Office (FO), DL, FBI, and I have been identified as an individual who may possess information relevant to this matter. I understand that the issues accepted for investigation are:

Whether complainant was subjected to reprisal for prior EEO activity when:

1) On May 11, 2016, he was moved from an office to a cubicle;

2) On June 27, 2016, following a six-week absence, he discovered his desk did not have a telephone jack, he did not have access to the "low side terminal," and management had deactivated his access to financial systems;

 Affiant's Initials

3) On or around June 27, 2016, he was [illegible] his badge was deactivated during his absence to [illegible] other employees insofar as he was "unpredictable," [illegible] that he was a "threat";

4) On June 29, 2016, he was told he could not "flex," had to call his supervisor if he was more than 15 minutes late, and that if he were more than 5 minutes late, he would be charged leave;

5) On June 11, July 25 and July 27, 2016, he was told he was being placed in absent without leave (AWOL) status; and,

6) On July 15, 2016, he was told his request for leave under the Family Medical Leave Act (FMLA) was being denied.

DECLARANT'S BACKGROUND INFORMATION

EOD: 7/21/1996

Awareness of complainant's EEO activity: With respect to Butler's EEO activity; I did not become aware that Butler had engaged in EEO activity until January 2017, when I was contacted by an EEO Mediator. I deny that I ever had a conversation with Butler on May 10, 2016, or at any time prior to January 2017, where I stated that I was aware of his EEO activity.

**DECLARANT'S STATEMENT**

I entered on duty with the FBI on July 21, 1996. I am currently the OSB ASAC for DL where I have been assigned since January 2015. At no time did I discriminate or retaliate against Butler for his EEO activity.

With respect to **allegation "1"**, I was aware that Butler was moved from an office to a cubicle when he returned to his position as an FOS, after his temporary assignment as the Acting Auditor. I was not involved in this decision but was aware that Butler's supervisor, Financial Manager (FM) Sandra Hollingshead, wanted all of the FOSs to be in the same room in cubicles.

With respect to **allegation "2"**, I have no knowledge of these allegations. I am generally aware that some of the computer and financial systems lock users out if they haven't accessed the system for an extended period of time and that may have been the reason for his access being deactivated.

**With respect to allegation "3", on June 27, 2016, I did sit in on a meeting between SAC Thomas Class and Butler, but I never heard Class mention anything about deactivating Butler's access badge to protect other employees, or that he was "unpredictable" or a "threat." Also, Class never instructed me to deactivate Butler's badge. I am only aware that Class was concerned about Butler's medical condition and wanted to ensure that he was in**

good enough physical condition to perform his job when he did return.

On June 13, 2016, Butler advised he tried to get into the office and his badge did not work. I never told Butler that his access badge was broken or lie to him on June 13, 2016. On June 14, 2016, I sent an email to our Chief Security Officer (CSO) Mark White where I informed him that Butler's badge did not work on June 13, 2016, and asked if there was something wrong with his badge. On June 15, 2016, White responded that Butler should have had unrestricted access to the building as of June 3, 2016, and included an explanation that he believed it was just a "glitch/error" in the system when Butler's badge failed to work on June 13, 2016.

I did call Butler while he was on leave to pass on a message from SAC Class. Hollingshead met with SAC Class and alleged that in a meeting between her and Butler, Butler used the racially derogatory "n" word. SAC Class requested that I contact Butler and advise him that that language would not be tolerated. Subsequently, I called Butler and informed him of SAC Class's concerns regarding his interactions with Hollingshead.

With respect to **allegation "4"**, On June 29, 2016, I did have a meeting with Butler and Hollingshead after Hollingshead

SSA Croyle, EEO Investigator, has instructed me not to discuss this interview or share the contents of this statement with anyone other than the person of conducting this interview, OEECA representatives, the Office of the General Counsel or the declarant's designated representative, the Ombudsman's Office, and/or the Employee Assistance Program.

I have been admonished that I must obtain authorization from the EEO Officer or her designee prior to discussing this matter with anyone outside the offices referenced above. I also understand that my failure to comply with this confidentiality provision may result in referral for disciplinary action.

**I declare under penalty of perjury pursuant to 28 U.S.C. 1621 the foregoing is true and correct.**

**Executed on: July 18, 2017.**

Affiant's Initials ___

Archie Butler - Civil Complaint 01/05/01                                                    69

**Defendant No. 3**, Supervisory Financial Operations Specialist, SFOS Sandra Hollingshead, "SH"

Contained herein are statements made by SFOS Sandra Hollingshead "SH" in her own words. The Office of Federal Operations refused to hold this FBI employee accountable as is seen or not seen within their decision letter dated 10/06/2020. I ask the court to properly assess the evidence, which is included within this exhibit. The complete case file will be provided to the court when the court finds it appropriate.

"SH" created material harm to the plaintiff when she wrote on February 22, 2017 "Letter to Office of Workman's Compensation-OWCP", that she was aware that Plaintiff had engaged in protected EEOC activity on May 11, 2016. But, in Sworn FBI testimony "SH" wrote on July 28, 2017, that she was unaware of plaintiff's protected EEOC activity.

"SH" actually states within her letter to the OWCP, that she was made aware of plaintiff's EEOC activity to include where the EEOC Counselor was located regionally.

"SH" demonstrated a lack of candor and as such harmed the plaintiff by not speaking truthfully concerning the FBI Sworn Testimony processes thus thwarting the rule of law. In addition, "SH" spoke to the apparent injuries the plaintiff was dealing with, which we assert prevented him from returning to work without proper treatment. Plaintiff was never allowed to obtain necessary medical treatment for his accepted OWCP injuries given the untruthful statements made by "SH" and other FBI management officials.

At no time did "SH" speak to plaintiff about any alleged displeasure with his work regimen or demeanor until he filed an EEO claim. Plaintiff's "outstanding Performance reviews were given him by his Supervisor "SH", to include several monetary awards.

# LACK OF CANDOR

SFOS Sandra Hollingshead, Official Statement, Department of Justice (DOJ)

Federal Bureau of Investigation, Dated February 22, 2017

RE: Response to Letter drafted by Financial Operations Specialist (FOS)

Archie Butler

SFOS Sandra Hollingshead, Signed Sworn Statement, EEOC Affidavit

RE: Sworn Testimony, dated July 28, 2017, pursuant to 18 U.S.C., 1621

**The [illegible] letter/statement contained herein was sent to the Office of Workman's Compensation** (OWCP) to refute my claim of injury (Claim 162254508). I offer this evidence to demonstrate a pattern of "misconduct" by Dallas FBI management officials regarding my claim(s) of Racial Discrimination.

**Dallas FBI officials knew (written statement to OWCP) I was engaged in protected EEOC activity but state in sworn testimony that that were unaware. This information also demonstrates the total disregard for the truth or a human beings civil rights.**

I have not entered the entire written statement or the entire sworn statement as to only highlight the matter of "lack of candor." If needed, and at your request, I will provide the complete record. No statement contained has been altered other than providing a shortened version.

Thank you

Archie Butler



**U.S. Department of Justice**

**Federal Bureau of Investigation**

---

**Washington, D. C. 20535-0001**
**February 22, 2017**

RE: FOS Archie Butler Letter:

I will address several paragraphs/sentences of the Archie Butler Letter:

The actions of the FBI Dallas Division's Executive Management team and my immediate Supervisor has caused and continues to cause me extreme mental stress and duress. May 2016, I notified Executive Management, FBI – Dallas Division of the mental stress they were causing me as evidenced by FMLA paperwork from Dr. Kristen Backe with the Veterans Administration, North Texas Health Care Center (attached in medical documentation) and an e-mail correspondence from me to executive management, ASAC Naombi Tillman. I did not file a OWCP CA2 for stress originally, because I thought the stress was covered under my open OWCP claim number 102025649, but was informed on November 28, 2016, that stress is a separate claim. I am currently receiving treatment for a back condition that has worsened over the past two years or so and a claim is pending. Moreover, the stress of this situation, in my opinion and that of my primary care physicians, has attributed to the worsening of my back condition.

**Paragraph 1, Page 1, Sentences 1 – 2:**

Since transitioning back to the FOS position on May 9, 2016, the following timeline are actions that occurred by FOS Butler in regards to his time and attendance and notifying his supervisor of his whereabouts:

**During week of April 18, 2016, FOS Butler sent a text message to ASAC Tillman and myself advising he will be taking SL for the remainder of the week. ASAC Tillman responded back as to whether he was having surgery on his back;** however, he did not respond. When he returned the following week, he mentioned to me that he obtained a lawyer and met with them on Monday and Tuesday (the dates he advised he was on AL/SL). He did not produce a doctor's note that I am aware of even though he advised in his text that he would get the doctor's note to Nurse Karla Kennedy. **FOS Butler never mentioned he was filing a workman's comp claim for stress or for any injury since I have been in this division.** On one occasion, he told a fellow coworker, FOS Ben Pelg, and myself that he was healthy, had no issues (note: this was the day following a VA appointment).

I found out about the workman's comp claim when I received the automatic notification from the Department of Labor that I had a document to review. I was out of the office during that time and was not able to open the document on my Samsung phone. I forwarded the document to SAC Thomas Class and ASAC Niambi Tillman to see if they could. SAC Class advised he was able to open the document and advised it was a workman's comp claim for FOS Butler.

On July 7, 2016, I received email from Joyce Saccuzzo advising that the DOL workers compensation claim was not approved. I contacted her to discuss this matter as this was the first time having to deal with this type of form and based on her explaining the criteria that needs to be meant for a workman's comp claim, FOS Butler did not meet any of these, therefore, I had advised I would not approve because he did not meet that threshold.

On another occasion (May 2, 2016), I sent a text message to FOS Butler asking him to say where he was, as I had not seen him that day. He advised he was very ill and not coming in. He said he thought he had sent me a text message; however, I did not receive one. The next day he came into the office but did not see me; therefore, I sent him a lynx text to check on him and he advised he was fine. He came in 2 hours late (no prior leave slip submitted/no prior approval). Historically, I was lenient on him coming in late, as I was aware he had back problems and often times stopped by the nursing home to visit his mother. However, after he was in the acting Auditor position, he failed to advise me of his comings and goings, which he had done in the past, so I began questioning where he was.

Then, on May 4, 2016, he had left at 3:30p (no leave slip submitted/approved prior) advising that he was going to "work on the barrel to his firearm". It should be noted that he constantly made references to his use of firearms and going to the shooting range.

On May 9, 2016, he had sent the following text message to my personal phone wanting me to change our Finance Office meeting to 11 am rather than the scheduled 10 am due to the following: "A coworker asked me for my help with their family estate this morning. Its starts at 930 and should conclude shortly after! It shouldn't take me more than 30 minutes to get to work after that." (No leave slip was submitted/approved prior).

I advised that I would brief him when he came in. He came in at 10:30, went to wash hands, then was out of the office for some time. He asked if there was anything I needed for him to do and I had asked him if he could go to closed files to locate a T# that was needed for an employee. He said "do I really have to do that?" then came in and obtained the number and left closed files. He returned back then went to lunch. Later in the day I asked him if he had any luck. He said he had been in there three different times and was not able to locate the T#. I then advised for him to contact the secretary to see if it was logged, which it was. He was then able to obtain a copy. Upon my departure for the day, I noticed he was outside talking on his phone so I waited for him. I advised him that I would like to meet with him first thing tomorrow. He advised "yes ma'am."

On May 11, 2016, I received a text message on my personal phone at 9:19 am advising "tough morning on my way." I responded and advised we need to have a meeting.

Upon his arrival, I sat with FOS Butler and advised I had concerns of his comings and goings and how things have changed since he became the acting Auditor. He proceeded to tell me how he was "not mad" but disappointed in this office. He was not happy with how the SAC handled his package. All he wanted was someone to sit him down and explain that the Auditor position was going in a different direction and he was "not the right fit" for the position. He continued to advise how the UC in HRD (Jackie LNU) basically has ruined his career because he cannot qualify for any jobs. He explained that he has filed a grievance and some individual from Sacramento (PNU LNU) office is handling his case.

He then advised how he spoke with ASAC Tillman and advised of his concerns as well and that she had made a comment as to whether or not he was going to his car. (Note: He makes it known that he carries assault type firearms in his vehicle and was told as long as he parked outside the gate, he was allowed to). He then advised 'what do they think I'm gonna shoot up the place' and proceeded to use the "N word." I had asked him to not use that word because I felt it to be extremely offensive. He again said the "N" word and I asked him to stop.

He then continued to advise he never wanted the Auditor position but now "they" (meaning Bureau) are making it personal because he did not qualify for the position. He told me about the accounting courses he had and that how the Bureau is not looking at the objective portion to show that he has qualifying courses. He advised he had a master's degree and that just because the letters (course numbers) were different, they were treating it as not being qualified.

He advised this was not what he wants to do at this time (meaning working in finance). I told him that if he needed to take some time off that we needed to talk about it first. I then advised of the meeting I had with the Finance Office, the changes to the area of responsibility, and that I would like him to relocate to the remaining desk in the finance office (he was sitting in the back storage area) and that I wanted to him to be part of the team/unit. He said he would. As I was talking to him about the relocation to the new cubicle, he got up and advised whatever was needed he would do. His mannerism at this time seemed to be very agitated, in my opinion, as he got up then left my office, then apparently left the building.

Later in the day, I had asked a fellow employee if he had seen FOS Butler and the individual advised he told them he would see them on Monday. This leave was not discussed nor approved by me. I sent FOS Butler a text message asking if everything was ok and if he would return tomorrow.

Upon arriving home, I received the following text message: "I called to tell you that I will be out for an unspecified amount of time. I and my family, are thinking it may be better for me to cut my losses and consider other opportunities. I will be sending a leave of absence

FOS Butler came to me later that day and advised that SFoA Burke was a "racist" and he did not appreciate the way SFoA Burke was questioning him on whether or not he knew accounting. SFoA Burke also came to me the next day and advised what had transpired and that he asked FOS Butler if he knew what accrual accounting was, which is when FOS Butler became angry.

Then, I was questioned about my time and attendance. I was always told by members of the Executive Management team that my attendance and work performance was above reproach and it was not necessary or recommended that I work so many hours. But, in my former life as a Sergeant in the Army, I was taught that attendance is paramount. It speaks to who I am as a person. I regularly work 50 to 60 hours a week. I come in on the weekends and Holidays without seeking compensation (pay or compensatory credit hours). If I am late, I make up for it on the back end of the work day (Allowed by Supervisor) and yet I still put in leave. I also informed my office that I had a permanent back injury (OWCP Accepted Claim- 40% Disabled Veteran), that caused me constant pain and some mornings my back was severely swollen and I was unable to get out of bed, but I put in leave and would work late nights and weekends to ensure the work was completed. Also, the caliber of my work led to me receiving several on the spot financial awards and Outstanding Annual Performance Reviews (on a scale of 1 to 5, 5 being the highest, I received a 4.8 the last two years). This, I was told, was the reason I was being voluntold to be Dallas Division's Acting Auditor.

**Paragraph 3, Page 2, Sentences 1 – 2:**

Regarding FOS Butler's time and attendance: Both myself and ASAC Tillman have advised FOS Butler on at least two occasions that if he was going to work after hours or on weekends that he needed to claim comp and/or overtime (if available). He said he just wanted to get the job done and did not want to claim anything. However, we advised he could not work for "free" and that it needed to be claimed. On one occasion (December 27, 2015), his WebTA reflected that he claimed six hours of comp time and I had sent him an IM advising whether or not that was accurate. He responded, "Yes ma-am, I have worked more weekends than listed but I did not want to overdue it!. I only put this time in because I was told to do so, otherwise I would have wanted it to go as planned and work to get it done." Upon further review, it was determined that he did not badge in/out anywhere in the building on same date.





**Dallas, TX**

**SIGNED SWORN STATEMENT**

**I, Sandra K. Hollingshead, Supervisory Financial Operations Specialist (SFOS), assigned to the Operational Support Branch (OSB), Dallas Division (DL), Federal Bureau of Investigation (FBI), do hereby solemnly swear to the following:**

I have been advised by Supervisory Special Agent (SSA) Eric J. Croyle, Office of Equal Employment Opportunity Affairs (OEEOA), FBI, that he is investigating a complaint of employment discrimination (FBI-2016-00183) pursuant to Title 29 of the Code of Federal Regulations, Part 1614.

I understand the complainant is Archie Butler, Financial Operations Specialist (FOS), assigned to the Finance Office (FO), DL, FBI, and I have been identified as an individual who may possess information relevant to this matter. I understand that the issues accepted for investigation are:

Whether complainant was subjected to reprisal for prior EEO activity when:

1) On May 11, 2016, he was moved from an office to a cubicle;

2) On June 27, 2016, following a six-week absence, he discovered his desk did not have a telephone jack, he did not have access to the "low side terminal," and management had deactivated his access to financial systems;

Affiant's Initials

3) On or around June 27, 2016, he was informed his badge was deactivated during his absence to protect other employees insofar as he was "unpredictable," and it was insinuated that he was a "threat";

4) On June 29, 2016, he was told he could not "flex," had to call his supervisor if he was more than 15 minutes late, and that if he were more than 5 minutes late, he would be charged leave;

5) On June 11, July 25 and July 27, 2016, he was told he was being placed in absent without leave (AWOL) status; and,

6) On July 15, 2016, he was told his request for leave under the Family Medical Leave Act (FMLA) was being denied.

DECLARANT'S BACKGROUND INFORMATION

EOD: 7/6/1997

Awareness of complainant's EEO activity: [illegible] Butler's EEO activity; I did not become [illegible] had engaged in EEO activity until I [illegible] Investigator, SSA Eric Croyle, on July [illegible].

DECLARANT'S [illegible]

I entered on duty with the FBI on [illegible]. I am currently the SSOS for [illegible] where I have [illegible]

September, 2014. At no time did I [illegible] against FOS Butler for his EEO activity.

With respect to allegation "1", on May 11, 2016, I met with FOS Butler to discuss his return to the FOS position and about concerns I had of his comings and goings from the office and how things have changed since he was the Acting Auditor. Among other topics, we discussed his return to FOS duties. FOS Butler advised this was not what he wants to do at this time (meaning working in finance). I told him that if he needed to take some time off that we needed to talk about it first. I then advised of the meeting I had with the Finance Office, the changes to the area of responsibility, and new staff that would need his assistance for training. I told him that I would like him to relocate to the remaining cubicle desk in the finance office, which was the first one inside the door to our work area. This space was not being blocked by the door as the door opens outwards towards the hallway. While our space was undergoing construction, FOS Butler had previously been sitting at a small desk in a storage area, but it was not an office, it is used to store all of our financial documents that have been processed. During that meeting, FOS Butler responded that he would. Since FOS Butler had been the Acting Auditor, I received two additional FOS's and in order to promote comradery, I wanted all

 Affiant's Initials [signature]

380-E form, his request for FMLA was approved for July 14, 2016 through July 22, 2016.

I do not have knowledge of any additional information I believe is relevant to the scope of this inquiry as SSA Croyle described it to me. I have read this statement consisting of sixteen pages. The entire statement is true and complete to the best of my knowledge and belief.

SSA Croyle, EEO Investigator, has instructed me not to discuss this interview or share the contents of this statement with anyone other than the person(s) conducting this interview, OEEOA representatives, the Office of the General Counsel or the declarant's designated representative, the Ombudsman's Office, and/or the Employee Assistance Program.

I have been admonished that I must obtain authorization from the EEO Officer or her designee prior to discussing this matter with anyone outside the offices referenced above. I also understand that my failure to comply with this confidentiality provision may result in referral for disciplinary action.

I declare under penalty of perjury [illegible] 18 U.S.C. 1621 the foregoing is true and correct.

Executed on: July 28, 2017.

Affiant's Initials [illegible]



**Defendant No. 4**, Acting/Assistant Special Agent in Charge (SUPV), Jeff Rutherford – "JR"

Contained herein are statements made by A/ASAC "JR" in his own words. The Office of Federal Operations refused to hold this FBI employee accountable as is seen or not seen within their decision letter dated 10/06/2020. I ask the court to properly assess the evidence, which is included within this exhibit. The complete case file will be provided to the court when the court finds it appropriate.

"JR" created material harm to the plaintiff when he wrote on July 16, 2016 "Email to Plaintiff", that FBI management officials were suspending the plaintiff's access to his workplace, while he (Plaintiff), was on medical leave. But, in FBI Sworn Testimony, A/ASAC Rutherford wrote on July14, 2017 that Plaintiff's access was actually being suspended because he (Plaintiff), had attempted entry at 4:00 am during his period of medical leave which caused FBI management official's concern.

"JR" demonstrated a lack of candor and as such harmed the plaintiff by not speaking truthfully concerning the apparent retaliation from management officials who charged plaintiff with AWOL when he clearly was not allowed to enter his workplace. In addition, "JR" clearly demonstrates his lack of candor by not addressing the plaintiff's concerns which were, why he was being denied access to the workplace. Surely if the plaintiff engaged in improper work protocols someone would have told him.

Instead, FBI Dallas management officials chose to insert unproven allegations into Sworn Testimony while never engaging the plaintiff in direct communication to state their reason(s) for taking the action of locking him out. This, we believe, is an example of "Lack of Candor" to include thwarting the rule of law.

**Email chain restricting my access to Dallas FBI Field Office during period of (AWOL) proposed removal**

On Jul 6, 2016, at 1:27 PM, Rutherford, Jeff D. (DL) (FBI) <Jeff.Rutherford@ic.fbi.gov> wrote:

I sent this message to your UNET, but was told you might not have access to the ic.fbi.gov account. Here is the message and I'm sorry if you already received it:

Archie,
Sorry to bother you today, I'm acting for Niambi and needed to send you a message. We received your email from yesterday and understand your request. When convenient, please advise ASAC Tillman of your proposed date so we can reinstate normal building access. Until then, we are temporarily suspending your access to the building.

Thanks,
Jeff

From: archie butler <abba1st2000@yahoo.com>
Date: 07/06/2016 2:09 PM (GMT-06:00)
To: "Rutherford, Jeff D. (DL) (FBI)" <Jeff.Rutherford@ic.fbi.gov>
Subject: Re: Leave

Hey Mr. Rutherford,

Thank you for the update and I will not attempt to enter the premises until I am released by my doctor. But, if possible, could you tell me why my access is being suspended? This is the second time I have been on medical leave for which my access to the building has been suspended. I just want to know what this is pertaining to and or why this is happening?

As far as my return sir, that is for now, dependent on what the Orthopedic Surgeon suggest the next course of action will be. I will most assuredly make ASAC Tillman aware of my status in the future.

Thank you sir

Archie

Archie,
Since you are on extended leave (30-60 days), you won't need access to the building during that time. The SAC wishes to meet with you when you return, so work with ASAC Tillman to coordinate when you have a firm return date. Also, ASAC Tillman is back in division next week if you would like to discuss this matter further.
Thanks,
Jeff

**Dallas, TX**

**SIGNED SWORN STATEMENT**

**I, Jeff D. Rutherford,** Supervisory Special Agent (SSA), Technical Operations Squad, Dallas Division (DL), Federal Bureau of Investigation (FBI), do hereby solemnly swear to the following:

I have been advised by Supervisory Special Agent (SSA) Eric J. Croyle, Office of Equal Employment Opportunity Affairs (OEEOA), FBI, that he is investigating a complaint of employment discrimination (FBI-2016-00183) pursuant to Title 29 of the Code of Federal Regulations, Part 1614.

I understand the complainant is Archie Butler, Financial Operations Specialist (FOS), assigned to the Finance Office (FO), DL, FBI, and I have been identified as an individual who may possess information relevant to this matter. I understand that the issues accepted for investigation are:

Whether complainant was subjected to reprisal for prior EEO activity when:

1) On May 11, 2016, he was moved from an office to a cubicle;

2) On June 27, 2016, following a six-week absence, he discovered his desk did not have a telephone jack, he did not have access to the "low side terminal," and management had deactivated his access to financial systems;

Affiant's Initials

3) On or around June 27, 2016, he was [illegible] deactivated during his absence to [illegible] insofar as he was "unpredictable," [illegible] that he was a "threat";

4) On June 29, 2016, he was told he could not "flex," had to call his supervisor if he was more than 15 minutes late, and that if he were more than 5 minutes late, he would be charged leave;

5) On June 11, July 25 and July 27, 2016, he was told he was being placed in absent without leave (AWOL) status; and,

6) On July 15, 2016, he was told his request for leave under the Family Medical Leave Act (FMLA) was being denied.

DECLARANT'S BACKGROUND INFORMATION

EOD: 4/6/2003

Awareness of complainant's EEO activity: With respect to Butler's EEO activity: I did not become aware that Butler had engaged in EEO activity until I was contacted by EEO Investigator, SSA Eric J. Croyle, on July 6, 2017.

DECLARANT'S STATEMENT

I entered on duty with the FBI on April 6, 2003 as a Special Agent. I am currently the SSA over the Technical Operations Squad in DL where I have been since August 2012. At

Affiant's Initials [initials]

no time did I discriminate or retaliate against Archie Butler for his EEO activity or for any other reason.

With respect to **allegation "1"**, I have no knowledge of these allegations.

With respect to **allegation "2"**, I have no knowledge of these allegations.

With respect to **allegation "3"**, I have no knowledge of these allegations and did not make any decisions regarding Butler's access to the building. My only involvement in this matter occurred on July 6, 2016, when I was temporarily filling in for Assistant Special Agent in Charge (ASAC) [illegible] Tillman for the day. At the ASAC meeting that morning, one of the other ASAC's mentioned to SAC Thomas Class that Butler had attempted to enter the building several days earlier at 4:00 am. SAC Class questioned why he would be trying to get in the building at all since he was on long-term medical leave, and was especially curious as to why he would be trying to get in at four o'clock in the morning. SAC Class instructed me to ensure that the Electronics Technicians (ET) were informed to continue to restrict Butler's access until he advised he would be returning to work. I contacted ASAC Tillman to advise her and she agreed and instructed me to send a message to Butler advising him of the same. Later that day I sent an email to

Affiant's Initials ____

**Butler advising him that his access would [illegible] temporarily suspended until he advised that he would [illegible]. I also instructed Butler to advise [illegible] of any updates and of his planned return date. I did not [illegible] make the decision to suspend Butler's access to the [illegible], I only informed him of the decision.**

With respect to **allegation "4"**, I have no knowledge of these allegations.

With respect to **allegation "5"**, I have no knowledge of these allegations.

With respect to **allegation "6"**, I have no knowledge of these allegations other than I was generally aware that he was out on some long term medical leave status.

I do not have knowledge of any additional information I believe is relevant to the scope of this inquiry as SSA Croyle described it to me. I have read this statement consisting of five pages. The entire statement is true and complete to the best of my knowledge and belief.

SSA Croyle, EEC Investigator, has instructed me not to discuss this interview or share the contents of this statement with anyone other than the person(s) conducting this interview, CEEOA representatives, the Office of the General Counsel or the declarant's designated representative, the Ombudsman's Office,

Affiant's Initials ____

and/or the Employee Assistance Program.

I have been admonished that I must obtain authorization from the EEO Officer or her designee prior to discussing this matter with anyone outside the offices referenced above. I also understand that my failure to comply with this confidentiality provision may result in referral for disciplinary action.

**I declare under penalty of perjury [illegible] 1621 the foregoing is true and correct.**

**Executed on: July 14, 2017.**

Affiant's Initials ____

**Defendant No. 5**, Unit Chief (UC)-FBI HRD, Jackie Estok, "JE"

Contained herein are statements made by "JE", in her own words. The Office of Federal Operations refused to address the plaintiff's education credentials nor did the Administrative Judge within her Summary Judgement. I ask the court to properly assess the evidence, which is included within this exhibit. The complete case file will be provided to the court when the court finds it appropriate.

"JE" created material harm to the plaintiff when she wrote on March 23, 2016 "Email to ASAC Niambi Tillman", that detailed what she believed to be the education standard used in government service to adjudicate an employee's education credentials.

"JE" wrote that course category is the means test by which she uses to determine course suitability. She goes on to say her staff was lenient in crediting plaintiff's Managerial and Financial Accounting courses as sufficient to prove they were in fact Accounting course given they were labeled, or the course prefix was "BA" instead of "ACCT". "JE" failed to understand that the plaintiff was enrolled in an Undergraduate and Graduate study of Business for which accounting is essential. Therefore, his course or class prefix will read as "BA", instead of "ACCT".

The plaintiff sent an email to the Office of Personnel Management (OPM), to ask the central question by which education credentials and their acceptance should be asserted.

OPM sent an email to plaintiff on July 12, 2016, which states in part, that school prefix assigned by schools do not determine acceptability of course work.

Therefore, the non-certification of Plaintiff's education credentials should have been reversed given the attached information contained herein that adequately meets the threshold for Accounting course certification.

To date, the FBI, OPR nor AJ have properly adjudicated plaintiff's education credentials for the job of auditor, GS-12. The job of Auditor in 2016 required 24 hours of accredited accounting coursework.

Plaintiff asks the court to view the evidence in a light most favorable to the plaintiff and reverse the previous decisions. Plaintiff also asks the court to start the tolling time of 45 days for a governmental grievance filing from the date UC "JE" sent her adjudication email on March 23, 2016. The FBI EEOC refused to add the education non-certification as a complaint.

Any reasonable person would believe that the "JE" email would serve as the final act of discrimination before they filed a complaint given "JE" is/was the final authority for FBI education certification. Therefore, plaintiff was well within the 45 day rule when he filed a complaint on April 28, 2016. The complaint of education non-certification should have been granted given the factual information attached.

(1)

**Archie Butler-Sworn Statement Exhibit 1**

## BUTLER, ARCHIE (DL) (FBI)

| | |
|---|---|
| **From:** | TILLMAN, NIAMBI R. (DL) (FBI) |
| **Sent:** | Wednesday, March 23, 2016 4:32 PM |
| **To:** | BUTLER, ARCHIE (DL) (FBI) |
| **Subject:** | FW: Auditor GS-12 — UNCLASSIFIED |

**SentinelCaseId:**     NON-RECORD

`Classification: UNCLASSIFIED`
===============================================

Here's the email we discussed.

*Niambi R. M. Tillman*
Assistant Special Agent in Charge
Operational Support Branch
Dallas Division
Desk: (972) 559-5008
Cell: ▓▓▓▓▓▓

---

**From:** ESTOK, JACQUELYN Z. (CK) (FBI)
**Sent:** Tuesday, March 22, 2016 3:23 PM
**To:** TILLMAN, NIAMBI R. (DL) (FBI)
**Cc:** CURRY, MARCI L. (CK) (FBI); STUTLER, JULIE A. (HRD) (FBI); ESTOK, JACQUELYN Z. (CK) (FBI)
**Subject:** RE: Auditor GS-12 — UNCLASSIFIED

`Classification: UNCLASSIFIED`
===============================================

Niambi:

Based on a review of Mr. Butler's transcripts and his email, he does not possess the appropriate accounting coursework to be credited towards the Auditor position. For example, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓ Accounting, etc would be creditable. My staff was lenient by crediting the ▓▓▓▓▓▓▓▓▓▓▓▓ and ▓▓▓▓▓▓▓▓▓▓▓▓▓ coursework along with Business Law I and II which only credited him with 12 out of the 24 semester hours needed. Possessing the coursework as described in the vacancy announcement is a basic requirement which must be met before my staff would even review the resume for specialized experience. ▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓ had highlighted other courses which reflect some type of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓ I count them as truly accounting courses. I understand he must be disappointed however this is a basic requirement for the position. I hope this answers your concerns.

Jackie

Jackie Estok
Unit Chief, HRG(WV)/HRD
304-625-4700

# RE: Auditor GS-12 Position FBI....

From: Assessment_Information (assessment_information@opm.gov)

To: abba1st2000@yahoo.com

Cc: Assessment_Information@opm.gov

Date: Tuesday, July 12, 2016, 01:06 PM CDT

Hello Mr. Butler,

Thank you for your inquiry. The course prefix assigned by the school does not determine acceptability of course work when evaluating them to meet qualification requirements. The course syllabus and course outline should be referenced to evaluate the acceptability for crediting. The nature and quality of the course work must have been such that it would serve as a prerequisite for more advanced study in the field or subject-matter area. Related course work generally refers to courses that may be accepted as part of the program major.

Best regards,

Classification and Assessment Policy

Assessment_Information@opm.gov

**From:** archie butler [mailto:abba1st2000@yahoo.com]
**Sent:** Wednesday, April 06, 2016 2:56 PM
**To:** Assessment_Information
**Subject:** Auditor GS-12 Position FBI....

Hello and good afternoon,

My name is Archie Butler-Financial Operations Specialist-Federal Bureau of Investigation (FBI), and I am currently serving in the role of Acting Auditor, which is/was a GS-12 position within the Dallas Field Office, FBI. I applied for the permanent position when it became available (FBIJOBS.GOV), in February 2016 but was told that I did not meet the Educational Requirement- **Candidate must have a degree in accounting; or a degree in a related field such as business administration, finance, or public administration that included or was supplemented by 24 semester hours in accounting. The 24 hours may include up to 6 hours of credit in business law. (The term "accounting" means "accounting and/or auditing" in this standard. Similarly, "accountant" should be interpreted, generally, as "accountant and/or auditor.").**

I have an MBA from an accredited University to include a Bachelors of Business Administration. I have posted my

Archie Butler-Sworn Statement Exhibit 1

# Questions and Answers Concerning Revised 1102 Qualification Standard

The qualification standard identifies eleven fields for the 24-hour coursework requirement. Does this mean an acceptable course must have a course number identifying one of the fields (for example, an "economics" course might be "ECN 401")?

The answer to this question first requires an understanding of the purpose of the 24-hour coursework requirement, which is to provide a person with a minimum amount of business knowledge. This is particularly important because the primary function of contract specialists is to negotiate and execute business relationships on behalf of the Government. The eleven fields listed in the standard are identical to those set forth by Congress in DAWIA, and presumably they were selected because they capture the types of knowledge and skills desired for members of the acquisition workforce to execute this function.

Colleges and universities do not use a standard convention for course numbering aligned to the eleven fields. For example, one institution identifies its accounting curriculum as "AMIS" courses, standing for "accounting and management information systems." Therefore, it is neither practical nor reasonable to restrict interpretation of the word "fields" to institutional programs using precisely the same language. Instead, it is appropriate to consider the identified fields as general subject areas. If the content of a course arguably fits within the general subject area represented by one of the fields, it should qualify toward the 24-hour requirement. A human resource specialist, or whoever in your organization credits completion of the 24 hours, may need to review the course syllabus whenever it is not obvious from the course title that content fits the field. Consider these examples: a sociology course in statistics; a public administration course in quantitative techniques; a psychology course in organizational behavior. If the content of these courses is comparable to, or perhaps is recognized by the academic institution as a substitute for, courses clearly resting in the listed fields, you should receive credit toward the 24-hour requirement. It is your responsibility to furnish supporting descriptive information if credit for a course is being questioned.

https://www.opm.gov/policy-data-oversight/classification-qualifications/general-schedule-qualification-standards/1100/questions-and-answers-concerning-revised-1102-qualification-standard/

# Education Credentials

my syllabus and course outline reference; classes will be categorized by degree program "MBA-BA", "ACCT-MA", and not by specific class origin. Could someone within the Office of Personnel Management shed some light on this situation, please?

Your cooperation and assistance is greatly appreciated

Thank you

Archie Butler

---

**BA 220 Financial Accounting – Grantham University**

**3 Credit hours, earned March 2008**

This introductory financial accounting course - introduces the student to the important role of financial accounting in modern business. The key role of financial accounting is to provide useful information to external users in order that a wide variety of economics decisions can be made. The course covers the theory and practice of accounting applicable to the recording, summarizing, and reporting of business transactions. Topics include the different types of financial statements and accounts, asset valuation, revenue and expense recognition, and appropriate accounting for asset, liability, and capital accounts.

http://www.grantham.edu/online-degrees/business-administration-bachelors/

This would be Accounting I

---

**BA 225 Managerial Accounting Grantham University**

**3 Credit hours, earned March 2008**

This course is a continuation of Financial Accounting - shifting the focus from external reporting to internal needs of managers. Managerial accounting information helps managers accomplish three essential functions: planning, controlling, and decision-making. The course provides students with an understanding of managerial accounting information to enable them to evaluate the usefulness of managerial accounting techniques in the real world. Topics include managerial accounting terminology, budgeting, costing, breakeven analysis, and cost-volume-profitability analysis. The methods of identifying and extracting relevant information from managerial accounting systems as an input to decision making and performance evaluation are stressed throughout the course.

http://www.grantham.edu/online-degrees/business-administration-bachelors/

---

**BA 405 Multinational Management – Grantham University**

**3 Credit hours, earned September 2008**

This advance course provides an introduction to multinational management. The course is designed to familiarize students with the dynamic, interrelated challenges and opportunities of operating an international business. It address issues of world trade, international investment, world financial markets, and business policy and strategy. It provides the student with conceptual frameworks and theoretical explanations applicable to the daily challenges of a practicing manager faced with cultural differences, global marketing, multinational finance and accounting, and taxation.

http://www.grantham.edu/online-degrees/business-administration-bachelors/

---

**MBA 503 Accounting for Managers – Ellis University**

**3 Credit hours, earned June 2009**

This course focuses on how managers use corporate accounting information for making business decisions. Major topics include the use of financial statements and accounting information to determine profitability and financial performance, risk, differences in structure and business models, and the relationship of cash flow statements to the balance sheet and income statements, and the use of ratios to assess the quality of a company's accounting information, and the use of internal operating metrics.

http://www.ellis.edu/degrees/graduate-degrees/graduate-degree/master-of-business-administration/index.html

---

**BA 510 Managerial Accounting and Control Concepts Sothern Illinois University**

**3 Credit hours, earned Fall 2010**

BA/ACCT 510 Managerial Accounting and Control Concepts

SIU MBA curriculum core requirements states the core area for this class is **accounting**.

http://business.siu.edu/_common/documents/syllabi/2015/fall-acct/BA510-Odom.pdf

---

**BA 580 International Dimensions of Business**

**3 Credit hours, earned summer 2012**

"Business activities of firms and social organizations are examined in an international/global environment. The course examines the fundamental concepts and principles of international/global business. It analyzes the marketing, finance, accounting, managerial, logistics, and production functions of international/global operations. It examines the changing technological environment as it impacts international/global business, including the realm of e-commerce."

---

**BA 514 Ethics of Business Southern Illinois University**

**3 Credit hours, earned spring 2013**

BA/ACCT 514 ETHICS OF BUSINESS

COURSE DESCRIPTION This course is an overview of the ethical concepts, processes, and best practices within business and Accounting. It addresses the complex environment of ethical decision making and organizational compliance in organizations as well as enhancing the awareness and decision making skills needed to contribute to responsible business conduct. MBA students will have a better understanding of the Accounting profession as it relates to the corporate social responsibility function within the 21st century. At the end of this course all should have a differential advantage in understanding values, the reality of business decision making, and be able to develop and implement an Ethics Evaluation. One of the most important aspects of the course is the learning what types of questions to ask within a firm.

http://business.siu.edu/_common/documents/syllabi/2016/spr-acct/ACCT514-Fraedrich.pdf

---

**The following classes were accepted.....**

"accounting" means "accounting and/or auditing" in this standard. Similarly, "accountant" should be interpreted, generally, as "accountant and/or auditor.").


**BA 260A Business Law 1 Grantham University**


**May 2007**


**BA 265 Business Law 2 Grantham University**


**August 2008**


http://www.grantham.edu/online-degrees/business-administration-bachelors/

**Archie Butler-Sworn Statement Exhibit 1**

SIU 9 hours

[illegible]

[illegible]

[illegible]

[illegible] Butler [illegible] various courses [illegible] in order to [illegible] are all housed [illegible] Business [illegible] Butler took the following [illegible]

[illegible]

hours [illegible] internal accounting [illegible]

[illegible] of Business

3 hours [illegible] contemporary issues [illegible] because it's taught [illegible]

[illegible] Management

3 hours [illegible] international [illegible] and [illegible] production [illegible] operations [illegible] and creative thinking [illegible]

[illegible] Information [illegible]

[illegible]

[illegible]

**Archie Butler-Sworn Statement Exhibit 1**

Ellis Univ. 3 hrs

**Subject:** Syllabus

**From:** Yahana Tegegne ytegegne@ellis.edu

**To:** abba1st2000@yahoo.com

**Date:** Thursday, March 24, 2016 3:42 PM

Hello Archie

Attached is the Syllabi for the 4 courses you completed at Ellis.

Let me know if you need additional information

**Attachments**

- image001.jpg (2.67KB)
- MBA 504 Managerial Corporate Finance.pdf (270.23KB)
- MBA 502 Economics for Managers.pdf (27[illegible].28KB)
- MBA 501 Managerial Marketing.pdf (2[illegible].8KB)
- 3 hours MBA 503 Accounting for Managers.pdf (2[illegible]1.74KB)

**Archie Butler-Sworn Statement Exhibit 1**

Grantham Total: 12 hrs

[illegible]

[illegible] 's Bachelors of Science [illegible]

[illegible]

[illegible] Butler was an undergraduate [illegible] degree program from [illegible] subject matters including [illegible] and law.

[illegible] completed the following courses in the specific [illegible]

**[illegible] Managerial Accounting**

3 hours

[illegible] real world [illegible] topics include [illegible]

**B[illegible] Financial Accounting**

3 hours

[illegible] the student to the important [illegible] financial accounting [illegible] topics include the different [illegible]

5 hours Business [illegible]

5 hours Business [illegible]

# Archie Butler-Sworn Statement Exhibit 1

If there are any questions or additional details needed, please feel free to contact me via the information listed directly below.

Respectfully,

David Whitaker, Dean
Mark Skousen School of Business
Grantham University

SOUTHERN ILLINOIS UNIVERSITY CARBONDALE

Southern Illinois University Carbondale

**OFFICIAL**

**TRANSCRIPT OF ACADEMIC RECORD**

**Record of:** Archie Butler
**Date Issued:** 13-AUG-2013
**Date of Birth:** 19-FEB
**Student ID:** 850594230
**Page:** 1
**Level:** Graduate, Masters

Course Level: Graduate, Masters

Current Program
Program : Business Administration
Major : Business Administration

Degree Awarded Master of Business Administr 03-AUG-2013
Primary Degree
Program : Business Administration
College : Graduate School
Major : Business Administration

| SUBJ | NO. | COURSE TITLE | CRED | GRD | PTS | R |
|---|---|---|---|---|---|---|
| INSTITUTION CREDIT: | | | | | | |
| Fall 2010 | | | | | | |
| Business Administration | | | | | | |
| New | | | | | | |
| BA | 510 | Managerial Acct & Control | 3.000 | A | 12.00 | |
| BA | 540 | Managrl/Organzl Behavior | 3.000 | B | 9.00 | |
| BA | 595 | Internship/Work Experience | 2.000 | S | .00 | |
| Ehrs: 8.000 QPts: 21.00 | | | | | | |
| GPA-Hrs: 6.000 GPA: 3.500 | | | | | | |
| Standing Not Calculated | | | | | | |
| Spring 2012 | | | | | | |
| Business Administration | | | | | | |
| Readmission | | | | | | |
| BA | 530 | Financial Management | 3.000 | B | 9.00 | |
| BA | 550 | Marketing Management | 3.000 | B | 9.00 | |
| BA | 595 | Internship/Work Experience | 2.000 | S | .00 | |
| Ehrs: 8.000 QPts: 18.00 | | | | | | |
| GPA-Hrs: 6.000 GPA: 3.000 | | | | | | |
| Good Standing | | | | | | |
| Summer 2012 | | | | | | |
| Business Administration | | | | | | |
| Continuing | | | | | | |
| BA | 560 | Mgmt of Information Systems | 3.000 | C | 6.00 | |
| BA | 580 | Int'l Dimensns Bus & Mgmt | 3.000 | A | 12.00 | |

******************** CONTINUED ON NEXT COLUMN ********************

| SUBJ | NO. | COURSE TITLE | CRED | GRD | PTS | R |
|---|---|---|---|---|---|---|
| Institution Information continued: | | | | | | |
| Ehrs: 6.000 QPts: 18.00 | | | | | | |
| GPA-Hrs: 6.000 GPA: 3.000 | | | | | | |
| Good Standing | | | | | | |
| Fall 2012 | | | | | | |
| Business Administration | | | | | | |
| Continuing | | | | | | |
| BA | 505 | Brand Management | 3.000 | B | 9.00 | |
| BA | 531 | Advanced Financial Management | 3.000 | B | 9.00 | |
| BA | 595 | Internship/Work Experience | 2.000 | S | .00 | |
| Ehrs: 8.000 QPts: 18.00 | | | | | | |
| GPA-Hrs: 6.000 GPA: 3.000 | | | | | | |
| Good Standing | | | | | | |
| Spring 2013 | | | | | | |
| Business Administration | | | | | | |
| Continuing | | | | | | |
| BA | 514 | Ethics of Business | 3.000 | B | 9.00 | |
| BA | 522 | Oper Strat Global Compet | 3.000 | B | 9.00 | |
| BA | 595 | Internship/Work Experience | 2.000 | S | .00 | |
| Ehrs: 8.000 QPts: 18.00 | | | | | | |
| GPA-Hrs: 6.000 GPA: 3.000 | | | | | | |
| Good Standing | | | | | | |
| Summer 2013 | | | | | | |
| Business Administration | | | | | | |
| Continuing | | | | | | |
| BA | 598 | Business Policies | 3.000 | B | 9.00 | |
| Ehrs: 3.000 QPts: 9.00 | | | | | | |
| GPA-Hrs: 3.000 GPA: 3.000 | | | | | | |
| Good Standing | | | | | | |

******************** CONTINUED ON PAGE 2 ********************

Issued To: ARCHIE BUTLER
305 TEAKWOOD LANE
CEDAR HILL, TX 75104-2942

RAISED SEAL NOT REQUIRED
Printed on SCRIP-SAFE® security paper



SOUTHERN ILLINOIS UNIVERSITY CARBONDALE

**OFFICIAL**
**TRANSCRIPT OF ACADEMIC RECORD**

**Record of:** Archie Butler
**Date Issued:** 13-AUG-2013

**Date of Birth:** 19-FEB **Page:** 2
**Student ID:** 850594230
**Level:** Graduate, Masters

********************** TRANSCRIPT TOTALS **********************

| | | | | |
|---|---|---|---|---|
| INSTITUTION | Ehrs: | 41.000 | QPts: | 102.00 |
| | GPA-Hrs: | 33.000 | GPA: | 3.091 |
| OVERALL | Ehrs: | 41.000 | QPts: | 102.00 |
| | GPA-Hrs: | 33.000 | GPA: | 3.091 |

********************** END OF TRANSCRIPT **********************

RAISED SEAL NOT REQUIRED
Printed on SCRIP-SAFE® security paper



## Unofficial Transcript

If additional information or clarification is required, please contact the Office of the Registrar at: registrar@ellis.edu

| Last Name | First Name | Degree Program | Program Credits | Credits Earned | GPA |
|---|---|---|---|---|---|
| Butler | Archie | Business Administration | 36 | 12 | 3.33 |

| Term | Course ID | Course Name | Course Status | Grade | Credits |
|---|---|---|---|---|---|
| 6-2009-0518 | MBA 501 | Managerial Marketing | Completed | B+ | 3 |
| 6-2009-0629 | MBA 503 | Accounting for Managers | Completed | C | 3 |
| 6-2009-0928 | MBA 504 | Managerial Corporate Finance | Completed | A | 3 |
| 6-2010-0329 | MBA 502 | Economics for Managers | Completed | A | 3 |

**Record of:**
Archie Butler
136 Central Ave

Matteson, IL 60443

**Date of Issue:** 4/24/2009
**Student ID:** 00-063623
**Date of Birth:** 2/19/1969
**Social Security Number:** XXX-XX-4800

**Program of Study:** Bachelor of Science in Business Administration
**Degree Level:** Undergraduate
**First Registration:** 7/19/2006
**Degrees Awarded:**

| | |
|---|---|
| Bachelor of Science in Business Administration | 4/12/2009 |
| Associate of Science in Business Administration | 2/12/2008 |

| Course Code | Course Title | Credits Attempted | Credits Earned | Grade | Quality Points |
|---|---|---|---|---|---|
| **Transfer Credit(s) Accepted:** | | | | | |
| AARTS<br>Daley College - City colleges of Chicago<br>Jefferson CC | | | | | |
| ELE01 L | MOS 76Y-002 | 3 | 3 | T | |
| ELE01 M | MOS 76P002 | 3 | 3 | T | |
| ELE01 Q | MOS 75B-003 | 3 | 3 | T | |
| ELE01 R | AR 2301-0253 | 3 | 3 | T | |
| ELE01 S | AR 2201-0399 | 3 | 3 | T | |
| GE000 E | AR 1401-0153 | 3 | 3 | T | |
| GE000 C | MOS 76P002 | 3 | 3 | T | |
| GE000 D | MOS 75B -003 | 3 | 3 | T | |
| GE000 E | MOS 75B -003 | 3 | 3 | T | |
| GE000 F | MOS 75B -003 | 3 | 3 | T | |
| GE000 G | MOS 75B -003 | 3 | 3 | T | |
| BA260 A | BUS 271 - Bus Law I | 3 | 3 | T | |
| ELE01 H | English 102 - Composition 2 | 3 | 3 | T | |
| ELE01 I | PSYCH 201 - Gen Psych | 3 | 3 | T | |
| ELE01 J | FIN ART 105 - HST -PNT SCP | 3 | 3 | T | |
| EN280 D | English 101 - Composition | 3 | 3 | T | |
| GE000 B | HUM 202 - Humanities 2 | 3 | 3 | T | |

**Institution Credit(s):**

| Semester: BA 1 | | Start Date: | End Date: | | | | |
|---|---|---|---|---|---|---|---|
| DE100 | Success at Grantham | 7/19/2006 | 5/17/2007 | 0 | 0 | B | 0 |
| Semester GPA: 0.00 | Cumulative GPA: 0.00 | | | 0 | 0 | | 0 |

Rachelle A. Freese
Registrar

| Semester: BA 2 | | Start Date: | End Date: | | | | |
|---|---|---|---|---|---|---|---|
| CS133 | Computer Information Systems | 7/17/2006 | 5/17/2007 | 4 | 4 | B | 12 |
| MA105 | College Algebra | 7/17/2006 | 5/17/2007 | 3 | 3 | D | 3 |
| BA150 | Principles of Business Management | 7/17/2006 | 5/17/2007 | 3 | 3 | B | 9 |
| BA181 | Foundations of Marketing | 7/17/2006 | 5/17/2007 | 3 | 3 | A | 12 |
| CS165 | Microcomputer Applications | 7/17/2006 | 5/17/2007 | 4 | 4 | A | 16 |
| Semester GPA: 3.06 | Cumulative GPA: [illegible] | | | 17 | 17 | | 52 |
| **Semester: BA 3** | | **Start Date:** | **End Date:** | | | | |
| BA201 | Microeconomics | 2/23/2007 | 9/17/2007 | 3 | 3 | D | 3 |
| BA206 | Macroeconomics | 2/23/2007 | 9/17/2007 | 3 | 3 | B | 9 |
| CS192 | Programming Essentials | 2/23/2007 | 9/17/2007 | 3 | 3 | A | 12 |
| BA250 | Personal Finance | 2/23/2007 | 9/17/2007 | 3 | 3 | C | 6 |
| Semester GPA: 2.50 | Cumulative GPA: 2.83 | | | 12 | 12 | | 30 |
| **Semester: BA 4** | | **Start Date:** | **End Date:** | | | | |
| CS231 | E-Commerce | 10/2/2007 | 3/24/2008 | 3 | 3 | A | 12 |
| MA278 | Finite Mathematics | 10/2/2007 | 3/24/2008 | 3 | 3 | B | 9 |
| BA220 | Financial Accounting | 10/2/2007 | 3/24/2008 | 3 | 3 | B | 9 |
| BA225 | Managerial Accounting | 10/2/2007 | 3/24/2008 | 3 | 3 | C | 6 |
| Semester GPA: 3.00 | Cumulative GPA: 2.88 | | | 12 | 12 | | 36 |
| **Semester: BA 5** | | **Start Date:** | **End Date:** | | | | |
| MA300 | Decision Science I | 2/28/2008 | 8/20/2008 | 3 | 3 | C | 6 |
| BA301 | Business and Society | 2/28/2008 | 8/20/2008 | 3 | 3 | B | 9 |
| BA263 | Business Law II | 2/28/2008 | 8/20/2008 | 3 | 3 | B | 9 |
| BA280 | Consumer Behavior | 2/28/2008 | 8/20/2008 | 3 | 3 | A | 12 |
| BA405 | Multinational Management | 7/23/2008 | 9/16/2008 | 3 | 3 | A | 12 |
| MA333 | Decision Science II | 7/23/2008 | 9/16/2008 | 3 | 3 | C | 6 |
| Semester GPA: 3.00 | Cumulative GPA: 2.92 | | | 18 | 18 | | 54 |
| **Semester: BA 8** | | **Start Date:** | **End Date:** | | | | |
| BA420 | Organizational Behavior | 9/17/2008 | 11/11/2008 | 3 | 3 | A | 12 |
| EN361 | Technical Writing | 9/17/2008 | 11/11/2008 | 3 | 3 | C | 6 |
| BA470 | Entrepreneurship | 12/24/2008 | 2/17/2009 | 3 | 3 | B | 9 |
| BA490 | Business Policy and Strategy | 12/24/2008 | 2/17/2009 | 3 | 3 | A | 12 |
| Semester GPA: 3.25 | Cumulative GPA: 2.97 | | | 12 | 12 | | 39 |
| | Total Institution: | | | 71 | 71 | | [illegible] |
| | Total Transfer: | | | | 51 | | |
| | Total Work Experience: | | | | 0 | | |
| | Overall: | | | 71 | 122 | | 211 |

*End Transcript - No Entries Below This Line*

Rachelle A. Freese

**Archie Butler, Financial Operations Specialist/Acting Auditor**

**FBI Promotions- Awards**

**2012-2016, Medically Retired**

# FBI Promotions

EPP Print

FEDERAL BUREAU OF INVESTIGATION 75104 - 2942

FORM AD-334 USDA (REV. 12/15)

| SOCIAL SECURITY NO. | PAY PERIOD DATE MO DA YR MO DA YR | P/P | T&A CONTACT POINT | ACCT. STAT. | ORGANIZATIONAL STRUCTURE | PERSNL OFFICE | PAY PLAN | GR. | STEP |
|---|---|---|---|---|---|---|---|---|---|
| ***-**-**** | 07/10/2016 07/23/2016 | 14 | AV-11-0010-01-05 | 0010 | AV-02-14-3190 | 4017 | GS | 11 | 05 |

| SALARY | RATE | TYPE EMPL. | SCD FOR LEAVE | NET. DEDUCTIONS THIS APPOINTMENT |
|---|---|---|---|---|
| 71,073.00 | PA | F/T | 04/08/1985 | 2,203.04 |

## STATEMENT OF EARNINGS AND LEAVE

EARNINGS AND DEDUCTIONS

| CODE | ITEM DESCRIPTION | HOURS | HOURS P/P | HOURS YR. TO DATE | AMOUNT | AMOUNT P/P | AMOUNT YR TO DATE |
|---|---|---|---|---|---|---|---|
| 01 | REGULAR TIME | | | 642.50 | | | 21841.72 |
| 44 | [redacted] | | | | | | [redacted] |
| 61 | ANNUAL LEAVE | | | 272.25 | | | 9253.04 |
| 62 | SICK LEAVE | | | 214.25 | | | 7297.36 |
| 64 | COMPENSATORY LEAVE | | | 13.25 | | | 451.31 |
| 66 | OTHER LEAVE | | | 55.25 | | | 1873.02 |
| 72 | ABSENCE W/OUT OFFIC LV | | 80.00 | | | | |
| ** ** | **** PAY PERIOD HOURS & GROSS PAY **** | | 80.00 | | | | 43516.45 |
| 75 02 | RETIREMENT | | | | | | 325.76 |
| 75 15 | TSP-FERS | | | | | | 1626.63 |
| 76 | SOCIAL SECURITY (OASDI) | | | | | | 2696.06 |
| 77 | FEDERAL TAX EXEMPTS M01 | | | | | | 4937.74 |
| 81 | FEGLI- COVERAGE $ $74,000 | | | | | | 166.20 |
| 82 | OPT FEGLI-AGE BRACKET 4 | | | | | | 395.30 |
| 97 | MEDICARE TAX WITHHELD | | | | | | 630.99 |
| ** ** | ********** TOTAL DEDUCTIONS ********** | | | | | | 10782.68 |
| ** ** | *************** NET PAY ************** | | | | | | 32733.77 |
| ** ** | DD/EFT ROUTING NO. ******** | | | | | | |

YEAR TO DATE LEAVE STATUS

| TYPE | ACCRUED | USED | BALANCE |
|---|---|---|---|
| CREDIT HOURS | | | |
| RELIGIOUS COMP | | | |
| TRAVEL COMPENSATORY | | | |
| MILITARY | | | |
| TIME OFF AWARD | | | |
| SPAPRA COMPENSATORY | | | |
| SPAPRA OBLIGATED DEBT | | | |

| TYPE | 1ST YEAR | 2ND YEAR | 3RD YEAR | BALANCE |
|---|---|---|---|---|
| REST. ANN. LEAVE HRS. | | | | |

YEAR TO DATE LEAVE STATUS

| TYPE | ACCRUED | USED | BALANCE | PROJECTED USE OR LOSE | PT. HRS UNAPP | MAX. C/O |
|---|---|---|---|---|---|---|
| ANN | 112 | 227.25 | | | | 240.00 |
| SICK | 56 | 214.25 | 0 | | | LEAVE CATEG |
| COMP | | | | | | 8 |

REMARKS

NAME AND ADDRESS

Official Pay Date 08/04/2016

ARCHIE BUTLER
305 TEAKWOOD LANE

EPP Print

FEDERAL BUREAU OF INVESTIGATION 75104 - 2942

FORM AD-334 USDA (REV. 1/18)

| SOCIAL SECURITY NO. | PAY PERIOD DATE MO DA YR MO DA YR | P/P | T&A CONTACT POINT | ACCT. STAT. | ORGANIZATIONAL STRUCTURE | PERSON. OFFICE | PAY PLAN | GR. | STEP |
|---|---|---|---|---|---|---|---|---|---|
| ***-**-**** | 07/12/2015 07/25/2015 | 14 | AV-11-0010-01-05 | 0010 | AV-02-14-3190 | 4017 | GS | 09 | 09 |

| SALARY | RATE | TYPE EMPL. | SCD FOR LEAVE | RET. DEDUCTIONS THIS APPOINTMENT |
|---|---|---|---|---|
| 64,803.00 | PA | F/T | 04/01/1995 | 1,685.38 |

## STATEMENT OF EARNINGS AND LEAVE

EARNINGS AND DEDUCTIONS

| CODE | | ITEM DESCRIPTION | | HOURS P/P | HOURS YR. TO DATE | | AMOUNT P/P | AMOUNT YR TO DATE |
|---|---|---|---|---|---|---|---|---|
| 01 | | REGULAR TIME | | 70.75 | 1021.50 | | 2196.79 | 31683.15 |
| 44 | 04 | [illegible] | | | | | | [illegible] |
| 61 | | ANNUAL LEAVE | | 1.25 | 119.25 | | 38.81 | 3698.39 |
| 62 | | SICK LEAVE | | 8.00 | 59.25 | | 248.40 | 1836.30 |
| 66 | | OTHER LEAVE | | | 80.00 | | | 2478.56 |
| ** | ** | **** PAY PERIOD HOURS & GROSS PAY **** | | 80.00 | | | 2484.00 | 40436.79 |
| 75 | 02 | RETIREMENT | | | | | 19.87 | 317.52 |
| 75 | 15 | TSP-FERS | | | | | 99.36 | 1587.78 |
| 76 | | SOCIAL SECURITY (OASDI) | | | | | 154.01 | 2507.11 |
| 77 | | FEDERAL TAX EXEMPTS M01 | | | | | 249.52 | 4170.78 |
| 81 | | FEGLI- COVERAGE $ $67,000 | | | | | 10.05 | 160.80 |
| 82 | | OPT FEGLI-AGE BRACKET 4 | | | | | 26.90 | 430.40 |
| 97 | | MEDICARE TAX WITHHELD | | | | | 36.02 | 586.36 |
| ** | ** | ********** TOTAL DEDUCTIONS ********** | | | | | 595.73 | 9760.75 |
| ** | ** | *************** NET PAY *************** | | | | | 1888.27 | 30676.04 |
| ** | ** | DD/EFT ROUTING NO. ******** | | | | | | |

YEAR TO DATE LEAVE STATUS

| TYPE | ACCRUED | USED | BALANCE |
|---|---|---|---|
| CREDIT HOURS | | | |
| RELIGIOUS COMP | | | |
| TRAVEL COMPENSATORY | | | |
| MILITARY | | | |
| TIME OFF AWARD | | | |

| TYPE | 1ST YEAR | 2ND YEAR | 3RD YEAR | BALANCE |
|---|---|---|---|---|
| REST. ANN. LEAVE HRS. | | | | |

YEAR TO DATE LEAVE STATUS

| TYPE | ACCRUED | USED | BALANCE | PROJECTED USE OR LOSE | PT. HRS UNAPP | | MAX. C/O |
|---|---|---|---|---|---|---|---|
| ANN | 112 | 105.25 | 167.25 | 23.25 | | | 240.00 |
| SICK | 56 | 48.25 | 138.25 | | | | LEAVE CATEG |
| COMP | | | | | | | 8 |

REMARKS

NAME AND ADDRESS

Official Pay Date 08/06/2015

ARCHIE BUTLER
305 TEAKWOOD LANE
[illegible]

EPP Print

FEDERAL BUREAU OF INVESTIGATION 75104 - 2942

FORM AD-334 USDA (REV. 10/97)

| SOCIAL SECURITY NO. | PAY PERIOD DATE MO DA YR MO DA YR | P/P | T&A CONTACT POINT | ACCT. STAT. | ORGANIZATIONAL STRUCTURE | PERSNL OFFICE | PAY PLAN | GR. | STEP |
|---|---|---|---|---|---|---|---|---|---|
| ***-**-**** | 10/05/2014 10/18/2014 | 20 | AV-11-0010-01-05 | 0010 | AV-02-14-3190 | 4017 | GS | 09 | 09 |

| SALARY | RATE | TYPE EMPL. | SCD FOR LEAVE | RET. DEDUCTIONS THIS APPOINTMENT |
|---|---|---|---|---|
| 64,161.00 | PA | F/T | 04/01/1995 | 1,269.18 |

## STATEMENT OF EARNINGS AND LEAVE

EARNINGS AND DEDUCTIONS

| CODE | | ITEM DESCRIPTION | HOURS | HOURS P/P | HOURS YR TO DATE | AMOUNT | AMOUNT P/P | AMOUNT YR TO DATE |
|---|---|---|---|---|---|---|---|---|
| 01 | | REGULAR TIME | | 70.00 | 1405.00 | | 2151.80 | 41835.69 |
| 21 | 01 | OVERTIME - PREMIUM RATE | | | 1.00 | | | 40.10 |
| 34 | | FLSA | | | 1.00 | | | 6.01 |
| 44 | 04 | SPOT AWARD | | | | | | 1113.58 |
| 61 | | ANNUAL LEAVE | | 2.00 | 174.50 | | 61.48 | 5149.86 |
| 62 | | SICK LEAVE | | | 112.50 | | | 3328.89 |
| 66 | | OTHER LEAVE | | 8.00 | 66.00 | | 245.92 | 2007.56 |
| ** | ** | **** PAY PERIOD HOURS & GROSS PAY **** | | 80.00 | | | 2459.20 | 53479.69 |
| 75 | 02 | RETIREMENT | | | | | 19.67 | 418.48 |
| 75 | 15 | TSP-FERS | | | | | 98.37 | 2092.80 |
| 76 | | SOCIAL SECURITY (OASDI) | | | | | 152.47 | 3315.76 |
| 77 | | FEDERAL TAX EXEMPTS M01 | | | | | 247.68 | 5477.59 |
| 81 | | FEGLI- COVERAGE $ $67,000 | | | | | 10.05 | 213.60 |
| 82 | | OPT FEGLI-AGE BRACKET 4 | | | | | 26.90 | 525.30 |
| 97 | | MEDICARE TAX WITHHELD | | | | | 35.66 | 775.46 |
| ** | ** | ********** TOTAL DEDUCTIONS ********** | | | | | 590.80 | 12818.99 |
| ** | ** | ************** NET PAY ************** | | | | | 1868.40 | 40660.70 |
| ** | ** | DD/EFT ROUTING NO. ******** | | | | | | |

BOND ACCOUNT

| AUTH NO | DENOM-INATION | DEDUC-TION | BALANCE AVAIL. | NO. ISSUED | ISSUE DATE |
|---|---|---|---|---|---|

YEAR TO DATE LEAVE STATUS

| TYPE | ACCRUED | USED | BALANCE | PROJECTED USE OR LOSE | PT. HRS UNAPP | MAX. C/O |
|---|---|---|---|---|---|---|
| ANN | 160 | 148.50 | 161.00 | | | 240.00 |
| SICK | 80 | 108.50 | 122.50 | | | LEAVE CATEG |
| COMP | | | | | | 8 |

REMARKS

NAME AND ADDRESS

Official Pay Date 10/30/2014

ARCHIE BUTLER
305 TEAKWOOD LANE
CEDAR HILL, TX 75104-2942

EPP Print

FEDERAL BUREAU OF INVESTIGATION 75104 - 2942

FORM AD-334 USDA (REV. 10/97)

| SOCIAL SECURITY NO. | PAY PERIOD DATE MO DA YR MO DA YR | P/P | T&A CONTACT POINT | ACCT. STAT. | ORGANIZATIONAL STRUCTURE | PERSNL OFFICE | PAY PLAN | GR. | STEP |
|---|---|---|---|---|---|---|---|---|---|
| ***-**-**** | 07/13/2014 07/26/2014 | 14 | AV-11-0010-01-05 | 0010 | AV-02-14-3190 | 4017 | GS | 09 | 09 |

| SALARY | RATE | TYPE EMPL | SCD FOR LEAVE | RET. DEDUCTIONS THIS APPOINTMENT |
|---|---|---|---|---|
| 64,161.00 | PA | F/T | 04/01/1995 | 1,151.16 |

## STATEMENT OF EARNINGS AND LEAVE

EARNINGS AND DEDUCTIONS

| CODE | | ITEM DESCRIPTION | HOURS P/P | HOURS YR TO DATE | AMOUNT P/P | AMOUNT YR TO DATE |
|---|---|---|---|---|---|---|
| 01 | | REGULAR TIME | 56.00 | 1013.00 | 1721.44 | 29750.89 |
| 21 | 01 | OVERTIME - PREMIUM RATE | | 1.00 | | 40.10 |
| 34 | | FLSA | | 1.00 | | 6.01 |
| 44 | 04 | SPOT AWARD | | | | 519.67 |
| 61 | | ANNUAL LEAVE | | 120.00 | | 3491.89 |
| 62 | | SICK LEAVE | 24.00 | 95.00 | 737.76 | 2806.30 |
| 66 | | OTHER LEAVE | | 52.00 | | 1515.72 |
| ** | ** | **** PAY PERIOD HOURS & GROSS PAY **** | 80.00 | | 2459.20 | 38130.58 |
| 75 | 02 | RETIREMENT | | | 19.67 | 300.46 |
| 75 | 15 | TSP-FERS | | | 98.37 | 1502.58 |
| 76 | | SOCIAL SECURITY (OASDI) | | | 152.47 | 2364.12 |
| 77 | | FEDERAL TAX EXEMPTS M01 | | | 247.68 | 3843.03 |
| 81 | | FEGLI- COVERAGE $ $67,000 | | | 10.05 | 153.30 |
| 82 | | OPT FEGLI-AGE BRACKET 4 | | | 26.90 | 363.90 |
| 97 | | MEDICARE TAX WITHHELD | | | 35.66 | 552.89 |
| ** | ** | ********** TOTAL DEDUCTIONS ********** | | | 590.80 | 9080.28 |
| ** | ** | *************** NET PAY *************** | | | 1868.40 | 29050.30 |
| ** | ** | DD/EFT ROUTING NO. ******** | | | | |

BOND ACCOUNT

| AUTH NO | DENOMINATION | DEDUCTION | BALANCE AVAIL. | NO. ISSUED | ISSUE DATE |
|---|---|---|---|---|---|
| | | | | | |

YEAR TO DATE LEAVE STATUS

| TYPE | ACCRUED | USED | BALANCE | PROJECTED USE OR LOSE | PT. HRS UNAPP | MAX. C/O |
|---|---|---|---|---|---|---|
| ANN | 112 | 92.00 | 167.50 | 23.50 | | 240.00 |
| SICK | 56 | 91.00 | 116 | | | LEAVE CATEG 6 |
| COMP | | | | | | |

REMARKS

NAME AND ADDRESS

Official Pay Date 08/07/2014

ARCHIE BUTLER
305 TEAKWOOD LANE

# NOTIFICATION OF PERSONNEL ACTION

2. Social Security Number: 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
3. Date of Birth: 02/19/69
4. Effective Date: 08/15/14

SECOND ACTION

6-A. Code
6-B. Nature of Action
6-C. Code
6-D. Legal Authority
6-E. Code
6-F. Legal Authority

15. TO: Position Title and Number
FINANCIAL OPERATIONS SPECIALIST
60002536 289354

| 13. Pay Basis | 16. Pay Plan | 17. Occ. Code | 18. Grade or Level | 19. Step or Rate | 20. Total Salary/Award | 21. Pay Basis |
| --- | --- | --- | --- | --- | --- | --- |
| | | | | | 593.91 | |

| 12D. Other Pay | 20A. Basic Pay | 20B. Locality Adj. | 20C. Adj. Basic Pay | 20D. Other Pay |
| --- | --- | --- | --- | --- |
| .00 | | .00 | | .00 |

22. Name and Location of Position's Organization
FEDERAL BUREAU OF INVESTIGATION
DALLAS

DJ AV0214319000000000 PP 16 2014

Tenure
0-None 2-Conditional
1-Permanent 3-Indefinite

25. Agency Use

26. Veterans Preference for RIF
X YES NO

...ICABLE

29. Pay Rate Determinant
0 NOT APPLICABLE

33. Part-Time Hours Per Biweekly Pay Period

37. Bargaining Unit Status
8888

On-The-Spot Award
Presented to
$350
BUTLER

**Director Award**

THE UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF INVESTIGATION

# CITATION FOR SPECIAL ACHIEVEMENT

***Archie Butler***

In recognition of your sustained high performance,
positive impact on the community, and
significant contributions to the FBI Dallas Division

James B. Comey
DIRECTOR

# Performance Review 2014

DOC# 102025649

FD-728a
Revised
12-23-2014

# FEDERAL BUREAU OF INVESTIGATION
## Performance Appraisal System — Special Agent and Professional Staff
## Performance Appraisal Report - Cover Page

**EMPLOYEE AND RATING INFORMATION**

| | |
|---|---|
| 1. Payroll Name of Employee: Archie Butler | 2. Employee's Personnel File Number: 67-HQ-1674804 |
| 3. Position Title, Grade and Position Number: Financial Operations Specialist (GS-9) 0501-09-209354 | 4. Office of Assignment and Cost Code: Dallas/3190 |
| 5. Type of Appraisal: (A) Rating of Record Date: 12/22/2014 | 6. Summary Rating: ☐ Unacceptable ☐ Minimally Successful ☐ Successful ☐ Excellent ☑ Outstanding |

**SIGNATURES**

7. [signature] SFOS Sandra K. Hollingshead 1/5/2015
Signature of Rating Official — Name (Typed or Printed) — Date

8. [signature] A/ASAC Timothy Neylan 1/5/2015
Signature of Reviewing Official — Name (Typed or Printed) — Date

I am aware that a rating of Unacceptable will preclude me from consideration for promotion, transfer, and/or a within-grade increase and may be the basis for my reassignment, reduction in grade, or removal. My signature only indicates that I have reviewed this appraisal, not that I am necessarily in agreement with the information herein or that I am relinquishing my right to request reconsideration of it.

9. [signature] 1/06/14
Signature of Employee — Date

**BPMS / PAU**

| 10. Field/FBIHQ Division Use — Entered into BPMS | PAU USE ONLY: |
|---|---|
| By: [initials] (Initials) | Logged: |
| On: 1-15-15 (Date) | Reviewed: |
| Date of Plan: 9-23-14 | Entered: |
| Plan Renewal Date: 1-6-15 | Verified: |

COPY

Dalt# 1020256049

FD-728c
Revised
12-23-2014

FEDERAL BUREAU OF INVESTIGATION
Performance Appraisal System — Special Agent and Professional Staff
**Performance Appraisal Report - Overall Summary Rating Narrative Page**

| EMPLOYEE INFORMATION | |
|---|---|
| 1. Payroll Name of Employee: Archie Butler | 2. Employee's Personnel File Number: 67-HQ-1674804 |

**OVERALL SUMMARY RATING NARRATIVE**

Financial Operations Specialist (FOS) Archie Butler is responsible for processing confidential, commercial, travel payment requests, monitoring outstanding confidential advances, returning funds to HQ, processing direct advances, and assisting with clarification on issues within the Finance Office. FOS Butler is an outstanding employee. During this rating period, the following is noted:

**Critical Element #1 - Organizing, Planning, and Coordinating**
FOS Butler posses outstanding organizational and planning skills. On a daily basis, he is responsible for ensuring that numerous payment requests are processed to meet the operational needs for the Agents and the Division.

FOS Butler modifies his schedule if needs arise in order to meet deadlines or ensuring expedited finance requests are handled timely. He independently plans, prioritizes, and schedules his own work in order to meet the goals and objectives of the Finance Office. FOS Butler works beyond his normal hours in order to ensure work is processed timely

**Critical Element #2 - Acquiring, Applying, and Sharing Job Knowledge**
FOS Butler provides guidance and instructions to fellow staff members and the division. Confidential transactions (i.e. advances, expenses, and return of funds) can become complicated and require extra attention to detail. The UFMS system can also create challenges which FOS Butler is able to assess and find and alternate method to arrive at the same outcome.

FOS Butler ensures the Finance Office is in compliance with new rules, regulations and guidelines. Oftentimes, he provides advice and/or recommendations to Agent and Support personnel to ensure understanding with the new polices.

It should be noted that during this rating period, FOS Butler has received the following training:

No Fear 2014
FBI Records Management - Records Management for All
Identifying Designating and Marking Classified National Security Information FY2014
Continuity of Operations (COOP) Awareness 2014
DOJ WMD Workplace Safety
Information Security (INFOSEC) Awareness 2014

**Critical Element #3 - Analyzing, Research, and Problem Solving**
When problems arise, FOS Butler pulls reports and gathers the relevant information from UFMS and FRA in order to see it from every angle. Being able to see the entire picture is extremely beneficial to determine the cause of the problems and the appropriate course of corrective action. He is able to put the action into motion and advise other individuals in the office of what action they need to take to effectively and efficiently resolve the problem. If he is uncertain of an outcome, he would independently detail his ideas to the Financial Manager in order to gain more incite as to a better solution.

**Critical Element #4 - Relating with Others and Providing Professional Service**
FOS Butler continues to provide professional service to employees. He takes the initiative to ensure issues are handled timely and questioned are answered. He ensures travel reimbursements are handled timely.

FOS Butler has a vital role in ensuring the transactions are accurate before it is processed. He also assists other staff members with reviewing the transactions prior to the checks being issued or transactions

DOC# 102025649

being approved.

**Critical Element #5 - Maintaining High Professional Standards**
FOS Butler conducts himself in a very professional manner and overcomes new challenges with enthusiasm. He ensures payment requests are handled timely, oftentimes adjusting his daily tasks so that the backlog, if any, is at a minimum.

**Critical Element #6 - Communicating Orally and in Writing**
FOS Butler reviews his work and the work of others to ensure accuracy and appropriate documentation is received prior to inputting into the computer and/or filing. He takes the initiative to provide feedback to new applications or business processes that are being implemented in the Finance Office.

FOS Butler demonstrates excellent knowledge of UFMS and FRA. He is able to maneuver through the different processes with ease and understanding. When new policies are implemented relating to travel, he ensures those affected (i.e. 18-month TDY's) are advised of same.

**Critical Element #7 - Performing Administrative and Computer Activities**
FOS Butler contacts the employee to advise that his/her transaction was paid or will be delinquent and ensures prompt liquidation of such.

FOS Butler uses the computer on a daily basis for inputting transactions, reviewing obligations, and ensuring timely liquidation of such.

**Critical Element #8 - Accounting, Budgeting, and Procurement**
FOS Butler reviews transactions on a daily basis to ensure compliance with rules, regulations, and guidelines. If errors occur, FOS Butler contacts the responsible party to advise of such and to provide resolution.

FOS Butler is familiar with procurement rules and enforces them as needed. He assists the FM with budget matters, should the FM be out of the office to ensure funding is available prior to processing the transaction.

**Critical Element #9 - Achieving Results**
FOS Butler is a vital member of the Dallas Finance Office. He contributes to the success and excellent reputation that the office and the division work hard to maintain. FOS Butler continues to be proactive in finding ways to improve upon the foundation already established. He is not satisfied with the status quo and strives to produce high quality results and accomplish established goals above and beyond expectations.

# Performance Review 2015

Doc # 10202564 9

FD-728a
Revised
12-23-2014

**FEDERAL BUREAU OF INVESTIGATION**
**Performance Appraisal System — Special Agent and Professional Staff**
**Performance Appraisal Report - Cover Page**

**EMPLOYEE AND RATING INFORMATION**

| 1. Payroll Name of Employee: | 2. Employee's Personnel File Number: |
|---|---|
| Archie Butler | 67-HQ-1674804 |
| 3. Position Title, Grade and Position Number: Financial Operations Specialist (GS-9) 0501-09-209354 | 4. Office of Assignment and Cost Code: Dallas/3190 |
| 5. Type of Appraisal: (A) Rating of Record Date: 8/22/2015 | 6. Summary Rating: ☐ Unacceptable ☐ Minimally Successful ☐ Successful ☐ Excellent ☑ Outstanding |

**SIGNATURES**

7. Sandra K. Hollingshead (signature) — Signature of Rating Official | SFOS Sandra K. Hollingshead — Name (Typed or Printed) | 10/19/2015 — Date

8. (signature) — Signature of Reviewing Official | ASAC Niambi Tillman — Name (Typed or Printed) | 10/19/15 — Date

**I am aware that a rating of Unacceptable will preclude me from consideration for promotion, transfer, and/or a within-grade increase and may be the basis for my reassignment, reduction in grade, or removal. My signature only indicates that I have reviewed this appraisal, not that I am necessarily in agreement with the information herein or that I am relinquishing my right to request reconsideration of it.**

9. Archie Butler (signature) — Signature of Employee | 10/26/2015 — Date

**BPMS / PAU**

| 10. Field/FBIHQ Division Use — Entered into BPMS | | PAU USE ONLY: | |
|---|---|---|---|
| By: (Initials) | tn | Logged: | |
| On: (Date) | 10/28/2015 | Reviewed: | |
| Date of Plan: | 9/23/2014 | Entered: | |
| Plan Renewal Date: | New plan issued | Verified: | |

COPY

DeL # 1020256 49

FD-728b
Revised
12-23-2014

# FEDERAL BUREAU OF INVESTIGATION
## Performance Appraisal System — Special Agent and Professional Staff
## Performance Appraisal Report - Evaluation Page

**EMPLOYEE INFORMATION**

| 1. Payroll Name of Employee: | 2. Employee's Personnel File Number: |
|---|---|
| Archie Butler | 67-HQ-1674804 |

**EVALUATION**

| Critical Element | Unacceptable | Minimally Successful (2) | Successful (3) | Excellent (4) | Outstanding (5) | Numeric Value |
|---|---|---|---|---|---|---|
| 1. Organizing, Planning, and Coordinating | ☐ | ☐ | ☐ | ☐ | ☑ | 5 |
| 2. Acquiring, Applying, and Sharing Job Knowledge | ☐ | ☐ | ☐ | ☑ | ☐ | 4 |
| 3. Analyzing, Researching, and Problem Solving | ☐ | ☐ | ☐ | ☐ | ☑ | 5 |
| 4. Relating with Others and Providing Professional Service | ☐ | ☐ | ☐ | ☐ | ☑ | 5 |
| 5. Maintaining High Professional Standards | ☐ | ☐ | ☐ | ☐ | ☑ | 5 |
| 6. Communicating Orally and in Writing | ☐ | ☐ | ☐ | ☑ | ☐ | 4 |
| 7. Performing Administrative and Computer Activities | ☐ | ☐ | ☐ | ☐ | ☑ | 5 |
| 8. Accounting, Budgeting, and Procurement | ☐ | ☐ | ☐ | ☐ | ☑ | 5 |
| 9. Achieving Results | ☐ | ☐ | ☐ | ☐ | ☑ | 5 |

**Sum of Numeric Values:** 43 [3]

÷

**Number of Critical Elements:** 9 [4]

= 4.78 [5]



a. Payroll Name of Employee:

| Archie Butler | 67-HQ-1674804 |
|---|---|

**OVERALL SUMMARY RATING NARRATIVE**

Financial Operations Specialist (FOS) Archie Butler is responsible for processing confidential, commercial, travel payment requests, monitoring outstanding confidential advances, returning funds to HQ, processing direct advances, Certifying Officer for purchase cards, and assisting with clarification on issues within the Finance Office. During this rating period, the following is noted:

**Critical Element #1 - Organizing, Planning, and Coordinating**
FOS Butler is efficient in the area of organizing, planning and coordinating financial information. On a daily basis, he processes numerous requests for financial expenditures and correlates all transactions within the Finance Office before submission to the payee. He coordinates all work assignments and project activities with coworkers daily. He prioritizes confidential advances, commercial payments, PaymentNet transactions, and travel vouchers so that transactions are handled timely.

**Critical Element #2 - Acquiring, Applying, and Sharing Job Knowledge**
FOS Butler provides guidance and instructions to fellow staff members and the division. Travel expenditures (especially 18-month TDY) can become complicated and require extra attention to detail. The UFMS system can also create challenges which FOS Butler is able to assess and find and alternate method to arrive at the same outcome.

FOS Butler ensures the Finance Office is in compliance with new rules, regulations and guidelines. Oftentimes, he provides advice and/or recommendations to Agent and Support personnel to ensure understanding with the new polices and/or processing of transactions.

It should be noted that during this rating period, FOS Butler has received the following training:

Reporting of Suspected Child Abuse, Neglect, and/or Sexual Exploitation
Government Purchase Card Refresher 2014 for Certifying Officers
Information Security (INFOSEC) Awareness 2015
HQ and Field Financial Manager Conference

In addition, during a family emergency of the FM, FOS Butler stepped up and performed the functions of the FM during her absence. He ensured all of the invoices were handled and reached out to HQ entities when issue arose to ensure he handled them correctly.

**Critical Element #3 - Analyzing, Research, and Problem Solving**
FOS Butler is relied on heavily to maintain a high volume workload while resolving discrepancies with internal and external clients. He consistently finds ways to resolve issues within financial transactions and system issues.

He contacts vendors to assist if payments have not posted to their account and/or provides customer service as to the status of payment.

**Critical Element #4 - Relating with Others and Providing Professional Service**
FOS Butler demonstrates an outstanding ability to relate with others and consistently provides exemplary customer service in the performance of his financial responsibilities. He has experience in many programs such as aging advances, PaymentNet, return of funds and provides assistance to coworkers who are needing guidance on various financial areas.

In addition, FOS Butler consistently assists Agents/Support Employees in ensuring financial documents

Doc# 1020256 49

are completed correctly or what is required for payment. He notifies employees when payments have been processed and follow up with those when receipts and/or return of funds is needed.

**Critical Element #5 - Maintaining High Professional Standards**
FOS Butler conducts himself in a very professional manner and overcomes new challenges with enthusiasm. He ensures payment requests are handled timely, oftentimes adjusting his daily tasks so that the backlog, if any, is at a minimum.

FOS Butler attended the annual FM Conference, due to the absence of the FM. The professionalism he displayed at this conference was noted by fellow FM's who advised SFOS Hollingshead upon her return. He asked detailed questions on issues we currently had within our division to ensure they were handled correctly and also assisted with questions fellow FM's asked, since he was one of two FOS' who attended the conference. He provided details on what his role was within the finance office in handling certain types of issues.

**Critical Element #6 - Communicating Orally and in Writing**
FOS Butler reviews his work and the work of others to ensure accuracy and appropriate documentation is received prior to inputting into the computer and/or filing. He takes the initiative to provide feedback to new applications or business processes that are being implemented in the Finance Office.

FOS Butler demonstrates excellent knowledge of UFMS and FRA. He is able to maneuver through the different processes with ease and understanding. He assists the Financial Manager when questions arise and ensures corrections are made, as needed. He provides input on any concerns/issues within the Finance Office.

**Critical Element #7 - Performing Administrative and Computer Activities**
FOS Butler uses the computer on a daily basis for inputting transactions, reviewing UFMS for questionable items, and ensuring timely liquidation of such.

FOS Butler also ensure transactions are certified within PaymentNet on a daily basis and ensures those that are delinquent are handled timely.

**Critical Element #8 - Accounting, Budgeting, and Procurement**
FOS Butler reviews transactions on a daily basis to ensure those that will soon be delinquent are addressed and advises employees to enter actual amounts for travel reimbursement.

FOS Butler is familiar with procurement rules and enforces them as needed. He assists the FM with special projects in order to gain a better understanding of matters, should the FM be out of the office to ensure funding is available prior to processing the transaction.

**Critical Element #9 - Achieving Results**
FOS Butler is a vital member of the Dallas Finance Office and continues to excel in the areas of UFMS and FRA. The Finance Office has entrusted and embarked on FOS Butler as he has shown the initiative to teach himself new information from start to finish and efficiently produce positive results by the end of the day.

**Archie Butler - Plaintiff**

**Administrative Judge (AJ)**

**Office of Federal Operations (OFO)**

**U.S. Department of Justice (DOJ)**

**Decision(s) Letters**

| | |
|---|---|
| OFO Decision (059X) Dated October 6, 2020 | Pages 1-9 |
| AJ Ordering Judgement (059X) Dated June 12, 2019 | Pages 10-14 |
| AJ Summary Decision (059X) Dated June 11, 2019 | Pages 15-17 |
| AJ Summary Judgement (059X) Dated May 15, 2019 | Pages 18-25 |
| OFO Decision (104X) Dated November 30, 2020 | Pages 26-34 |
| DOJ Final Order (104X) Dated July 15, 2020 | Pages 35-43 |
| AJ Summary Decision (104X) Dated June 11, 2019 | Pages 44-45 |
| AJ Ordering Judgement (104X) Dated June 12, 2019 | Pages 46-49 |
| AJ Summary Judgement (104X) Dated May 15, 2019 | Pages 50-57 |

**Table of Contents**

**Office of Federal Operations (OFO) Decision**

**Dated 10/06/2020**

**(90) day Rule in effect for Civil Complaint Filing**

**Appeal No. 059X**

/

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Archie Butler, a/k/a
Matthew G.,[1]
Complainant,

v.

William P. Barr,
Attorney General,
Department of Justice
(Federal Bureau of Investigation),
Agency.

Appeal No. 2019005250

Hearing No. 450-2018-00059X

Agency No. FBI-2016-00183

DECISION

On August 12, 2019, Complainant filed an appeal with the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a), from the Agency's July 15, 2019 final order concerning his equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq. Our review is de novo. For the following reasons, the Commission AFFIRMS the Agency's final order.

BACKGROUND

At the time of events giving rise to this complaint, Complainant worked as a Financial Operations Specialist, GS-11, at the Agency's Finance Office, Dallas Division in Dallas, Texas.

On November 10, 2016, Complainant filed an EEO complaint wherein he claimed that the Agency discriminated against him on the bases of his race (African-American) and in reprisal for his prior protected EEO activity when:

1. On May 11, 2016, he was moved from an office to a cubicle;

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

2. On June 27, 2016, following a six-week absence, he discovered his desk did not have a telephone jack, he did not have access to the "low side terminal" and management had deactivated his access to the financial systems;

3. On or around June 27, 2016, he was informed his badge was deactivated during his absence to protect other employees insofar as he was "unpredictable," and it was insinuated he was a "threat;"

4. On June 29, 2016, he was told he could not "flex." had to call his Supervisor if he was more than 15 minutes late and that if he was more than five minutes late, he would be charged leave;

5. On July 11, July 25, and July 27, 2016, he was told he was being placed in an absent without leave (AWOL) status; and

6. On July 15, 2016, he was told his request for leave under the Family Medical Leave Act (FMLA) was being denied. [2]

With respect to claim (1), at the relevant time, Complainant had recently completed a detail as an Acting Auditor. Upon completion of the detail, Complainant's Supervisor informed him that she would like him to relocate to the remaining cubicle in the Finance Office as the other Financial Operations Specialists were sitting in the Finance Office. Complainant agreed to the move but was subsequently out of the office for about a six-week absence. Complainant argued that he should have been allowed to use a room that he had used prior to becoming an Acting Auditor. According to his Supervisor, Complainant had previously sat at a small desk in a storage area, but she denied it was an office.

Regarding claim (2), the Supervisor asserted that she contacted the telephone technician upon learning Complainant's telephone jack was not working when he returned to work after his six-week absence, and the jack was reactivated the same day. Complainant also informed his Supervisor that day that he could not access the Unified Financial Management System. The Supervisor explained that she was told that the System goes into an archived state if an individual fails to log in within 30 days. The Supervisor stated that she emailed Complainant on July 29, 2016, with instructions on how to get his account unlocked. The Supervisor also denied that Complainant lacked access to the "low side terminal." According to the Supervisor, Complainant just had to utilize a switchbox to move between the low side computer and the high side computer because there was only one monitor in the cubicle, just like in the rest of the office.

[2] The Agency initially dismissed an additional claim regarding a non-selection for untimely EEO Counselor contact. The Commission finds no basis to disturb the Agency's dismissal of that claim. In addition, the Agency dismissed the basis of race discrimination for the entire complaint; however, the EEOC Administrative Judge (AJ) assigned to the matter included race discrimination in her decision.

With regard to claim (3), Complainant stated that the Special Agent in Charge informed him at a meeting that his badge was deactivated during his absence to protect other employees because he was unpredictable. An Assistant Special Agent in Charge who was at the meeting denied that the Special Agent in Charge made the alleged statement. The Special Agent in Charge stated that his decision to deactivate Complainant's badge was based on Complainant's behavior with his Supervisor, Complainant's participation in a road rage incident, and reports that Complainant kept firearms in the trunk of his vehicle. The Special Agent in Charge subsequently reconsidered his decision and removed the restrictions from Complainant's badge access.

For claim (4), Complainant claimed that at a meeting with his Supervisor and the Assistant Special Agent in Charge, he was told that he could not flex, had to call his Supervisor if he was more than 15 minutes late, and that if he were more than five minutes late, he would be charged leave. According to the Supervisor, the meeting was conducted after Complainant arrived half an hour late to work without notifying her, and it was also based on other attendance-related concerns. The Supervisor and the Assistance Special Agent in Charge denied that Complainant was barred from using flex. The Assistant Special Agent in Charge asserted that he informed Complainant that if he was going to be late to work, he needed to contact his Supervisor ahead of time to arrange to flex his time or take leave.

With respect to claims (5-6), Complainant's leave requests for the dates at issue were initially denied because his annual leave and sick leave were exhausted. The Assistant Special Agent in Charge explained that Complainant's FMLA approvals and denials were based on the dates provided by his physician on the FMLA documents. According to the Assistant Special Agent in Charge, Complainant provided an updated FMLA document on August 1, 2016, that covered the period of July 22, 2016 through September 5, 2016. The Assistant Special Agent in Charge stated that he advised Complainant his request was approved for the covered dates, and any dates entered as AWOL during that period would be converted to FMLA.

At the conclusion of the investigation, the Agency provided Complainant with a copy of the report of investigation and notice of his right to request a hearing before an EEOC Administrative Judge (AJ). Complainant timely requested a hearing. The AJ assigned to the case granted summary judgment in favor of the Agency and issued a decision finding that Complainant was not subjected to discrimination or reprisal as alleged.

In her decision, the AJ found that the Agency met its burden in articulating legitimate, nondiscriminatory reasons for its actions and that Complainant failed to provide evidence to corroborate his contentions that the Agency's reasons were pretext intended to hide discriminatory motivation. As a result, the AJ found that Complainant was not subjected to discrimination or reprisal as alleged. The Agency subsequently issued a final order fully adopting the AJ's decision.

## ANALYSIS AND FINDINGS

The Commission's regulations allow an AJ to grant summary judgment when he or she finds that there is no genuine issue of material fact. 29 C.F.R. § 1614.109(g). An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. Celotex v. Catrett, 477 U.S. 317, 322-23 (1986); Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988). A fact is "material" if it has the potential to affect the outcome of the case. In rendering this appellate decision, we must scrutinize the AJ's legal and factual conclusions, and the Agency's final order adopting them, *de novo*. See 29 C.F.R. § 1614.405(a)(stating that a "decision on an appeal from an Agency's final action shall be based on a *de novo* review…"); see also Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO-MD-110), at Chap. 9, § VI.B. (as revised, August 5, 2015)(providing that an administrative judge's determination to issue a decision without a hearing, and the decision itself, will both be reviewed *de novo*).

In order to successfully oppose a decision by summary judgment, a complainant must identify, with specificity, facts in dispute either within the record or by producing further supporting evidence and must further establish that such facts are material under applicable law. Such a dispute would indicate that a hearing is necessary to produce evidence to support a finding that the agency was motivated by discriminatory animus. Here, however, Complainant has failed to establish such a dispute. Even construing any inferences raised by the undisputed facts in favor of Complainant, a reasonable fact-finder could not find in Complainant's favor.

*Disparate Treatment*

To prevail in a disparate treatment claim such as this, Complainant must satisfy the three-part evidentiary scheme fashioned by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). He must generally establish a prima facie case by demonstrating that he was subjected to an adverse employment action under circumstances that would support an inference of discrimination. Furnco Constr. Corp. v. Waters, 438 U.S. 567, 576 (1978). Proof of a prima facie case will vary depending on the facts of the particular case. McDonnell Douglas, 411 U.S. at 802 n. 13. To establish a prima facie case of reprisal, Complainant must show that: (1) he engaged in protected EEO activity; (2) the Agency was aware of the protected activity; (3) subsequently, he was subjected to adverse treatment by the Agency; and (4) a nexus exists between his protected activity and the adverse treatment. Whitmire v. Dep't of the Air Force, EEOC Appeal No. 01A00340 (Sept. 25, 2000).

The prima facie inquiry may be dispensed with where the Agency articulated legitimate and nondiscriminatory reasons for its conduct. See U.S. Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 713-17 (1983); Holley v. Dep't of Veterans Affairs, EEOC Request No. 05950842 (Nov. 13, 1997). To ultimately prevail, Complainant must prove, by a preponderance of the evidence, that the Agency's explanation is a pretext for discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 519 (1993); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981); Holley, supra; Pavelka v. Dep't of the Navy, EEOC Request No. 05950351 (Dec. 14, 1995).

We find that the Agency articulated legitimate, nondiscriminatory reasons for the actions under review. The Supervisor indicated with respect to claim (1) that she wanted Complainant to relocate to the remaining cubicle in the Finance Office to join the other Financial Operations Specialists situated in the Finance Office. In terms of claim (2), the Supervisor stated that Complainant's telephone jack was activated the same day that Complainant reported it being inactive. As for Complainant's lack of access to the Unified Financial Management System, the Supervisor stated an individual is locked out if he fails to log in within 30 days. The Supervisor stated that she emailed Complainant on July 29, 2016, with instructions on how to get his account unlocked. With respect to Complainant not having access to the low side terminal, the Supervisor stated Complainant could utilize a switchbox to move between the low side computer and the high side computer.

As for claim (3), the Special Agent in Charge asserted that he deactivated Complainant's badge during his extended absence based on his behavior with his Supervisor, Complainant's participation in a road rage incident, and reports that Complainant kept firearms in the trunk of his vehicle. Complainant's badge was subsequently reactivated. With respect to claim (4), the Supervisor and the Assistance Special Agent in Charge denied that Complainant was precluded from using flex. The Supervisor stated that a meeting was held after Complainant arrived half an hour late to work without notifying her, and the meeting was also based on other attendance-related concerns.

As for claims (5-6), Complainant was initially placed on AWOL because his annual leave and sick leave were exhausted. The Assistant Special Agent in Charge explained that Complainant provided an updated FMLA document on August 1, 2016, that covered the period of July 22, 2016 through September 5, 2016. The Assistant Special Agent in Charge stated that he advised Complainant his FMLA request was approved for the covered dates, and any dates entered as AWOL during that period would be converted to FMLA.

Construing the evidence in the light most favorable to Complainant, the Commission finds no evidence that Complainant's protected classes were a factor in any of the Agency's actions. Complainant's subjective belief that the management actions at issue were the result of discrimination or reprisal is insufficient to prove pretext. At all times, the ultimate burden remains with Complainant to demonstrate by a preponderance of the evidence that the Agency's reasons were not the real reasons and that the Agency acted on the basis of discriminatory or retaliatory animus. Complainant has not carried his burden here. Accordingly, the Commission finds that Complainant has not established that he was subjected to discrimination or reprisal as alleged.

## CONCLUSION

The Agency's determination that no discrimination occurred is AFFIRMED.

STATEMENT OF RIGHTS - ON APPEAL
RECONSIDERATION (M0620)

The Commission may, in its discretion, reconsider this appellate decision if the complainant or the agency submits a written request that contains arguments or evidence that tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or
2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests for reconsideration must be filed with EEOC's Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision. If the party requesting reconsideration elects to file a statement or brief in support of the request, **that statement or brief must be filed together with the request for reconsideration**. A party shall have **twenty (20) calendar days** from receipt of another party's request for reconsideration within which to submit a brief or statement in opposition. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015).

Complainant should submit his or her request for reconsideration, and any statement or brief in support of his or her request, via the EEOC Public Portal, which can be found at https://publicportal.eeoc.gov/Portal/Login.aspx. Alternatively, complainant can submit his or her request and arguments to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, via regular mail addressed to P.O. Box 77960, Washington, DC 20013, or by certified mail addressed to 131 M Street, NE, Washington, DC 20507. In the absence of a legible postmark, complainant's request to reconsider shall be deemed timely filed if OFO receives it by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604.

An agency's request for reconsideration must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP). See 29 C.F.R. § 1614.403(g). Either party's request and/or statement or brief in opposition must also include proof of service on the other party, unless complainant files his or her request via the EEOC Public Portal, in which case no proof of service is required.

Failure to file within the 30-day time period will result in dismissal of the party's request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. **Any supporting documentation must be submitted together with the request for reconsideration.** The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title.

Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint**.

RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations

October 6, 2020
Date

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was provided to the parties.** I certify that on the date below this decision was provided to the following recipients via the means identified for each recipient:

Archie Butler
8189 Midtown Blvd.
Apt. 12202
Dallas, TX 75231
Via U.S. Mail

Arlene A. Gaylord, Assistant Director
Department of Justice (FBI)
Via FedSEP

October 6, 2020
Date

Compliance and Control Division

**Equal Employment Opportunity Commission (EEOC) – Ordering Judgement**

**Dated June 12, 2019**

**Appeal No. 059X**

10/01/08 REV

**United States of America**
**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Dallas District Office**

| | | |
|---|---|---|
| Archie Butler, *Complainant* | ) | |
| v. | ) | EEOC Case No. 450-2018-00059X<br>Agency No. FBI-2016-00183 |
| William P. Barr, Attorney General<br>**U.S. DEPARTMENT OF JUSTICE,** *Agency* | ) | Date: June 12, 2019 |

## Order Entering Judgment

For the reasons set forth in the accompanying Final Decision , judgment is entered in the above-captioned case for the Agency. Also accompanying this order is Notice to the Parties concerning issuance of the Agency's final order, appeal rights and other matters.

This is an EEOC Hearings Electronic Case Processing System (HECAPS) case. My Office has provided the parties electronic (CD-ROM) copies of the Official Record of Proceedings of the case.

The Agency Final Action Authority is provided two (2) electronic (CD-ROM) copies of the Official Record of Proceedings. If the Agency is notified that Complainant is appealing my decision, or if the Agency appeals after deciding not to fully implement my decision, the Agency will submit the case file to the Commission's Office of Federal Operations (OFO) in the time and manner specified in EEO MD-110, at p. 9-12. In addition, the Agency will provide OFO an electronic (CD-ROM) copy of the Official Record of Proceedings. Upon request, Complainant will be provided a printed copy of the Official Record of Proceedings.

Veronica A. Cuadra, Administrative Judge
EEOC – Dallas District Office
207 South Houston Street, 3rd Floor
Dallas, TX 75202-4703
Tel: (214) 253-2733
Fax: (214) 253-2739
E-Mail: v.cuadra-efilebox@eeoc.gov

## Certificate of Service

On this date, I caused to be delivered to the below-named parties or their representatives by the method(s) indicated, a true copy of the attached instrument. **NOTE: If mailed via first class mail, for timeliness purposes, it will be assumed that the instrument was received within five (5) calendar days of the below-specified date.**

Archie Butler
308 Teakwood Lane
Cedar Hill, TX 75104-2936
Complainant
VIA FIRST CLASS MAIL

Complaint Adjudication Officer (CAO)
Civil Rights Division
U.S. Department of Justice
Patrick Henry Building, Rm A-4810
950 Pennsylvania Ave NW
Washington, DC 20530-0001
VIA FIRST CLASS MAIL

Kathleen O'Neill
Federal Bureau of Investigations
935 Pennsylvania Avenue NW Room 10140
Washington. DC 20535-0001
Agency Representative
VIA FIRST CLASS MAIL

Date: June 12, 2019

Alvin Negron-Paez
Office Automation Assistant
Federal Hearings Unit - Dallas District Office

# NOTICE TO PARTIES

## To The Agency

Within forty (40) days of receiving this decision and the hearing record, you are required to issue a final order notifying the Complainant whether or not you will fully implement this decision. You should also send a copy of your final order to the Administrative Judge.

Your final order must contain a notice of the Complainant's right to appeal to the Office of Federal Operations, the right to file a civil action in a federal district court, the name of the proper defendant in any such lawsuit, the right to request the appointment of counsel and waiver of court costs or fees, and the applicable time limits for such appeal or lawsuit. A copy of EEOC Form 573 (Notice of Appeal/Petition) must be attached to your final order.

If your final order does not fully implement this decision, you must simultaneously file an appeal with the Office of Federal Operations in accordance with 29 C.F.R. 1614.403 and append a copy of your appeal to your final order. See Appendix O, EEO MD-110. You also must comply with the Interim Relief regulation set forth at 29 C.F.R. 1614.505.

## To The Complainant

You may file an appeal with the Commission's Office Federal Operations when you receive a final order from the Agency informing you whether the Agency will or will not fully implement this decision. 29 C.F.R. 1614.110 (a). From the time you receive the Agency's final order, you will have thirty (30) days to file an appeal. If the Agency fails to issue a final order, you have the right to file your own appeal any time after the conclusion of the Agency's 40-day period for issuing a final order. See EEO MD-110, p. 9-3. In either case, please attach a copy of the decision with your appeal.

Do not send your appeal to the Administrative Judge. Your appeal must be filed with the Office of Federal Operations at the address set forth below and you must send a copy of your appeal to the Agency at the same time you file it with the Office of Federal Operations. You must certify, in or attached to your appeal to the Office of Federal Operations, the date and method by which you send a copy of your appeal to the Agency.

## Where To File An Appeal

All appeals to the Commission must be file by mail, hand delivery or facsimile.

**BY MAIL:**

Director, Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 7796
Washington, DC 20013

**BY PERSONAL DELIVERY:**

Director, Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Washington, DC 20507

**BY FACSIMILE:**

Telephone No. (202) 663-7022

NOTE: Faxes over 10 pages will not be accepted.

**Compliance With Agency Final Action**

Pursuant to 29 C.F.R. 1614.504, the Agency's final action that has *not* been the subject of an appeal to the Commission or a civil action is binding on the Agency. If the Complainant believes that the Agency has failed to comply with the terms of the decision, Complainant shall notify the Agency's EEO Director, in writing, of the alleged noncompliance within 30 days of when the Complainant knew or should have known of the alleged noncompliance. The Agency shall resolve the matter and respond to the Complainant in writing. If the Agency has not responded to the Complainant, in writing, or if the Complainant is not satisfied with the Agency's attempt to resolve the matter, the Complainant may appeal to the Commission for a determination of whether the Agency has complied with the terms of its final action. The Complainant may file such an appeal 35 days after serving the Agency with allegations of non-compliance, but must file an appeal within 30 days of receiving the Agency's determination. A copy off the appeal must be served on the Agency and the Agency may submit a response to the Commission within 30 days of receiving the notice of appeal.

**Equal Employment Opportunity Commission (EEOC) – Summary Decision**

**Dated June 11, 2019**

**Appeal No. 059X**

**United States of America**
**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Dallas District Office**

| | | |
|---|---|---|
| Archie Butler, *Complainant* | ) | |
| v. | ) | EEOC Case No. 450-2018-00059X<br>Agency No. FBI-2016-00183 |
| William P. Barr, Attorney General<br>**U.S. DEPARTMENT OF JUSTICE,** *Agency* | ) | Date: June 11, 2019 |

## SUMMARY DECISION

This decision is issued pursuant to 29 C.F.R. Sec. 1614.109(g)(3). On May 15, 2019, the assigned Administrative Judge issued a Notice of Intent to Issue Summary Judgment ("Notice") informing the parties of a determination that the case may be appropriate for summary judgment. The Notice stated the claim in this case, outlined the legal standard for summary judgment, and provided the applicable substantive legal standard. The Notice further described the grounds supporting the determination that the case should be summarily decided. As stated within the Notice, the parties were provided an opportunity to respond. The Notice informed the parties that unless a party demonstrated that there was a genuine issue of material fact in dispute, no hearing would be held in this matter. Complainant filed his response in opposition of a summary decision.

Summary judgment is appropriate because viewing the evidence in the light most favorable to Complainant, the Agency's actions were not based on his protected categories. In his response and as background information, Complainant recounted his unsuccessful bid for the auditor position. He subsequently informed management that he could no longer serve in the role of acting auditor, and he argued "that's when everything changed." See Complainant's May 30, 2019 response. However, management's alleged displeasure with his decision to stop serving as acting auditor was not related to the protected bases identified in the claims in this case and did not preclude summary judgment. The Agency's explanations were not rebutted or otherwise shown to be pretextual. Therefore, for the reasons stated in the Notice of Intent to Issue a Summary Judgment Decision, incorporated by reference into this Decision, summary judgment in favor of the Agency is rendered.

For the Commission:

Veronica A. Cuadra
Administrative Judge
EEOC, Dallas District Office
207 S. Houston St., 3rd Floor
Dallas, Texas 75202
Tel: (214) 253-2733
FAX: (214) 253-2739

**Equal Employment Opportunity Commission (EEOC) – Summary Judgement**

**Dated May 15, 2019**

**Appeal No. 059X**

**United States of America**
**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Dallas District Office**

| | | |
|---|---|---|
| Archie Butler, *Complainant* | ) | |
| v. | ) | EEOC Case No. 450-2018-00059X<br>Agency No. FBI-2016-00183 |
| Attorney General, **U.S. DEPARTMENT OF JUSTICE**, *Agency* | ) | Date: May 15, 2019 |

## NOTICE OF INTENT TO ISSUE SUMMARY JUDGMENT

After review of the record, it appears there may be no material facts in dispute, and that it may therefore be appropriate to issue a decision without holding a hearing. *See* 29 C.F.R. §1614.109(g)(3).

The claims addressed here are whether Complainant was subjected to reprisal for prior EEO activity or to discrimination based on race[1] (African-American) when 1) On May 11, 2016, he was moved from an office to a cubicle; 2) On June 27, 2016, following a six-week absence, he discovered his desk did not have a telephone jack, he did not have access to the "low side terminal," and management had deactivated his access to financial systems; 3) On or around June 27, 2016, he was informed his badge was deactivated during his absence to protect other employees insofar as he was "unpredictable," and it was insinuated that he was a "threat"; 4) On June 29, 2016, he was told he could not "flex," had to call his supervisor if he was more than fifteen minutes late, and that if he were more than five minutes late, he would be charged leave; 5) On July[2] 11, July 25, and July 27, 2016, he was told he was being placed in absent without leave (AWOL) status; and, 6) On July 15, 2016, he was told his request for leave under the Family Medical Leave Act (FMLA) was being denied.

Legal Standards for Summary Decision.

Summary judgment is appropriate if the pleadings, answers to interrogatories, admissions, affidavits and other evidence establish no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* 29 C.F.R. §1614.109(g); *see also Murphy v. Department of the Army*, EEOC Appeal No. 01A04099 (July 11, 2003) (noting that the regulation governing decisions without a hearing is modeled after the Federal Rules of

[1] The basis of race was dismissed by the Agency, and it is added here for purposes of this notice.
[2] The June 11th date was a typographical error, and it is replaced with the date of July 11th based on review of the Investigative File. See e.g., IF Ex. 14 and Hollingshead transcript page 13.

Civil Procedure, Rule 56). Only disputes over facts that might affect the outcome of the suit under governing law, and not irrelevant or unnecessary factual disputes, will preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material factual disputes include credibility disputes where two or more people have different versions of the relevant event, and the determination of that credibility dispute will affect the outcome of the case. There is no genuine issue of material fact if the relevant evidence in the record, taken indicates that a reasonable fact-finder could not return a verdict for the party opposing summary judgment. *Id.*

When opposing a properly supported motion for summary judgment, a party must respond with *specific facts* showing that there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *See Anderson*, 477 U.S. at 250. An opposing party may not rest upon mere allegations or denials in the pleadings or upon conclusory statements in affidavits; rather, s/he must go beyond the pleadings and support her/his contentions with proper documentary evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To defeat summary judgment, a party must show that there is sufficient material evidence supporting the claimed factual dispute to require a fact finder to resolve the parties' differing versions of the truth at trial. *Anderson*, 477 U.S. at 248-49. Uncorroborated accusations are not enough to defeat summary judgment. *Liles-Walker v. United States Postal Service*, EEOC Appeal No. 0120090431 (July 26, 2012).

Applicable Law about Substance of Case.

A circumstantial claim of discriminatory treatment based on a protected status may be examined under the three-part analysis first enunciated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). A complainant first establishes a *prima facie* case of discrimination by presenting facts that. if unexplained, reasonably give rise to an inference of discrimination. *i.e.*, that a prohibited consideration was a factor in the adverse action. *McDonnell Douglas*, 411 U.S. at 802; *Furnco Construction Corp. v. Waters*, 438 U.S. 567 (1978). The burden then shifts to the agency to articulate a legitimate, nondiscriminatory reason for its actions. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981) Complainant must then offer proof that the Agency's explanation is pretextual. *Reeves v. Sanderson Plumbing Prods.. Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 519 (1993).

Complainant bears the burden to prove that the conduct was taken because of his/her protected classes. Concerning alleged actions by management, if a complainant fails to raise a genuine issue of material fact as to the existence of discriminatory intent on the part the responsible management officials, "no further inquiry would be necessary as to whether the incidents complained of … constitute separate acts of discrimination under disparate treatment theory." *Nicki D. v. Dep't of Veterans Affairs*, EEOC Appeal No. 0120133247 (Oct. 15, 2015).

In order to establish a *prima facie* case of disparate treatment discrimination, the evidence should show that: (1) the complainant is a member of the protected class; (2) the employer took a tangible employment action against her; and (3) the circumstances of the employer's treatment of complainant give rise to an inference of discrimination, such as where the employer treats a

similarly situated person who is not a member of a complainant's protected class more favorably than the employer treated the complainant. *See Wiley v. US. Postal Service*, EEOC App. No.0120130121 (Mar. 20, 2013). Generally, for comparative evidence relating to other employees to be considered relevant for purposes of establishing prima facie of discrimination, all relevant aspects of the employees' work situation must be identical or nearly identical. i.e., that the employees report to the same supervisor, perform the same job function, and work during the same time periods. *See Pohlhaus v. Dep't of Navy*, EEOC Appeal 0120113173 (April 16, 2013). Differentiating or mitigating circumstances that would distinguish employee's situations should be considered. *Cf., White v. Department of Defense*, EEOC Appeal No. 01A22115 (June 12, 2003).

To establish a *prima facie* case of reprisal, a complainant must show (1) she participated in protected activity; (2) the agency official was aware of the protected activity; (3) there was subsequent adverse action taken against a complainant; and (4) a causal link exists between the protected activity and the adverse treatment. *Becki P.v U.S. Dep't of State*, EEOC Appeal No. 0120152856 (March 24, 2016). As in the case of alleged discriminatory actions, an employer may "proffer a legitimate, non-retaliatory reason for the challenged actions." EEOC Enforcement Guidance on Retaliation and Related Issues. EEOC Notice 915.004, at II.

As in the case of alleged discriminatory treatment or actions, an employer may "proffer a legitimate, non-retaliatory reason for the challenged actions." EEOC Enforcement Guidance on Retaliation and Related Issues, EEOC Notice 915.004, at II.

Where the agency has articulated a legitimate, nondiscriminatory reason for the action at issue. the factual inquiry can proceed directly to the third step of the *McDonnell Douglas* analysis, the ultimate issue of whether complainant has shown by a preponderance of the evidence that the agency's actions were motivated by discrimination based on retaliation. *See U.S. Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 713-714 (1983); *Hernandez v. Department of Transportation*, EEOC Request No. 05900159 (June 28, 1990); *Peterson v. Department of Health and Human Services*, EEOC Request No. 05900467 (June 8, 1990); *Washington v. Department of the Navy*, EEOC Petition No. 03900056 (May 31, 1990).

Grounds for Summary Judgment.

Complainant alleged reprisal by the Agency. He also believed that the Agency was motivated by race. As covered below, the Agency's explanation showed the absence of a causal connection between Complainant's membership in a protected category and the disputed actions.

Complainant was a Financial Operations Specialist (FOS). In allegation 1, Complainant alleged that his move from an office to a cubicle was discriminatory or retaliatory. Supervisor Sandra Hollingshead explained that Complainant had been serving in the Acting Auditor role. In May 2016, after that role ended, she met with Complainant about his return to the finance office. During this conversation, she also told Complainant that she would like him to relocate to the remaining cubicle desk in the finance office, which was the first one inside the door to that work area. The other FOS employees were already sitting together in the finance office. During that

meeting, Complainant responded to Supervisor Hollingshead that he would move. Complainant was subsequently out of the office for about a six-week absence.

Complainant argued that there was a room that he had used before his stint as Acting Auditor. and he posited that the Agency could have let him use that space when he returned to finance. Supervisor Hollingshead explained that while the finance office was undergoing construction, Complainant had sat at a small desk in a storage area, but, she denied it was an office. Supervisor Hollingshead also denied that the door partially blocked Complainant's cubicle as the door opened outward towards the hallway.

Following Complainant's six-week absence, Complainant returned to work on June 27th. In allegation 2, Complainant alleged discovered his new desk did not have a telephone jack, he did not have access to the "low side terminal," and management had deactivated his access to financial systems. Supervisor Hollingshead recalled that when Complainant returned to work. he advised her that his telephone was not working in the cubicle. Once alerted to this, Supervisor Hollingshead contacted the telephone technician who reactivated the jack that same day. Also, on the same date, he advised Supervisor Hollingshead that he could not access the Unified Financial Management System (UFMS). She contacted AskFinance who advised that individual access to UFMS goes into an archive state if an individual fails to log in within thirty days. On June 29th, Supervisor Hollingshead emailed Complainant with instructions on what he needed to do to get his account unlocked. IF Hollingshead transcript, page 5. Supervisor Hollingshead denied that Complainant did not have access to the "low side terminal." Instead, she explained that Complainant "just had to utilize a switchbox to move between the low side computer and the high side computer because there was only one monitor in the cubicle, just like the rest of the office." She clarified that Complainant still would have been able to perform his duties as an FOS without the "low side" because the financial work is done on the "high side." IF Hollingshead transcript, page 5.

In allegation 3, Complainant claimed that during a meeting, SAC Thomas Class informed him his badge was deactivated during his absence to protect other employees insofar as he was "unpredictable." Complainant interpreted that as an insinuation that he was a "threat." ASAC Niambi Tillman was at this meeting, and she denied hearing SAC Class make the alleged statement. SAC Class made the decision to temporarily deactivate Complainant's badge during his extended absence. He explained his decision was based on factors that included Complainant's behavior with Supervisor Hollingshead, his participation in a road rage incident, and reports that Complainant maintained firearms in the trunk of his vehicle. SAC Class reconsidered his decision, and he removed restrictions from Complainant's badge access. IF Class transcript.

On June 29th Complainant met with Supervisor Hollingshead and ASAC Tillman. In allegation 4, Complainant alleged being told that he could not "flex," had to call his supervisor if he was more than fifteen minutes late. and, that if he were more than five minutes late, he would be charged leave. Supervisor Hollingshead stated that this meeting was after Complainant arrived half an hour late for work without notifying her, and it was also based on other attendance-related concerns. ASAC Tillman and Supervisor Hollingshead denied that

Complainant was banned from using "flex." Instead, ASAC Tillman informed Complainant that, if he was going to be late to work, he needed to contact Supervisor Hollingshead ahead of time to arrange to flex his time or take leave. IF Ex. 10.

Allegations 5 and 6, were related and will be covered together. Complainant's leave for the listed dates was initially denied because his annual and sick leave was exhausted. ASAC Tillman advised that on August 1, 2016, Complainant provided an updated FMLA document (WF-380-E) which covered the period of July 22 through September 5, 2016. On August 1, 2016, ASAC Tillman advised Complainant his request was approved for the covered dates, and any dates entered as AWOL during that period would be converted to FMLA. IF Exs. 11 & 18. ASAC Tillman explained that Complainant's FMLA approvals and denials were based on the dates provided by his doctor on the WH-380-E forms.

The parties' responses should comply with the instructions below. Since the Agency met its burden of explaining its actions, the burden shifts to Complainant to show that the Agency's actions were motivated by reprisal. In establishing pretext, complainant cannot rely on conclusory assertions and suspicions that are not supported in the record. *Complainant v. Department of Defense*, EEOC Appeal No. 0120131035 (April 24, 2015). Rather, complainant must proffer evidence to corroborate her contentions that the agency's reason was a pretext for reprisal. *Morris v. United States Postal Service*, EEOC Appeal No. 01A32685 (March 25, 2004).

Content of the Parties' Responses.

When opposing summary judgment, a party must respond with specific facts showing that there is a genuine dispute as to a material fact and that the other party is not entitled to judgment as a matter of law. *Anderson*, 477 U.S. at 250. Unless a party demonstrates that there is a genuine issue of material fact in dispute, no hearing will be held in this matter.

If a party opposes summary judgment, he/she may not rely on mere allegations, speculation, conclusory statements, or denials. The party should cite to specific evidence contained in the report of investigation which creates a factual dispute regarding a material issue in the case. If not already contained in the report of investigation, the party should also include any relevant documentary evidence or witness statements, or other supporting materials and provide a clear and specific statement of their relevance. Where information is compiled from agency records, provide a declaration from the person preparing the evidence as to the method used to prepare it. If a party plans to call witnesses to testify in support of claims or defenses, the party should obtain written statements from them, and submit these statements in support of the argument against summary judgment.

Time for Responses.

Within fifteen days, the parties' responses shall be submitted by electronic mail to v.cuadra-efilebox@eeoc.gov, and, **each side must copy the opposing party on the email.** After reviewing the parties' responses and examining the record, the Administrative Judge will determine whether summary judgment is appropriate and issue a decision or an order as appropriate.

It is so ORDERED.

Veronica A. Cuadra, Administrative Judge
EEOC – Dallas District Office
207 South Houston Street, 3rd Floor
Dallas, TX 75202-4703
Tel: (214) 253-2733
Fax: (214) 253-2739
E-Mail: v.cuadra-efilebox@eeoc.gov

## CERTIFICATE OF SERVICE

On this date, I caused to be delivered to the below-named parties or their representatives by the method(s) indicated, a true copy of the attached instrument.

Date:  5/15/2019

**Office of Federal Operations (OFO) Decision**

**Dated November 30, 2020**

**(90) day Rule in effect for Civil Complaint Filing**

**Appeal No. 104X**

 U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Archie Butler, a/k/a
Matthew G.,[1]
Complainant,

v.

William P. Barr,
Attorney-General,
U.S. Department of Justice,
Agency.

Appeal No. 2020000224

Hearing No. 450-2019-00104X

Agency No. FBI201800162

DECISION

On December 18, 2019, Complainant filed an appeal with the Equal Employment Opportunity Commission (EEOC or Commission), pursuant to 29 C.F.R. § 1614.403(a), from the Agency's July 15, 2019 final order concerning his equal employment opportunity (EEO) complaint. He alleged employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e et seq., and Section 501 of the Rehabilitation Act of 1973 (Rehabilitation Act), as amended, 29 U.S.C. § 791 et seq.

BACKGROUND

At the time of events giving rise to this complaint, Complainant was a Financial Operations Specialist with the Agency's Federal Bureau of Investigation (FBI) Finance Office in Dallas, Texas.

On April 17, 2018, Complainant filed a formal complaint alleging that the Agency subjected him to discrimination on the bases of disability (disabled veteran) and reprisal for prior protected EEO activity (prior EEO complaint filed in April 2016) when:

1. on March 2, 2018, he discovered he had been placed in an Absent Without Leave status, effective December of 2017;

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

2. management officials refused to respond to requests from the Department of Veterans Affairs, to verify his employment for purposes of his application for disability benefits; and

3. on March 7, 2018, Complainant was presented with a letter proposing his removal for excessive absences.

*Claims 1 and 3 – AWOL and Proposal to Remove*

It is undisputed that Complainant stopped reporting to work as of June 2016 for medical reasons and, after exhausting his available leave, was in a Leave Without Pay (LWOP) status.

On November 27, 2017, Complainant's supervisor called Complainant and advised him that he needed to report back to work on December 11, 2017, or he would be charged Absence without Leave (AWOL). The record shows that, by December 11, 2017, Complainant had exhausted all of his available leave, including his Family & Medical Leave Act (FMLA) leave. His supervisor also informed Complainant that the Department of Labor had denied his worker's compensation claims. Consequently, Complainant was not eligible to continue to receive LWOP under the worker's compensation program.

Despite the notifications from his supervisor, Complainant believed that he was still being afforded Leave without Pay (LWOP). However, on March 2, 2018, Complainant averred that he learned for the first time that he had been placed on AWOL status, effective December 2017.

On March 7, 2018, Complainant was issued a letter proposing to remove him from the Agency's rolls. The cited reason was excessive absences from work. It appears from the record that Complainant retired prior to being removed.

*Claim 2 - Officials refused to respond to request for verification of Complainant's employment*

On February 14, 2018, Complainant notified the Unit Chief for the Human Resources Division that the Department of Veterans Affairs needed verification of Complainant's employment for purposes of Complainant's application for disability benefits. The Unit Chief sent Complainant's VA verification form to the head of the Human Resources Call Center to assist Complainant. After Complainant's separation on May 3, 2018, the Unit Chief advised Complainant that because Complainant was separated from the Agency, the paperwork that Complainant submitted in June of 2018 for retirement disability had to be filed directly with the Office of Personnel Management.

At the conclusion of the investigation, the Agency provided Complainant with a copy of the report of investigation and notice of his right to request a hearing before a United States Equal Employment Opportunity Commission Administrative Judge (AJ). Complainant timely requested a hearing.

However, the AJ determined *sua sponte* that the complaint did not warrant a hearing and, over Complainant's objections, issued a decision by summary judgment in favor of the Agency on June 11, 2019. In reaching the decision finding no discrimination regarding his 2018 termination for excessive absences, the AJ stated that it was undisputed that Complainant had been off work since June 2016, with no indication that Complainant would be able to resume the duties of his Financial Operations Specialist position.

The Agency subsequently issued a final order adopting the AJ's finding that Complainant failed to prove that the Agency subjected him to discrimination as alleged.

This appeal followed.[2]

ANALYSIS AND FINDINGS

As this is an appeal from a decision issued without a hearing, pursuant to 29 C.F.R. § 1614.110(b), the Agency's decision is subject to de novo review by the Commission. 29 C.F.R. § 1614.405(a). See Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614, at Chapter 9, § VI.A. (Aug. 5, 2015) (explaining that the de novo standard of review "requires that the Commission examine the record without regard to the factual and legal determinations of the previous decision maker," and that EEOC "review the documents, statements, and testimony of record, including any timely and relevant submissions of the parties, and . . . issue its decision based on the Commission's own assessment of the record and its interpretation of the law").

We carefully reviewed the record and find that it is adequately developed. To successfully oppose a decision without a hearing, Complainant must identify material facts of record that are in dispute or present further material evidence establishing facts in dispute. Such a dispute would indicate that a hearing is necessary to produce evidence to support a finding that the agency was motivated by discriminatory animus. Here, however, Complainant has failed to establish such a dispute and has not identified any discovery that would be necessary to cure any asserted deficiencies in the record.

A claim of disparate treatment is examined under the three-part analysis first enunciated in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). For Complainant to prevail, she must first establish a prima facie case of discrimination by presenting facts that, if unexplained, reasonably give rise to an inference of discrimination, i.e., that a prohibited consideration was a

[2] On November 2, 2020, Complainant notified the EEOC that he was requesting a "Right to File a Civil Action" in this matter. He included with his request a copy of the United States District Court Pro Se 7 form that he completed. However, we have no confirmation that Complainant actually submitted the completed form to the United States District Court in the United States District Court for the Northern District of Texas, Dallas Division. Therefore, because there is no indication that Complainant has actually filed a civil action, we will proceed with the adjudication of this administrative appeal.

factor in the adverse employment action. See McDonnell Douglas, 411 U.S. at 802. The burden then shifts to the agency to articulate a legitimate, nondiscriminatory reason for its actions. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). To ultimately prevail, Complainant must prove, by a preponderance of the evidence, that the Agency's explanation is a pretext for discrimination. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 143 (2000); St. Mary's Honor Center v. Hicks, 509 U.S. 502, 519 (1993); Burdine, 450 U.S. at 256.

This established order of analysis in discrimination cases, in which the first step normally consists of determining the existence of a prima facie case, need not be followed in all cases. Where the agency has articulated a legitimate, nondiscriminatory reason for the personnel action at issue, the factual inquiry can proceed directly to the third step of the McDonnell Douglas analysis, the ultimate issue of whether complainant has shown by a preponderance of the evidence that the agency's actions were motivated by discrimination. See U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711, 713-714 (1983); Hernandez v. Dep't of Transportation, EEOC Request No. 05900159 (June 28, 1990); Peterson v. Dep't of Health and Human Services, EEOC Request No. 05900467 (June 8, 1990); Washington v. Dep't of the Navy, EEOC Petition No. 03900056 (May 31, 1990).

Even construing any inferences raised by the undisputed facts in favor of Complainant, a reasonable fact-finder could not find in Complainant's favor on any of the alleged claims. We will assume, without finding, that Complainant is an individual with a disability, in this case.[3] However, the undisputed record shows that Complainant voluntarily "stepped down" from his duties and never reported back to work. Once his leave was exhausted, including that under the FMLA, and his workers' compensation claim denied, management could no longer provide him with LWOP, so he was asked to return to work or be recorded as AWOL. The Agency's articulated reason for its actions was Complainant refusal to return to work resulting in the excessive absences with no end in sight. There is no evidence that would show that the stated reason was a pretext for unlawful discrimination. Regarding the paperwork verification of Complainant's employment to support his application for disability benefits it appears that any delay was the result of bureaucratic red tape and not the result of any discriminatory or retaliatory animus.

Finally, to the extent that Complainant wishes to raise his entitlement to continued employment or additional benefits based on his status as a disabled veteran, we note that the claim is outside of the scope of the laws covered by this Commission.

## CONCLUSION

For these reasons, we AFFIRM the Agency's Final Order.

---

[3] Complainant has not asserted that there was an accommodation that would have effectively allowed him to perform the full range of the essential functions of his position.

STATEMENT OF RIGHTS - ON APPEAL
RECONSIDERATION (M0620)

The Commission may, in its discretion, reconsider this appellate decision if the complainant or the agency submits a written request that contains arguments or evidence that tend to establish that:

1. The appellate decision involved a clearly erroneous interpretation of material fact or law; or
2. The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests for reconsideration must be filed with EEOC's Office of Federal Operations (OFO) **within thirty (30) calendar days** of receipt of this decision. If the party requesting reconsideration elects to file a statement or brief in support of the request, **that statement or brief must be filed together with the request for reconsideration**. A party shall have **twenty (20) calendar days** from receipt of another party's request for reconsideration within which to submit a brief or statement in opposition. See 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), at Chap. 9 § VII.B (Aug. 5, 2015).

Complainant should submit his or her request for reconsideration, and any statement or brief in support of his or her request, via the EEOC Public Portal, which can be found at

https://publicportal.eeoc.gov/Portal/Login.aspx.

Alternatively, complainant can submit his or her request and arguments to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, via regular mail addressed to P.O. Box 77960, Washington, DC 20013, or by certified mail addressed to 131 M Street, NE, Washington, DC 20507. In the absence of a legible postmark, complainant's request to reconsider shall be deemed timely filed if OFO receives it by mail within five days of the expiration of the applicable filing period. See 29 C.F.R. § 1614.604.

An agency's request for reconsideration must be submitted in digital format via the EEOC's Federal Sector EEO Portal (FedSEP). See 29 C.F.R. § 1614.403(g). Either party's request and/or statement or brief in opposition must also include proof of service on the other party, unless complainant files his or her request via the EEOC Public Portal, in which case no proof of service is required.

Failure to file within the 30-day time period will result in dismissal of the party's request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. **Any supporting documentation must be submitted together with the request for reconsideration.** The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. See 29 C.F.R. § 1614.604(c).

COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0610)

You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department

head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, **filing a civil action will terminate the administrative processing of your complaint.**

RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission.** The court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations

November 30, 2020
Date

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was provided to the parties.** I certify that on the date below this decision was provided to the following recipients via the means identified for each recipient:

Archie Butler
8189 Midtown Blvd. Apt 12202
Dallas, TX 75231
Via U.S. Mail

Arline Gaylord
Dir., EEO
Department of Justice Federal Bureau of Investigation
Via FedSEP

November 30, 2020
Date

Compliance and Control Division

**U.S. Department of Justice-Final Order**

**Dated July 15, 2019**

**Appeal No. 104X**



U.S. Department of Justice

Complaint Adjudication Office

Agency No. FBI-2018-00162
DJ No. 187-2-1931

EEOC No. 450-2019-00104X

950 Pennsylvania Ave NW
Patrick Henry Building, Room A4810
Washington, DC 20530

Mr. Archie Butler
308 Teakwood Lane
Cedar Hill, Texas 75104-2936

JUL 15 2019

Dear Mr. Butler:

This is in reference to the complaint of discrimination that you filed against the Federal Bureau of Investigation. Enclosed is the Department of Justice's Final Order and Memorandum Explaining the Final Order. The Department of Justice accepts the Administrative Judge's decision that the record did not support a finding that you were subjected to discrimination or a hostile work environment on the basis of disability or for having engaged in EEO activity.

Rights of Appeal

First, you have the right to appeal the decision to the Equal Employment Opportunity Commission (EEOC). You may file your appeal of the claim within 30 days of the date you receive this decision. If you are represented by an attorney of record, the 30-day appeal period shall begin to run the day your attorney receives this decision. The appeal must be in writing. The EEOC prefers that you use EEOC Form 573, Notice of Appeal/Petition to file your appeal; a copy of Form 563 has been attached to this letter. The Notice of Appeal should be sent to Carlton Hadden, Director, EEOC, Office of Federal Operations. You may send the Notice of Appeal to Director Hadden by mail at P.O. Box 77960, Washington, D.C. 20013, by facsimile at 202-663-7022 (submission must be no longer than 10 pages), or you can hand-deliver it at 131 M Street N.E., Washington, D.C. 20507. You must also send a copy of your notice of appeal to Matt Rizzo, Unit Chief, Federal Bureau of Investigation, 935 Pennsylvania Avenue NW, Room 10140, Washington, DC 20535. You must state the date and method by which you sent the copy of your notice to Mr. Rizzo either on, or attached to, the notice of appeal you mail to the EEOC. Alternatively, you may file

your appeal online by using the EEOC Public Portal at
www.eeoc.gov.

Second, you have the right to file a civil action in the appropriate United States District Court within 90 days of the date you receive this decision.  In filing your federal complaint, you should name Attorney General William P. Barr as the defendant.  Even if you appeal this decision to the EEOC, you still have the right to go to federal court.  You may file a civil action in the United States District Court within 90 days of the day you receive the EEOC's final decision on your appeal, or after 180 days from the date you filed your appeal with the EEOC, if the EEOC has not made a final decision by that time.

If you cannot afford to file a civil action, you can ask the court to allow you to file the action at no cost to you. The court may also provide you with an attorney if you cannot afford to hire one to represent you in your civil action. Questions concerning when and how to file a waiver of costs should be directed to your attorney or the District Court clerk.

Sincerely,

Robert K. Abraham
Acting Complaint Adjudication Officer

Cc:  Kathleen O'Neill
     Veronica Cuadra
     Matt Rizzo
     Arlene Gaylord
     Richard Toscano

**U.S. Department of Justice**

**Complaint Adjudication Office**

Agency No. FBI-2018-00162
DJ No. 187-2-1931

EEOC No. 450-2019-00104X

950 Pennsylvania Ave NW
Patrick Henry Building, Room A4810
Washington, DC 20530

JUL 15 2019

DEPARTMENT OF JUSTICE FINAL ORDER

in the matter of

Archie Butler v. Federal Bureau of Investigation

Based on a review of the record, the Department of Justice accepts the Administrative Judge's decision that the record did not support a finding that complainant was subjected to discrimination or a hostile work environment on the basis of disability or for having engaged in EEO activity when he was placed on Absent Without Leave status, when officials allegedly refused to respond to requests from the Department of Veterans Affairs verifying his employment, or when he was issued a letter proposing his dismissal from employment with the Federal Bureau of Investigation.

Robert K. Abraham
Acting Complaint Adjudication Officer
Department of Justice

**U.S. Department of Justice**
Complaint Adjudication Office

Agency No. FBI-2018-00162
DJ No. 187-2-1931

EEOC No. 450-2019-00104X

950 Pennsylvania Ave NW
Patrick Henry Building, Room A4810
Washington, DC 20530

DEPARTMENT OF JUSTICE MEMORANDUM

JUL 16 2019

Explaining the Final Order

in the matter of

Archie Butler v. Federal Bureau of Investigation

Section 1614.110 of 29 C.F.R. provides that the Department of Justice shall issue a final order accepting or rejecting an Administrative Judge's (AJ) decision. An AJ's decision is accepted if it is supported by substantial evidence. 29 C.F.R. § 1614.405(a). In this case, the Department of Justice accepts the AJ's decision that the record did not support a finding that complainant was subjected to discrimination or a hostile work environment on the basis of disability or having engaged in EEO activity.

Complainant alleged that he was subjected to discrimination and/or a hostile work environment on the basis of disability and having engaged in EEO activity when:

1. on March 2, 2018, he discovered he had been placed in an Absent Without Leave (AWOL) status effective December 2017;

2. officials refused to respond to requests from the Department of Veterans Affairs (VA) verifying his employment for purposes of his application for disability benefits; and

3. on March 7, 2018, he was presented with a letter proposing his removal from the rolls of the FBI.

Record of Investigation (ROI) at 50-51.

On May 15, 2019, the AJ, *sua sponte*, issued a Notice of Intent to Issue Summary Judgment (AJ's Notice), inviting the parties to submit briefs responding to her assertion that the case was ripe for a summary decision. In the Notice, the AJ asserted that the Federal Bureau of Investigation's (FBI)

"explanation[s] showed the absence of a causal connection between Complainant's membership in a protected category and the disputed actions."

With regard to issue 1, the AJ said that the record showed that complainant had exhausted all available leave, "including FMLA-protected leave," and that he was not "eligible to receive" Leave Without Pay (LWOP) "under worker's compensation." Furthermore, the AJ said, the record showed that complainant's supervisor warned him that he would be placed on AWOL if he did not return to work by December 11, 2017, and that he did not return to work by that date. AJ's Notice at 3-4. The record shows that complainant believed that he was physically incapable of working, noting that he "was declared 100% unemployable, permanent[ly] and totally disabled on December 7, 2017[,] by the VA," and that he was seeking disability retirement during the time in question. ROI at 66, 69.

With regard to issue 2, the AJ said that the record showed that officials acted to provide the VA with verification of complainant's FBI employment, but, due to his subsequent dismissal from employment with FBI, he had to have his disability retirement paperwork completed by the Office of Personnel Management. AJ's Notice at 4. The record shows that complainant subsequently was "medically retired through the VA adjudication process…." ROI at 71.

With regard to issue 3, the AJ said that the record showed that complainant's March 2018 proposed dismissal from employment with FBI was premised on his "excessive absences," and that it was undisputed that he had been absent from work since June 2016. The AJ said that the record contained "no evidence to support that [FBI] was required to continue to maintain Complainant's position open for him under these circumstances and with no indication that Complainant would be able to resume the duties of his … position." AJ's Notice at 4.

As FBI had "met its burden of explaining its actions," the AJ said, complainant's response to the Notice needed to demonstrate that FBI's explanations were pretext meant to hide the true discriminatory[1] or retaliatory motive. AJ's Notice at

---

[1] The AJ wrote, "Since the Agency met its burden of explaining its actions, the burden shifts to Complainant to show that the Agency's actions were motivated by reprisal." It is assumed that, in this sentence, the AJ inadvertently mentioned only EEO reprisal, and omitted disability discrimination. See AJ's Notice at 4.

4. FBI did not respond to the AJ's Notice. See AJ's Summary Decision.

In complainant's responses[2] to the AJ's Notice, he stated that, "because of [his] Disabled Veteran status, it was discriminatory to remove or attempt to remove [him] from federal service," given the existence of "federal regulations pertaining to the treatment of Disabled veterans to include all Disabled persons." See Complainant's Responses to Notice of Intent to Issue Summary Judgment (Complainant's Responses). The record shows that complainant believed that Executive Order 5396 and Worker's Compensation law required FBI to offer him LWOP and prevented it from placing him on AWOL or taking disciplinary action against him for his absences. See, e.g., ROI at 67. In his Responses, complainant also said that he believed that officials' alleged harassment was "an extension of the Racial Discrimination and Reprisal seen in" his prior EEO complaint, filed in 2016. That complaint appears to have involved complainant's non-selection for an FBI Auditor position due to "Non-certification of 'Accounting' education credentials." At the time of his application, complainant was serving as Acting Auditor, and he attempted to step down from that role after being deemed ineligible for selection into a permanent Auditor position. The vast majority of complainant's Responses to the Notice involved description of the events of that prior complaint, and he failed to address in any detail any of the issues in the current complaint, let alone those raised by the AJ in her Notice. See Complainant's Responses.

In her brief Summary Decision, the AJ found that, viewing the evidence in the light most favorable to complainant, the record showed that FBI's "actions were not based on his protected categories." The AJ said that, while disability is a protected basis in EEO law, "Disabled Veteran" is not. The AJ also said that complainant's Responses "alleged reprisal because he declin[ed] to continue to work in an auditor role" but that "[t]his argument was not related to his protected bases (disability and reprisal for prior EEO activity) and did not preclude summary judgment." The AJ found that FBI's non-discriminatory and non-retaliatory "explanations were not rebutted [by complainant,] or otherwise shown to be pretextual." AJ's Summary Decision.

Substantial evidence supports the AJ's finding that the record did not establish that he was subjected to discrimination

---

[2] The record contains two nearly identical responses from complainant, both dated May 30, 2019.

or a hostile work environment on the basis of disability or EEO activity. While not sufficiently explained in the AJ's very brief Summary Decision or Notice, the record shows that complainant's assertion that his treatment by officials was the product of disability discrimination appears based solely on his belief that officials' actions against him should have been precluded by various legal provisions protecting Disabled Veterans. Complainant did not allege that any officials harbored discriminatory animus towards those with disabilities, nor did he provide any evidence that those without disabilities were treated better by officials than he was. Thus, even if various legal provisions did protect him as a Disabled Veteran, he did not allege that officials' failure to abide by those provisions were the product of animus towards those with disabilities.[3] As application of Executive Order 5396 and Worker's Compensation law are outside of the purview of EEO adjudicators - including the AJ and this Office - complainant's EEO complaint cannot stand solely on the alleged fact that officials failed to abide by those legal provisions.

With regard to retaliation, the AJ is incorrect that complainant's Responses failed to allege reprisal related to prior EEO activity, as they clearly state that he filed an EEO complaint about the Auditor position and asserted that his treatment in this complaint was a result of that prior EEO activity. While complainant's retaliation claim was based on prior EEO activity, the record is devoid of any information, beyond complainant's conclusory assertions, connecting that EEO activity to the events at issue here. As such, the record does not support complainant's claim of EEO retaliation, and the claim was properly decided on summary judgment.

Substantial evidence supports the AJ's conclusion that officials provided non-discriminatory and non-retaliatory explanations for its actions, and that nothing in the record suggests that officials' explanations were pretext meant to hide discriminatory or retaliatory intent.

For the above reasons, substantial evidence supports the AJ's decision. As such, the Department of Justice accepts the

---

Complainant did not claim to have requested a reasonable accommodation related to those events, and the AJ did not address the matter of accommodations. It is noted that complainant, by his own admission, was, and would remain, unable to work, and that he thus would not be entitled to any accommodations under the Rehabilitation Act. See, e.g., Fullman v. U.S. Postal Serv., EEOC DOC 0120100160 at *2 (May 22, 2013) (finding that the complainant failed to establish that she was denied a reasonable accommodation when the record showed that she "was unable to work any job").

AJ's decision and enters a final order acknowledging that it will be fully implemented.

Robert K. Abraham
Acting Complaint Adjudication Officer

Alexander D. Silver
Complaint Adjudication Office

# Memorandum

| Subject: | Date: |
|---|---|
| Archie Butler v. Federal Bureau of Investigation<br><br>Agency No. FBI-2018-00162<br>EEOC No. 450-2019-00104X<br>DJ No. 187-2-1931 | JUL 15 2019 |

| To: | From: |
|---|---|
| Matthew Rizzo<br>Unit Chief<br>Federal Bureau<br>of Investigation | Robert Abraham<br>Acting Complaint Adjudication Officer<br>Department of Justice |

Enclosed is the Department of Justice Final Order and Memorandum in Support of the Final Order in the above case. The Order accepts the Administrative Judge's decision that the record did not support a finding that complainant was subjected to discrimination or a hostile work environment on the basis of disability or for having engaged in EEO activity. Under EEOC regulations, complainant has 30 days from receipt of the Order to file an appeal with the EEOC's Office of Federal Operations. If complainant files an appeal, the regulations require that you be sent a copy of the appeal. Upon receipt of any appeal, you should contact the Federal Bureau of Investigation's EEO Office so that it may timely forward the case file to the EEOC's Office of Federal Operations. If you have any questions about this mailing, please contact me at 202-305-0079.

Cc: Archie Butler
Kathleen O'Neill
Veronica Cuadra
Richard Toscano

**Equal Employment Opportunity Commission (EEOC) – Summary Decision**

**Dated June 11, 2020**

**Appeal No. 104X**

**United States of America**
**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Dallas District Office**

| | | |
|---|---|---|
| Archie Butler, *Complainant* | ) | EEOC Case No. 450-2019-00104X |
| v. | ) | Agency No. FBI-2018-00162 |
| William P. Barr. Attorney General **U.S. DEPARTMENT OF JUSTICE**, *Agency* | ) | Date: June 11, 2019 |

## SUMMARY DECISION

This decision is issued pursuant to 29 C.F.R. Sec. 1614.109(g)(3). On May 15. 2019. the assigned Administrative Judge issued a Notice of Intent to Issue Summary Judgment ("Notice") informing the parties of a determination that the case may be appropriate for summary judgment. The Notice stated the claim in this case. outlined the legal standard for summary judgment. and provided the applicable substantive legal standard. The Notice further described the grounds supporting the determination that the case should be summarily decided. As stated within the Notice. the parties were provided an opportunity to respond. The Notice informed the parties that unless a party demonstrated that there was a genuine issue of material fact in dispute. no hearing would be held in this matter. Complainant filed his response in opposition of a summary decision.

Summary judgment is appropriate because viewing the evidence in the light most favorable to Complainant, the Agency's actions were not based on his protected categories. In his response, Complainant argued that the Agency discriminated against him based on his "Disabled Veteran" status. While disability is covered basis. Veteran status is not covered by the laws enforced by this forum. Additionally. Complainant's response referred to alleged reprisal because he declining to continue to work in an auditor role. This argument was not related to his protected bases (disability and reprisal for prior EEO activity) and did not preclude summary judgment. The Agency's explanations were not rebutted or otherwise shown to be pretextual. Therefore. for the reasons stated in the Notice of Intent to Issue a Summary Judgment Decision, incorporated by reference into this Decision, summary judgment in favor of the Agency is rendered.

10/01/08 REV

United States of America
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
Dallas District Office

| | | |
|---|---|---|
| Archie Butler, *Complainant* | ) | |
| | ) | EEOC Case No. 450-2019-00104X |
| v. | ) | Agency No. FBI-2018-00162 |
| William P. Barr, Attorney General U.S. DEPARTMENT OF JUSTICE, *Agency* | ) | Date: June 12, 2019 |

## Order Entering Judgment

For the reasons set forth in the accompanying Final Decision , judgment is entered in the above-captioned case for the Agency. Also accompanying this order is Notice to the Parties concerning issuance of the Agency's final order. appeal rights and other matters.

This is an EEOC Hearings Electronic Case Processing System (HECAPS) case. My Office has provided the parties electronic (CD-ROM) copies of the Official Record of Proceedings of the case.

The Agency Final Action Authority is provided two (2) electronic (CD-ROM) copies of the Official Record of Proceedings. If the Agency is notified that Complainant is appealing my decision. or if the Agency appeals after deciding not to fully implement my decision, the Agency will submit the case file to the Commission's Office of Federal Operations (OFO) in the time and manner specified in EEO MD-110, at p. 9-12. In addition, the Agency will provide OFO an electronic (CD-ROM) copy of the Official Record of Proceedings. Upon request, Complainant will be provided a printed copy of the Official Record of Proceedings.

Veronica A. Cuadra, Administrative Judge
EEOC – Dallas District Office
207 South Houston Street, 3rd Floor
Dallas, TX 75202-4703
Tel: (214) 253-2733
Fax: (214) 253-2739
E-Mail: v.cuadra-efilebox@eeoc.gov

## Certificate of Service

On this date, I caused to be delivered to the below-named parties or their representatives by the method(s) indicated, a true copy of the attached instrument. **NOTE: If mailed via first class mail, for timeliness purposes, it will be assumed that the instrument was received within five (5) calendar days of the below-specified date.**

Archie Butler
308 Teakwood Lane
Cedar Hill, TX 75104-2936
Complainant
VIA FIRST CLASS MAIL

Complaint Adjudication Officer (CAO)
Civil Rights Division
U.S. Department of Justice
Patrick Henry Building, Rm A-4810
950 Pennsylvania Ave NW
Washington, DC 20530-0001
VIA FIRST CLASS MAIL

Kathleen O'Neill
Federal Bureau of Investigations
935 Pennsylvania Avenue NW Room 10140
Washington, DC 20535-0001
Agency Representative
VIA FIRST CLASS MAIL

Date: June 12, 2019

Alvin Negron-Paez
Office Automation Assistant
Federal Hearings Unit - Dallas District Office

# NOTICE TO PARTIES

## To The Agency

Within forty (40) days of receiving this decision and the hearing record, you are required to issue a final order notifying the Complainant whether or not you will fully implement this decision. You should also send a copy of your final order to the Administrative Judge.

Your final order must contain a notice of the Complainant's right to appeal to the Office of Federal Operations, the right to file a civil action in a federal district court, the name of the proper defendant in any such lawsuit, the right to request the appointment of counsel and waiver of court costs or fees, and the applicable time limits for such appeal or lawsuit. A copy of EEOC Form 573 (Notice of Appeal/Petition) must be attached to your final order.

If your final order does not fully implement this decision, you must simultaneously file an appeal with the Office of Federal Operations in accordance with 29 C.F.R. 1614.403 and append a copy of your appeal to your final order. See Appendix O, EEO MD-110. You also must comply with the Interim Relief regulation set forth at 29 C.F.R. 1614.505.

## To The Complainant

You may file an appeal with the Commission's Office Federal Operations when you receive a final order from the Agency informing you whether the Agency will or will not fully implement this decision. 29 C.F.R. 1614.110 (a). From the time you receive the Agency's final order, you will have thirty (30) days to file an appeal. If the Agency fails to issue a final order, you have the right to file your own appeal any time after the conclusion of the Agency's 40-day period for issuing a final order. See EEO MD-110, p. 9-3. In either case, please attach a copy of the decision with your appeal.

Do not send your appeal to the Administrative Judge. Your appeal must be filed with the Office of Federal Operations at the address set forth below and you must send a copy of your appeal to the Agency at the same time you file it with the Office of Federal Operations. You must certify, in or attached to your appeal to the Office of Federal Operations, the date and method by which you send a copy of your appeal to the Agency.

## Where To File An Appeal

All appeals to the Commission must be file by mail, hand delivery or facsimile.

**BY MAIL:**

Director, Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 7796
Washington, DC 20013

**BY PERSONAL DELIVERY:**

Director, Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Washington, DC 20507

**BY FACSIMILE:**

Telephone No. (202) 663-7022

NOTE: Faxes over 10 pages will not be accepted.

**Compliance With Agency Final Action**

Pursuant to 29 C.F.R. 1614.504, the Agency's final action that has *not* been the subject of an appeal to the Commission or a civil action is binding on the Agency. If the Complainant believes that the Agency has failed to comply with the terms of the decision, Complainant shall notify the Agency's EEO Director, in writing, of the alleged noncompliance within 30 days of when the Complainant knew or should have known of the alleged noncompliance. The Agency shall resolve the matter and respond to the Complainant in writing. If the Agency has not responded to the Complainant, in writing, or if the Complainant is not satisfied with the Agency's attempt to resolve the matter, the Complainant may appeal to the Commission for a determination of whether the Agency has complied with the terms of its final action. The Complainant may file such an appeal 35 days after serving the Agency with allegations of non-compliance, but must file an appeal within 30 days of receiving the Agency's determination. A copy off the appeal must be served on the Agency and the Agency may submit a response to the Commission within 30 days of receiving the notice of appeal.

**Equal Employment Opportunity Commission (EEOC) – Summary Judgement**

**Dated May 15, 2019**

**Appeal No. 104X**

**United States of America**
**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Dallas District Office**

| | | |
|---|---|---|
| Archie Butler, *Complainant* | ) | |
| | ) | EEOC Case No. 450-2019-00104X |
| v. | ) | Agency No. FBI-2018-00162 |
| William P. Barr, Attorney General **U.S. DEPARTMENT OF JUSTICE**, *Agency* | ) | Date: May 15, 2019 |

**NOTICE OF INTENT TO ISSUE SUMMARY JUDGMENT**

After review of the record, it appears there may be no material facts in dispute, and that it may therefore be appropriate to issue a decision without holding a hearing. *See* 29 C.F.R. §1614.109(g)(3).

The accepted and investigated claims were whether Complainant was discriminated against and subjected to hostile work environment harassment based on disability (physical and mental) and reprisal for prior EEO activity when: 1. On March 2, 2018, he discovered he had been placed in an Absent Without Leave status effective December 2017; 2. Officials have refused to respond to requests from the Department of Veterans Affairs verifying his employment for purposes of his application for disability benefits, and 3. On March 7, 2018, he was presented with a letter proposing his removal from the rolls of the FBI.

Legal Standards for Summary Decision.

Summary judgment is appropriate if the pleadings, answers to interrogatories, admissions, affidavits and other evidence establish no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See* 29 C.F.R. §1614.109(g); *see also Murphy v. Department of the Army*, EEOC Appeal No. 01A04099 (July 11, 2003) (noting that the regulation governing decisions without a hearing is modeled after the Federal Rules of Civil Procedure, Rule 56). Only disputes over facts that might affect the outcome of the suit under governing law, and not irrelevant or unnecessary factual disputes, will preclude the entry of summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material factual disputes include credibility disputes where two or more people have different versions of the relevant event, and the determination of that credibility dispute will affect the outcome of the case. There is no genuine issue of material fact if the relevant evidence in the record, taken

indicates that a reasonable fact-finder could not return a verdict for the party opposing summary judgment. *Id.*

When opposing a properly supported motion for summary judgment, a party must respond with *specific facts* showing that there is a genuine issue of material fact and that the moving party is not entitled to judgment as a matter of law. *See Anderson*, 477 U.S. at 250. An opposing party may not rest upon mere allegations or denials in the pleadings or upon conclusory statements in affidavits: rather, s/he must go beyond the pleadings and support her/his contentions with proper documentary evidence. *See Celotex Corp. v. Catrett*. 477 U.S. 317. 324 (1986). To defeat summary judgment, a party must show that there is sufficient material evidence supporting the claimed factual dispute to require a fact finder to resolve the parties' differing versions of the truth at trial. *Anderson*, 477 U.S. at 248-49. Uncorroborated accusations are not enough to defeat summary judgment. *Liles-Walker v. United States Postal Service*, EEOC Appeal No. 0120090431 (July 26, 2012).

Rehabilitation Act.

Pursuant to the Rehabilitation Act Amendments of 1992, the employment standards of the Americans with Disabilities Act (ADA) apply to all non-affirmative action employment discrimination claims filed by federal applicants or employees with disabilities under section 501 of the Rehabilitation Act. *See Lorenzo v. U.S. Postal Serv.*, EEOC Appeal No. 01973337 (May 25, 2000) at n.3. Moreover, the ADA Amendments Act of 2008 ("ADAAA"), which took effect on January 1. 2009, expressly applies to the Rehabilitation Act. Pub. L. No. 110-325. 122 Stat. 3553 (2008) at § 7.

Applicable Law about Substance of Case.

A circumstantial claim of discriminatory treatment based on a protected status may be examined under the three-part analysis first enunciated in *McDonnell Douglas Corporation v. Green*. 411 U.S. 792 (1973). A complainant first establishes a *prima facie* case of discrimination by presenting facts that, if unexplained, reasonably give rise to an inference of discrimination. *i.e.*, that a prohibited consideration was a factor in the adverse action. *McDonnell Douglas*. 411 U.S. at 802; *Furnco Construction Corp. v. Waters*, 438 U.S. 567 (1978). The burden then shifts to the agency to articulate a legitimate, nondiscriminatory reason for its actions. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). Complainant must then offer proof that the Agency's explanation is pretextual. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000); *St. Mary's Honor Ctr. v. Hicks*. 509 U.S. 502, 519 (1993).

Complainant bears the burden to prove that the conduct was taken because of his/her protected classes. Concerning alleged actions by management, if a complainant fails to raise a genuine issue of material fact as to the existence of discriminatory intent on the part the responsible management officials, "no further inquiry would be necessary as to whether the incidents complained of ... constitute separate acts of discrimination under disparate treatment theory." *Nicki D. v. Dep't of Veterans Affairs*, EEOC Appeal No. 0120133247 (Oct. 15, 2015).

In order to establish a *prima facie* case of disparate treatment discrimination, the evidence should show that: (1) the complainant is a member of the protected class; (2) the employer took a tangible employment action against her; and (3) the circumstances of the employer's treatment of complainant give rise to an inference of discrimination, such as where the employer treats a similarly situated person who is not a member of a complainant's protected class more favorably than the employer treated the complainant. *See Wiley v. U.S. Postal Service*, EEOC App. No.0120130121 (Mar. 20, 2013). Generally, for comparative evidence relating to other employees to be considered relevant for purposes of establishing prima facie of discrimination, all relevant aspects of the employees' work situation must be identical or nearly identical, i.e., that the employees report to the same supervisor, perform the same job function, and work during the same time periods. *See Pohlhaus v. Dep't of Navy*, EEOC Appeal 0120113173 (April 16, 2013). Differentiating or mitigating circumstances that would distinguish employee's situations should be considered. *Cf. White v. Department of Defense*, EEOC Appeal No. 01A22115 (June 12, 2003).

To establish a *prima facie* case of reprisal, a complainant must show (1) she participated in protected activity; (2) the agency official was aware of the protected activity; (3) there was subsequent adverse action taken against a complainant; and (4) a causal link exists between the protected activity and the adverse treatment. *Becki P. v. U.S. Dep't of State*, EEOC Appeal No. 0120152856 (March 24, 2016). As in the case of alleged discriminatory actions, an employer may "proffer a legitimate, non-retaliatory reason for the challenged actions." EEOC Enforcement Guidance on Retaliation and Related Issues, EEOC Notice 915.004, at II. As in the case of alleged discriminatory treatment or actions, an employer may "proffer a legitimate, non-retaliatory reason for the challenged actions." EEOC Enforcement Guidance on Retaliation and Related Issues, EEOC Notice 915.004, at II.

Where the agency has articulated a legitimate, nondiscriminatory reason for the action at issue, the factual inquiry can proceed directly to the third step of the *McDonnell Douglas* analysis, the ultimate issue of whether complainant has shown by a preponderance of the evidence that the agency's actions were motivated by discrimination based on retaliation. *See U.S. Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 713-714 (1983); *Hernandez v. Department of Transportation*, EEOC Request No. 05900159 (June 28, 1990); *Peterson v. Department of Health and Human Services*, EEOC Request No. 05900467 (June 8, 1990); *Washington v. Department of the Navy*, EEOC Petition No. 03900056 (May 31, 1990).

Grounds for Summary Judgment.

Complainant alleged reprisal and disability discrimination by the Agency. As covered below, the Agency's explanation showed the absence of a causal connection between Complainant's membership in a protected category and the disputed actions.

In allegation 1, Complainant asserted that on March 2, 2018, he discovered that he had been placed in an Absent Without Leave (AWOL) status effective December 2017. Supervisor Jones confirmed that on November 27, 2017, he called Complainant and advised him that he needed to report to work on December 11, 2017, or be charged AWOL. Jones confirmed that

Complainant did not return to work on December 11, 2017. Jones stated that on January 11. 2108, he informed Complainant via email that he was on AWOL status. The following day, Complainant sent Jones additional medical information, and since Jones thanked Complainant for the medical documentation, Complainant was under the impression that he was still being afforded LWOP. However, Complainant's belief was insufficient to override what Jones had explicitly told him via email. It was undisputed that by December 11, 2017, Complainant had exhausted all available leave, including FMLA-protected leave. Additionally, Jones was informed that Complainant's worker's compensation claims were denied by the Department of Labor. and. thus. Complainant was not eligible to receive LWOP under worker's compensation.

In allegation 2, Complainant alleged that Agency officials refused to respond to requests from the Department of Veterans Affairs verifying his employment for purposes of his application for disability benefits. At the time, Michael Huff was the Unit Chief (UC) for the Human Resources Division of HRD. Huff noted that on February 14, 2018. Complainant notified him by email that his VA verification had not been completed. Huff sent Complainant's VA verification form directly to UC Joseph McQueen. the head of the HRD Call Center. to assist Complainant. McQueen was not able to assist Complainant, and, he claimed referring Complainant back to Huff. After Complainant's separation, Huff advised Complainent that because he was separated from the Agency, the paperwork Complainant submitted in June 2018 for retirement disability had to be filed directly with the Office of Personnel Management. IF Ex. 12.

The last allegation concerned Complainant being presented on or about March 7. 2018, with a letter proposing his removal from the Agency's rolls. Complainant's removal proposal cited to excessive absences from the work. It was undisputed that Complainant had been off work since June 2016. There was no evidence to support that the Agency was required to continue to maintain Complainant's position open for him under these circumstances and with no indication that Complainant would be able to resume the duties of his Financial Operations Specialist position.

The parties' responses should comply with the instructions below. Since the Agency met its burden of explaining its actions, the burden shifts to Complainant to show that the Agency's actions were motivated by reprisal. In establishing pretext, complainant cannot rely on conclusory assertions and suspicions that are not supported in the record. *Complainant v. Department of Defense*, EEOC Appeal No. 0120131035 (April 24, 2015). Rather. complainant must proffer evidence to corroborate her contentions that the agency's reason was a pretext for reprisal. *Morris v. United States Postal Service*, EEOC Appeal No. 01A32685 (March 25, 2004).

Content of the Parties' Responses.

When opposing summary judgment, a party must respond with specific facts showing that there is a genuine dispute as to a material fact and that the other party is not entitled to judgment as a matter of law. *Anderson*. 477 U.S. at 250. Unless a party demonstrates that there is a genuine issue of material fact in dispute, no hearing will be held in this matter.

If a party opposes summary judgment, he/she may not rely on mere allegations, speculation, conclusory statements, or denials. The party should cite to specific evidence contained in the report of investigation which creates a factual dispute regarding a material issue in the case. If not already contained in the report of investigation, the party should also include any relevant documentary evidence or witness statements, or other supporting materials and provide a clear and specific statement of their relevance. Where information is compiled from agency records, provide a declaration from the person preparing the evidence as to the method used to prepare it. If a party plans to call witnesses to testify in support of claims or defenses, the party should obtain written statements from them, and submit these statements in support of the argument against summary judgment.

Time for Responses.

Within fifteen days, the parties' responses shall be submitted by electronic mail to v.cuadra-efilebox@eeoc.gov, and, each side **must copy the opposing party on the email.** After reviewing the parties' responses and examining the record, the Administrative Judge will determine whether summary judgment is appropriate and issue a decision or an order as appropriate.

It is so ORDERED.

Veronica A. Cuadra, Administrative Judge
EEOC – Dallas District Office
207 South Houston Street, 3rd Floor
Dallas, TX 75202-4703
Tel: (214) 253-2733
Fax: (214) 253-2739
E-Mail: [illegible]

## CERTIFICATE OF SERVICE

On this date. I caused to be delivered to the below-named parties or their representatives by the method(s) indicated, a true copy of the attached instrument.

Date:  5/15/2019

For the Commission:



Veronica A. Cuadra
Administrative Judge
EEOC, Dallas District Office
207 S. Houston St., 3rd Floor
Dallas, Texas 75202
Tel: (214) 253-2733
FAX: (214) 253-2739

UNITED STATES POSTAL SERVICE Retail

P

US POSTAGE PAID

$8.70

Origin: 75231
01/06/21
4822310231-23

PRIORITY MAIL 1-DAY®

2 Lb 7.10 Oz
1029

EXPECTED DELIVERY DAY: 01/07/21

C001

SHIP
TO:
1100 COMMERCE ST
STE 1452
Dallas TX 75242-1310

USPS TRACKING® NUMBER

9505 5127 3689 1006 2952 74

PRIORITY
★ MAIL ★

FROM:
A. Buttler
P.O. Box 824782
Dallas, TX 45382

RECEIVED
JAN 13 2021
MAILROOM

TO:
United States District Ct.
1100 Commerce St.
Room 1452
Dallas, TX 75242

Label 228, March 2016 FOR DOMESTIC AND INTERNATIONAL USE

X-RAY

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE



RECEIVED
JAN 11 2021
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

Archie Butler - Civil Complaint 01/05/01

1

JS 44 (Rev. 10/20) - TXND (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Butler, Archie

(b) County of Residence of First Listed Plaintiff: Dallas
*(EXCEPT IN U.S. PLAINTIFF CASES)*

(c) Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

FBI- SAC Class, Thomas. ASAC Tillman, Niambi
SFOS Hollingshead, Sandra. Rutherford, Jeff

County of Residence of First Listed Defendant: Dallas
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☒ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark
- ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit (15 USC 1681 or 1692)
- ☐ 485 Telephone Consumer Protection Act
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
31 U.S. Code §76711, Title VII, ADA

Brief description of cause:
Veteran Disability Discrimination, Removal from Federal Service, Education Credentials Denied, Prevented from entering workplace

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*: JUDGE ______ DOCKET NUMBER ______

DATE: 01/05/2021

SIGNATURE OF ATTORNEY OF RECORD: [signature]

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______



JAN 1 1 2021
CLERK U
RTHERN DISTRICT OF

Archie Butler - Civil Complaint 01/06/01

2

JS 44 (Rev. 10/20) - TXND (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Archie Butler

**DEFENDANTS**
UC Estok, Jackie

(b) County of Residence of First Listed Plaintiff Dallas
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant District of Columbia
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

(c) Attorneys *(Firm Name, Address, and Telephone Number)*

Attorneys *(If Known)*

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question *(U.S. Government Not a Party)*
- ☒ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)* Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
☐ 365 Personal Injury - Product Liability
☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
☒ 440 Other Civil Rights
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 448 Education

**PRISONER PETITIONS**
Habeas Corpus:
☐ 463 Alien Detainee
☐ 510 Motions to Vacate Sentence
☐ 530 General
☐ 535 Death Penalty
Other:
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition
☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Management Relations
☐ 740 Railway Labor Act
☐ 751 Family and Medical Leave Act
☐ 790 Other Labor Litigation
☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 465 Other Immigration Actions

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 835 Patent - Abbreviated New Drug Application
☐ 840 Trademark
☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 375 False Claims Act
☐ 376 Qui Tam (31 USC 3729(a))
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit (15 USC 1681 or 1692)
☐ 485 Telephone Consumer Protection Act
☐ 490 Cable/Sat TV
☐ 850 Securities/Commodities/ Exchange
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 893 Environmental Matters
☐ 895 Freedom of Information Act
☐ 896 Arbitration
☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation - Transfer ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
31 U.S.Code6711, Title VI, ADA
Brief description of cause:
Veteran Disability Discrimination, Removal from Federal Service, Education Credentials denied, Prevented from entering workplace

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P. DEMAND $ CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)*: JUDGE ______ DOCKET NUMBER ______

DATE 01/05/2021 SIGNATURE OF ATTORNEY OF RECORD [signature]

FOR OFFICE USE ONLY

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______



UNITED STATES
POSTAL SERVICE®

PRIORITY®
MAIL

U.S. District Court Dallas
1100 Commerce St. Room 1452
Dallas, TX 75242

MAILING ENVELOPE
FOR DOMESTIC AND INTERNATIONAL USE

To schedule free Package Pickup, scan the QR code.

USPS.COM/PICKUP

TRACKED ■ INSURED

PS00000000013

EP14 May 2020
OD: 11 5/8 x 15 1/8

VISIT US AT USPS.CO
ORDER FREE SUPPLIES ONLI

For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.