IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| ARCHIE BUTLER, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | No. 3:21-cv-64-X-BN |
| § | |
| MERRICK B. GARLAND, Attorney § | |
| General, United States Department of § | |
| Justice, § | |
| § | |
| Defendant. § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Archie Butler brings this *pro se* action concerning his employment with the Federal Bureau of Investigation, alleging claims of retaliation and discrimination based on race and disability. *See* Dkt. No. 3.

United States District Judge Brantley Starr referred Butler's lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference.

Defendant Attorney General Merrick B. Garland answered and moves for summary judgment on Butler's claims. *See* Dkt. Nos. 28, 37-39. As ordered (and allowed by the applicable rules), Butler filed a response, and Garland filed a reply. *See* Dkt. Nos. 40-43. Butler then filed a surreply captioned as a motion for leave to file a surreply. *See* Dkt. No. 44. And the Court denied leave and struck the surreply. *See* Dkt. No. 45.

The undersigned now enters these findings of fact, conclusions of law, and

recommendation that the Court should grant the motion for summary judgment and dismiss this lawsuit with prejudice.

## Applicable Background

Butler joined the FBI in Dallas in 2012, was promoted from the GS-8 level to the GS-11 level, and, in September 2015, was asked to serve as the acting GS-12 auditor in Dallas. As this trajectory reflects, Butler was perceived "to be a really nice and decent guy" and "an outstanding employee," so much so that the special agent in charge (SAC) in Dallas "encouraged" Butler to apply for the permanent GS-12 auditor position. Dkt. No. 38-3 at 35. Butler did.

But, on March 4, 2016, his application was rejected by FBI Headquarters because Butler did not "possess the appropriate coursework to be credited towards the Auditor position," "a basic requirement for the position." Dkt. No. 38-4 at 2. The FBI in Dallas then re-posted the auditor position as a GS 9/11, to allow Butler to qualify. But he declined to apply and stepped down as the acting auditor. And, on April 28, 2016, Butler contacted an Equal Employment Opportunity (EEO) representative regarding the rejection of his application. *See* Dkt. No. 38-3 at 2-9

Butler then returned to his prior position as a Financial Operations Specialist (FOS) on May 10, 2016, but he did not return to a private office and was instead officed in a cubicle. And, after meeting with his supervisor on May 11, Butler decided to take leave "for an unspecified amount of time," informing his supervisor that he and his family "are thinking it may be better for [him] to cut [his] losses and consider other opportunities." Dkt. No. 38-3 at 41.

Butler was out of the office for a month, during which time the Dallas SAC decided to deactivate Butler's access badge. As the SAC explained in a sworn statement:

> [A]s things began to escalate after Butler stepped back down to the FOS position, I became aware that he began taking a lot of leave. At some point when he was out of the office on extended leave, his behavior began to become erratic. He would go from being confrontational with his supervisor, Sandra Hollingshead, to being completely withdrawn and non-responsive to her. Once it became apparent that he was going to be out of the office for an extended period, I made the decision to have his access badge deactivated so that we would know when and if he tried to enter the building. I made this decision after having numerous discussions with my executive staff and receiving information about Butler's history with firearms.

Dkt. No. 38-3 at 33; *see also id.* at 34 (in which the Dallas SAC "recall[ed] vacillating back and forth about activating and deactivating Butler's access badge due to his inconsistent behavior and history and fascination with firearms. I had several discussions with our Employee Assistance Program (EAP) counselor, Kevin Unruh, who finally convinced me that perhaps deactivating Butler's access may be making Butler more unstable. At that point I decided to have his access reactivated for good.").

Regardless, when Butler returned on June 13, 2016, his badge did not work, and he was told that he would have to be escorted into the building. *See id.* at 24. According to Butler, this "disappointed [him] and caused [him] emotional anguish" and for him to extend his leave to June 27, 2016. *Id.*

Butler did return on June 27. And, two days later, he was counseled on his time and attendance and told that he would need to inform his supervisor, in advance, if he would be arriving late or leaving early. June 29, 2016 turned out to be Butler's

- 3 -

last day in the office.

Butler relied on an executive order from 1930, *see* Exec. Order No. 5396 (July 17, 1930), which he believed entitled him, as a disabled veteran, to take as much leave as needed for medical treatment without applying for FMLA or some other form of leave. The FBI disagreed and placed Butler in an "absent without leave" (AWOL) status that was converted to leave without pay once Butler provided leave slips from his doctor.

On November 27, 2017, Butler was told to report to work on December 11, 2017, to avoid being placed in an AWOL status or termination. After he did not return, Butler was emailed on January 11, 2018 and informed that he was placed on AWOL for excessive and unexcused absences. And he was removed from service in March of 2018.

Butler filed two EEO complaints. In the first, he initially alleged that he was discriminated against based on race when he was not selected for the GS-12 auditor position, *see* Dkt. No. 38-3 at 2-9; Butler also added claims for retaliation, based on (1) his being moved into a cubicle; (2) his desk not having a telephone jack and his not having access to certain system when he returned on June 27, 2016; (3) his badge not working on that day; (4) his counseling two days later; (5) his being placed on AWOL status; and (6) a denial of FMLA leave, *see id.* at 10-14.

Butler filed the second complaint in March of 2018, in which he asserted retaliation and that he was discriminated against and subjected to a hostile work environment based on a disability because (1) he was placed on an AWOL status; (2)

the FBI did not respond to the Department of Veterans Affairs to verify Butler's employment so that he could apply for disability benefits; and (3) his removal from service. *See* Dkt. No. 38-7 at 2-13.

The EEOC granted summary judgment on both complaints, dismissing them for Butler's failure to state a claim for discrimination or retaliation. *See id.* at 14-21.

## Legal Standards

"In the employment discrimination arena, the 'salutary function of summary judgment' is that it 'allows patently meritless cases to be nipped in the bud.'" *Molden v. East Baton Rouge Sch. Bd.*, 715 F. App'x 310, 313 (5th Cir. 2017) (per curiam) (quoting *Caldwell v. KHOU-TV*, 850 F.3d 237, 241 (5th Cir. 2017)).

And, under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625

(5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all

reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and

internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*,

353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

"[T]he traditional leniency afforded to a *pro se* plaintiff does not excuse [Marable] from [his] burden of opposing summary judgment through the use of competent summary judgment evidence." *Malcolm v. Vicksburg Warren Sch. Dist. Bd. of Trs.*, 709 F. App'x 243, 246 (5th Cir. 2017) (per curiam) (citing *Davis v. Fernandez*, 798 F.3d 290, 293 (5th Cir. 2015) ("[T]his is not to say that pro se plaintiffs don't have to submit competent evidence to avoid summary judgment, because they do.")).

And, "[a]lthough courts should advise *pro se* [parties] of procedural rules," *Brown v. Megg*, 857 F.3d 287, 289 n.1 (5th Cir. 2017) (citing *Davis*, 798 F.3d at 293-94), the United States Court of Appeals for the Fifth Circuit "has held that they need not be given additional notice of the consequences of a summary judgment motion and the right to submit opposing affidavits as the notice given by Rule 56 and the local rules suffices," *id.* (citing *Martin v. Harrison Cnty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992)).

That said, the verified complaint and sworn interrogatory answers of a *pro se* litigant can be considered as summary judgment evidence to the extent such pleadings comport with the requirements of Rule 56(e). *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994); *accord Hart v. Hairston*, 343 F.3d 762, 765 (5th Cir. 2003) ("On summary judgment, factual allegations set forth in a verified complaint may be

treated the same as when they are contained in an affidavit.").

## Discussion

### I. The Court should dismiss the racial discrimination claim and parts of the disability claims for Butler's failure to timely exhaust administrative remedies.

"[F]ederal employees must first exhaust their administrative remedies before they may bring [an employment discrimination claim] in federal court." *Pacheo v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992) (citation omitted).

Under 29 C.F.R. § 1614.105, federal employees who believe that they have "been discriminated against based on race, color, religion, sex, national origin, age, [disability, or genetic information] must consult with an EEO counselor to attempt to informally resolve the matter 'within 45 days of the date of the matter alleged to be discriminatory.'" *Washington v. Dep't of Homeland Sec.*, 324 F. App'x 416, 417 (5th Cir. 2009) (per curiam) (quoting Section 1614.105(a)(1)).

"Failure to contact an EEO counselor within forty-five days subjects the claims to dismissal, 'absent a defense of waiver, estoppel, or equitable tolling.'" *Id.* (citing *Henrickson v. Potter*, 327 F.3d 444, 447 (5th Cir. 2003); then quoting *Pacheco*, 966 F.2d at 905). For example, "[i]f informal counseling is not timely sought, 'the plaintiff has the burden of demonstrating a factual basis to toll the period.'" *Katz v. McCarthy*, No. 2:21-CV-00132, 2022 WL 16579973, at *4 (W.D. La. Nov. 1, 2022) (quoting *Blumberg v. HCA Mgmt. Co.*, 848 F.2d 642, 644 (5th Cir. 1988)); *see also Stroy v. Gibson*, 896 F.3d 693, 698 (5th Cir. 2018) ("Stroy does not offer a waiver or estoppel argument to excuse his failure to exhaust, and he only insists that his 'good faith effort' to comply with the regulations is enough to save his claim…. Given that Stroy

offers no justification for his failure to exhaust, we affirm the district court's dismissal of Story's retaliation claim." (footnote omitted)).

Such "restrictions are not jurisdictional limitations on [a federal court's] ability to hear the case; rather they are claim-processing rules, which seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Cotton v. Russell*, 830 F. App'x 145, 147 (5th Cir. 2020) (per curiam) (cleaned up; quoting *Davis v. Fort Bend Cnty.*, 139 S. Ct. 1843, 1849 (2019) (quoting, in turn, *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011))); *see also Stroy*, 896 F.3d at 698 ("Even though administrative exhaustion is not a *jurisdictional* requirement, it is still a requirement.").

Garland moves for summary judgment on the racial discrimination claim because more than 45 days passed between Butler being notified that his GS-12 auditor application was rejected (on March 4, 2016) to his first contacting an EEO representative (on April 28, 2016).

A plaintiff may attempt "to escape his failure to act within the 45-day limit by alleging a 'continuing violation.'" *Hendrickson*, 372 F.3d at 447. And Butler argues, accordingly, that the limitations period as to this claim should run from March 22, 2016, when Butler was notified that Headquarters had informed the assistant SAC in Dallas that it had reviewed Butler's challenge to its decision and confirmed that he did not have the required coursework, which is when, Butler asserts, he began to suspect discrimination.

The undersigned is not persuaded by Butler's argument. "Plaintiffs asserting

continuing violations 'must demonstrate more than a series of discriminatory acts. [They] must show an organized scheme leading to and including a present violation such that it is the cumulative effect of the discriminatory practice, rather than any discrete occurrence, that gives rise to the cause of action.'" *Hendrickson*, 372 F.3d at 447 (quoting *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998)).

And "[t]he focus is on what event, in fairness and logic, should have alerted the average lay person to act to protect his rights," *id.* at 448 (quoting *Huckabay*, 142 F.3d at 238 (citing, in turn, *Messer v. Meno*, 130 F.3d 130, 134-35 (5th Cir. 1997)) – "not when the plaintiff perceives a discriminatory motive behind the act," *Miller v. Potter*, 359 F. App'x 535, 537-38 (5th Cir. 2010) (per curiam) ("In this Circuit, it is clearly established that 'the limitations period starts running when the plaintiff knows of the discriminatory *act*, not when the plaintiff perceives a discriminatory motive behind the act.'" (quoting *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1217 n.2 (5th Cir. 1992); emphasis in *Christopher*)).

Similarly, Butler also failed to timely exhaust administrative remedies as to his disability claims based on his being placed on an AWOL status, as he was notified on November 17, 2017 and on December 11, 2017 that he would be placed on that status but did not contact an EEO representative until March 2, 2018. *See, e.g.*, *Miller*, 359 F. App'x at 537 ("[I]t is immaterial when [Butler] became suspicious of the reasons behind [his being placed on an AWOL status]. Because more than forty-five days passed between the allegedly discriminatory act[s] and [Butler's] contact with a counselor, [these claims] fall[] outside the limitations period.").

## II. The Court should dismiss the retaliation claims because Butler failed to rebut each nonretaliatory reason articulated by Garland.

To prove his retaliation claims, Butler "may either present direct evidence … or alternatively proceed under [a] burden-shifting analysis." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). "'[D]irect evidence is rare'" and has been defined by the Fifth Circuit "as 'evidence which, if believed, proves the fact without inference or presumption.'" *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 579 (5th Cir. 2020) (footnotes omitted). For example, "'[a] statement or document which shows "on its face that an improper criterion served as a basis – not necessarily the sole basis, but a basis – for the adverse employment action [is] direct evidence of discrimination."'" *Id.* (footnote omitted).

In the absence of direct evidence, like here, Butler must proceed under the applicable burden-shifting analysis and first articulate a prima facie case. "To establish a prima facie case of retaliation, an employee must show '(1) she engaged in a protected activity; (2) "she suffered an adverse employment action"; and (3) "a causal connection exists between the protected activity and the adverse employment action."'" *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 1000 (5th Cir. 2022) (quoting *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (quoting, in turn, *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000))).

> For purposes of Title VII's anti-retaliation provision, the Supreme Court has held that an adverse employment action is defined slightly more broadly than the term is defined in the employment discrimination context. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 67-68. Specifically, a plaintiff seeking to establish a retaliatory adverse

- 14 -

> employment action "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (cleaned up).
>
> Title VII's anti-retaliation provisions do not protect employees from "petty slights, minor annoyances, and simple lack of good manners." *Id.* However, retaliatory adverse employment actions also need not rise to the level of ultimate employment decisions. *Id.*; *Donaldson v. CDB Inc.*, 335 F. App'x 494, 506 (5th Cir. 2009). [And], when determining whether an allegedly retaliatory action is materially adverse, courts "look to indicia such as whether the action affected 'job title, grade, hours, salary, or benefits' or caused 'a diminution in prestige or change in standing among ... coworkers.'" *Paul v. Elayn Hunt Corr. Ctr.*, 666 F. App'x 342, 346 (5th Cir. 2016) (quoting *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009)).

*Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 826-27 (5th Cir. 2019); *see also Butler v. Exxon Mobil Corp.*, 838 F. Supp. 2d 473, 496 n.10 (E.D. La. 2012) ("Though *Burlington* was a Title VII case, *Burlington* applies equally to ADA retaliation cases. (citing *Grubic v. City of Waco*, 262 F. App'x 665, 666 n.6 (5th Cir. 2008))); *Kemp v. Holder*, 610 F.3d 231, 234 (5th Cir. 2010) (observing that the Rehabilitation Act is operationally identical to the ADA, in that both statutes address discrimination against those with disabilities).

> If the plaintiff makes a prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action. The employer's burden is only one of production, not persuasion, and involves no credibility assessment. If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose. To carry this burden, the plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer.

*McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007) (footnotes omitted).

"[T]he burden of persuasion remains with the employee throughout." *Saketkoo*, 31 F.4th at 1000 (citing *Brown*, 969 F.3d at 577); *see, e.g.*, *Ortiz v. City of San Antonio*

*Fire Dep't*, 806 F.3d 822, 827-28 (5th Cir. 2015) (affirming the district court's recognition that, even where a plaintiff establishes a prima facie case, an employer "would nevertheless be entitled to summary judgment if it 'articulated a legitimate, nondiscriminatory ... reason for its employment action' and [the plaintiff] could not show a triable issue of fact as to whether 'the employer's proffered reason is not true but instead is a pretext' for a discriminatory purpose" (quoting *McCoy*, 492 F.3d at 557; original brackets omitted)).

As set out above, the record here reflects that Butler has offered eight distinct actions in support of his retaliation claims. *See* Dkt. No. 38-3 at 2-10; Dkt. No. 38-7 at 2-13. Garland argues that all but proposing Butler's removal fail to qualify as materially adverse actions. *See* Dkt. No. 39 at 28-30. And Garland goes on to produce nonretaliatory reasons for each action. *See id.* at 30-39.

Butler certainly contests these reasons. *See generally* Dkt. Nos. 41, 42. But he has not carried his burden to prove that any reason is not true and that each is instead merely a pretext. "An employee can establish pretext in the context of retaliation 'by showing that a discriminatory motive more likely motivated her employer's decision.' [And,] to survive a motion for summary judgment, the plaintiff must show a 'conflict in substantial evidence' on this issue." *Saketkoo*, 31 F.4th at 1002 (quoting *Brown*, 969 F.3d at 577). Here, Butler offers no credible evidence that a retaliatory animus was a motivating factor in any materially adverse employment action. His "subjective belief, without more, cannot establish pretext." *Vincent v, Coll. of Mainland*, 703 F. App'x 233, 240-41 (5th Cir. 2017) (per curiam) (citing *Aryain v.*

- 16 -

*Wal-Mart Stores Tex. LP*, 534 F.3d 473, 487 (5th Cir. 2008)).

### III. The Court should dismiss the disability discrimination claims because Butler cannot establish a prime facie case.

As a federal employee, Butler may bring disability-based claims only under the Rehabilitation Act, not the Americans with Disabilities Act (or the ADA), as the Rehabilitation Act "is the exclusive remedy for federal employees." *Cavada v. McHugh*, 589 F. App'x 717, 718 (5th Cir. 2014) (per curiam) (footnote omitted); *see also Higbie v. Kerry*, 605 F. App'x 304, 307 (5th Cir. 2015) (per curiam) ("[T]he ADA excludes the United States from its definition of an employer, so the ADA is also unavailable to Higbie, a federal employee." (citing 42 U.S.C. § 12111(5)(B)(i); *Henrickson*, 327 F.3d at 447)).

> The Rehabilitation Act provides that
>> [n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination ... under any program or activity conducted by any Executive agency or by the United States Postal Service.
>
> 29 U.S.C. § 794(a). The Act defines "individual with a disability" as any individual who "(i) has a physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment; and (ii) can benefit in terms of an employment outcome from vocational rehabilitation services." 29 U.S.C. § 705(20)(A). Moreover, as defined in the Code of Federal Regulations, "[d]isability means, with respect to an individual – (i) [a] physical or mental impairment that substantially limits one or more of the major life activities of such individual; (ii) [a] record of such an impairment; or (iii) [b]eing regarded as having such an impairment." 29 C.F.R. § 1630.2.

*Segura v. DeJoy*, Civ. A. No. 20-3450, 2022 WL 1091288, at *3 (E.D. La. Apr. 12, 2022).

As set out above, since Butler relies on circumstantial evidence, he must first

establish a prima facie case of disability discrimination, which "requires: (1) that the plaintiff has a disability; (2) that he was qualified for the job; and (3) that the employer's adverse employment decision was a result of his disability." *Diggs v. Burlington N. & Santa Fe Ry. Co.*, 742 F. App'x 1, 3 (5th Cir. 2018) (per curiam) (ADA) (citing *LHC Grp.*, 773 F.3d at 694).

Even if the Court accepts that Butler, as a disabled veteran who held a VA disability rating when he began working for the FBI, has a disability under the Rehabilitation Act, Butler has not shown that he is qualified for the job because he did not return to work.

"[T]he inability (or refusal) to attend work disqualifies one from being a '"qualified individual with a disability" under the ADA'" (or the Rehabilitation Act). *Villareal v. Tropical Tex. Behavioral Health*, No. 20-40782, 2021 WL 3525023, at *5 (5th Cir. Aug. 10, 2021) (per curiam) (quoting *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 759 (5th Cir. 1996) (quoting, in turn, 42 U.S.C. § 12111(8))). "That is because '[a]n essential element of any ... job is an ability to appear for work ... and to complete assigned tasks within a reasonable period of time.'" *Id.* (quoting *Hypes ex rel. Hypes v. First Commerce Corp.*, 134 F.3d 721, 727 (5th Cir. 1998) (per curiam)); *see also Clark*, 952 F.3d at 584 n.54 ("[T]his circuit, like many of its sister circuits, has a history of published cases establishing that lack of physical presence is a commonly accepted disqualification for ADA protection. 'An employee who does not come to work cannot perform any of his job functions, essential or otherwise.'" (citations omitted)).

Similarly, while Butler raises a hostile work environment as a type of discrimination under the Rehabilitation Act, his absence from the office at that time (for some 18 months) reflects that the complained of "acts were not sufficiently pervasive or severe," a required element of a prime facie case. *Soledad v. Dep't of Treasury*, 304 F.3d 500, 506 (5th Cir. 2002) ("As we said in *Flowers*, 'the disability-based harassment must "be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment."'" (quoting *Flowers v. S. Reg'l Physician Servs., Inc.*, 247 F.3d 229, 236 (5th Cir. 2001) (quoting, in turn, *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998))))). *Cf. Trawick v. Hantman*, 151 F. Supp. 2d 54, 61 n.9 (D.D.C. 2001) ("While the complaint also seems to allege that defendant subjected plaintiff to an 'abrasive and hostile work environment' due to his disabilities," alleging "that he received Disciplinary Incident Reports when he was AWOL" is "insufficient as a matter of law to establish 'harassment so severe or pervasive as to alter the conditions of employment and create an abusive working environment.'" (citation omitted)).

Finally, Butler has not shown that the Executive Order that he relies on somehow preempts the applicable federal statutes that govern employment discrimination and retaliation claims filed by federal employees. He also has not shown that he may benefit from it, as the Order requires "the veteran's giving prior notice of definite days and hours or absence required for medical treatment in order that arrangements may be made for carrying out the work during his absence." As the record reflects, Butler was absent for indefinite periods of time, with no

anticipated date of return.

## Recommendation

The Court should grant Defendant Attorney General Merrick B. Garland's motion for summary judgment [Dkt. No. 37] and dismiss this case with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 18, 2022

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE